















RYC   9/22/05   9:53
3:05-CV-01470   MINTZ V. DIETZ AND WATSON INC
*6*
*DECL.*

1   NEIL A. SMITH, Cal. Bar No. 63777
    SHEPPARD MULLIN RICHTER & HAMPTON LLP
2     A Limited Liability Partnership
      Including Professional Corporations
3   4 Embarcadero Center, 17th Floor
    San Francisco, California  94111-4106
4   Telephone:   415-434-9100
    Facsimile:   415-434-3947
5
    JONATHAN HANGARTNER, Cal. Bar No. 196268
6     SHEPPARD MULLIN RICHTER & HAMPTON
    501 West Broadway, 19th Floor
7   San Diego, California  92101-3598
    Telephone:   619-338-6500
8   Facsimile:   619-234-3815
9   Attorneys for Defendants DIETZ & WATSON,
    INC. and PACKAGE CONCEPTS &
10  MATERIALS, INC.

11                  UNITED STATES DISTRICT COURT

12                SOUTHERN DISTRICT OF CALIFORNIA

13

14
    NEIL MINTZ, an individual;            Case No. 05 CV 1470 L (AJB)
15  MARCUS MINTZ, an individual; and
    JIF-PAK MANUFACTURING, INC.,          **DECLARATION OF JONATHAN**
16  a California corporation,             **HANGARTNER IN SUPPORT OF**
                                          **DEFENDANTS' MOTION TO**
17                        Plaintiffs,     **DISMISS**
                  v.
18                                        **(Oral Hearing Requested)**
    DIETZ & WATSON, INC.,
19  a Pennsylvania corporation; and       Date:      November 7, 2005
    PACKAGE CONCEPTS & MATERIALS,         Time:      10:30 a.m.
20  INC., a Southern Carolina corporation, Ctrm:     14
                                          Judge:     Hon. M. James Lorenz
21                        Defendants.
                                          [Complaint Filed:  July 22, 2005]
22

23          I, Jonathan Hangartner, declare:

24

25          1.      I am an attorney admitted to practice in the State of California and am

26  a partner at Sheppard Mullin Richter & Hampton LLP.  My firm represents Defendants

27  Dietz & Watson, Inc. and Package Concepts & Materials, Inc. in this matter.  I have

28

W02-SD:8JH2\51393468.1                                    CASE NO. 05 CV 1470 L (AJB)

ORIGINAL

1  personal knowledge of the facts set forth below, and if called as a witness could testify

2  thereto.

3

4          2.      Attached hereto as Exhibit A is a true and correct copy of John

5  Haller's March 9, 2005 letter;

6

7          3.      Attached hereto as Exhibit B is a true and correct copy of Package

8  Concepts & Materials, Inc.'s Memorandum of Law, filed in United States District Court

9  for the District of South Carolina, Greenville Division, Civil Action No. 6-05-1184-RBH.

10

11         I declare under penalty of perjury under the laws of the United States of

12  America that the foregoing is true and correct to the best of my knowledge.  Executed on

13  September 21, 2005, at San Diego, California.

14

15

16

17  _____
                JONATHAN HANGARTNER

18

19

20

21

22

23

24

25

26

27

28

W02-SD:8JH2\51393468.1                                    CASE NO. 05 CV 1470 L (AJB)

JOHN L. HALLER
JHALLER@GORDONREES.COM
DIRECT DIAL: (619) 230-7451

ATTORNEYS AT LAW
101 WEST BROADWAY
SUITE 1600
SAN DIEGO, CA 92101
PHONE: (619) 696-6700
FAX: (619) 696-7124
WWW.GORDONREES.COM

March 9, 2005

Mr. Mark Gray
Vice President of Operations
SFG, Inc.
603 Pilot House Drive, 4th Floor
Newport News, Virginia 23606

Re:    Jif-Pak Manufacturing, Inc. vs. SFG, Inc.
       Patent Infringement
       U.S. Patent No. 5, 413,148
       Our Ref. No. BJPMI 1027086  (7211-IN05)

Dear Mr. Gray:

This is further to my letter to dated August 2, 2004, notifying you of the existence of U.S. Patent No. 5,413,148 (the '148 Patent) and offering you the opportunity to discuss with Jif-Pak Manufacturing, Inc. various options for SFG, Inc. to avoid infringement of the '148 Patent. I have enclosed a copy of my August 2, 2004 letter for your reference.

SFG has had more than adequate time to evaluate the validity and enforceability of the '148 patent and to confirm their infringement. Notwithstanding the extended lapse of time, we have had no response from SFG regarding these options.

As indicated in my August 2, 2004 letter, Jif-Pak Manufacturing, Inc. is the owner of the '148 Patent and the '148 Patent is good and valid under the law. SFG's meat encased net includes a stockinette that includes a tubular net structure having a given stretch capacity and a first set of longitudinal strands and a second set of lateral strands where the longitudinal strands intersect the lateral strands in locking engagement to form a four sided grid like pattern and where the strands having less stretch capacity are knit into the threads of the stockinette member so that the checkerboard pattern is impressed upon meat product stuffed into the casing.

In view of the above, SFG's meat encased net product infringes at least claim 1 of the '148 Patent.

EXHIBIT A    3

John Hardaway - 111929 nfk 3_9_05 ltr    1.pdf

Mr. Mark Gray
SFG, Inc.
March 9, 2005
Page 2

My client Jif-Pak Manufacturing, Inc. presumes that SFG takes such steps as are reasonably necessary to avoid improper and unauthorized use of another's patented technology. In order to avoid the expense and the time required to litigate this infringement, please provide, by return mail, your agreement to immediately cease and desist the use of Jif-Pak Manufacturing, Inc.'s technology embodied in claim 1 of the '148 patent. Please understand that my client is anxious for an immediate resolution of this matter.

In view of SFG's failure to respond to our initial inquiry, Jif-Pak Manufacturing, Inc. will only consider an immediate resolution and if SFG and its affiliates immediately cease all use of the patented technology, Jif-Pak Manufacturing, Inc. will waive past damages.

This proposal remains valid for two weeks from the date of this letter and your immediate reply will assist in forming an amicable resolution.

Very truly yours,

GORDON & REES LLP


John L. Haller

JLH:laf
Enclosure

BJPM/A102708/245447.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Package Concepts & Materials, Inc., | Civil Action No. 6-05-1184-RBH |
| Plaintiff, | |
| vs. | **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| JIF-PAK, Neil Mintz, and Marcus Mintz, | |
| Defendants. | |

The Plaintiff, Package Concepts & Materials, Inc. ("Package Concepts" or "Plaintiff")

respectfully submits the following Memorandum of Law in Opposition to the Motion to Dismiss

in the above-captioned matter. For the reasons that follow, the Motion should be denied.

## BACKGROUND

Plaintiff and JIF-PAK Manufacturing, Inc. (hereinafter "JIF-PAK") are competitors in the

manufacture and sale of food packaging products. On April 20, 2005, Plaintiff filed the above-

captioned action seeking a declaration that the patent in dispute, U.S. Patent No. 5,413,148 ("the

'148 Patent"), is not infringed by Package Concepts and further asserts a tortuous interference

claim against JIF-PAK. Prior to filing suit, JIF-PAK, through its lawyers and other

representatives, contacted a number of Plaintiff's customers, including SFG, Inc., to demand it

immediately cease purchasing allegedly infringing product from Package Concepts.[1] In that

letter, JIF-PAK represented that it was the owner of the Patent in question: "As indicated in my

August 2, 2004 letter, JIF-PAK Manufacturing, Inc. is the owner of the '148 Patent and the '148

Patent is good and valid under the law." (emphasis added). As that correspondence makes clear,

SFG was advised on at least two (2) separate occasions that JIF-PAK was in fact the owner of

---

[1]      A copy of the letter to SFG is attached hereto and made a part hereof as Exhibit A.

NPGVL1:237428.1-DOC-(MSP) 017700-00017

the patent in question.[2]  Other customers, including Publix Supermarkets and Gusto Packaging were also contacted. (Bylenga Aff. at ¶¶ 2-3).[3]

According to the Defendants' assertions, Neil Mintz and Marcus Mintz, father and son, are the co-owners and co-inventors of the '148 Patent.  Notably, Neil Mintz is the president of the corporate Defendant, JIF-PAK.[4]  (Mintz Aff. at ¶ 8).  As President of JIF-PAK, Neil Mintz presumably has control over the actions of the corporation, including the decision to transmit correspondence to Plaintiff's customers like SFG, Publix and Gusto.  As a direct result of those threats, Plaintiff lost business from both Publix and Gusto (Bylenga Aff. at ¶ 3).  Both are significant accounts.  While it is difficult to estimate the loss with precision at present, Plaintiff has incurred at least $100,000 in lost sales from Publix and Gusto  (Bylenga Aff. at ¶ 4).  That monetary injury has been incurred wholly within the State of South Carolina. (Bylenga Aff. at ¶ 5).

On July 22, 2005 JIF-PAK, Neil Mintz and Marcus Mintz filed an infringement action against Package Concepts (along with another Defendant) in the United States District Court for the Southern District of California alleging that Package Concepts is infringing the very patent issue in this lawsuit.[5]  It is important to note that both in the case at bar and in the California action, JIF-PAK and the Mintz are represented by the same California counsel.  Moreover, the

---

[2]      In its brief, the Mintz make much of the fact that JIF-PAK's lawyers subsequently wrote SFG in order to correct their mistake concerning ownership of the '148 Patent.  Notably, that letter did not go out until after the instant lawsuit was filed and the Mintz apparently recognized the letter as problematic for their position on the personal jurisdiction issue.

[3]      The declaration of Andrew Bylenga is attached hereto and made a part hereof as Exhibit B.

[4]      Marcus Mintz is listed as the contact person for JIF-PAK Industrial Knitting on an Internet directory for the food service industry attached hereto and made a part hereof as Exhibit C.  According to that directory, JIF-PAK Industrial Knitting makes product similar (if not identical) to that of the corporate Defendant in this lawsuit. Presumably, both entities are affiliated.

[5]      A copy of that pleading is attached hereto and made a part hereof as Exhibit D.  It is undisputed that the South Carolina lawsuit was initiated first.  Accordingly, the instant lawsuit enjoys primacy pursuant to the "first-filed rule."  *See e.g. Pacesetter Systems v. Medtronic*, 678 F.2d 93, 95 (9th Cir. 1982).

EXHIBIT B    6

issues in both lawsuits are essentially the same, *i.e.*, the alleged infringement and tortuous interference.

JIF-PAK initially moved to dismiss the Complaint in this case on the ground that JIF-PAK was not the owner of the '148 Patent but instead only a non-exclusive licensee, maintaining that Neil Mintz and Marcus Mintz were the owners of the Patent and, therefore, both gentlemen had to be joined as indispensable parties under Rule 19 of the Federal Rules of Civil Procedure. Plaintiff subsequently amended its Complaint to name Neil and Marcus Mintz as Defendants. The Mintz's now move to dismiss the action as to them individually, maintaining they are not subject to personal jurisdiction in South Carolina. JIF-PAK further asserts that the entire action must then be dismissed because the Mintz are necessary and indispensable parties under Rule 19 of the Federal Rules of Civil Procedure.

## LAW AND ANALYSIS

This Court has personal jurisdiction over the individual Defendants. Even assuming, *arguendo*, that personal jurisdiction is lacking as to the Mintz, this case may nevertheless go forward in their absence because they are not necessary and indispensable parties for the purposes of Rule 19.

## I. JURISDICTION

A federal court may exercise personal jurisdiction over a defendant if: (1) the applicable state long arm statute confers jurisdiction and (2) the exercise of jurisdiction is consistent with constitutional due process. It is well accepted the South Carolina Long-Arm Statute, S.C. Code Ann. § 36-2-803, has been interpreted to extend jurisdiction to the limits of due process. *Sonoco Prods. Co. v. Inteplast Corp.*, 867 F. Supp. 352, 354 (D.S.C. 1994). Accordingly, the two inquiries merge into one and jurisdiction may be exercised if the defendant has the requisite

NPGVL1:237428.1-DOC-(MSP) 017700-00017

EXHIBIT B    7

"minimum contacts" with the forum state. *World-Wide Volkswagen Corp. v. Wilson*, 44 U.S.

286, 291 (1980); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Stover v.

O'Connell Associates, Inc.*, 84 F.3d 132, 136 (4th Cir. 1986), *cert. denied*, 519 U.S. 983. In his

federal civil practice treatise, Judge Horn succinctly stated the minimum contacts requirement as

follows:

> In defining the 'minimum contacts' necessary to establish personal
> jurisdiction, the Supreme Court has required that the defendant
> 'purposely avail[] itself of the privilege of conducting activities
> within the foreign state . . .' *Hanson*, 357 U.S. at 253. In other
> words, the actions initiated by the defendant must be 'purposely
> directed' at the foreign state, creating a 'substantial connection'
> with that state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,
> 475-76 (1985); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770,
> 774 (1984); *World-Wide Volkswagen*, 444 U.S. at 297; *Lesnick*, 35
> F.3d at 945; and *Ellicott Machine Corp.*, 995 F.2d at 477. Put
> another way, due process requires sufficient contacts with a foreign
> state that a defendant should 'reasonably anticipate being hauled
> into court there.' *World-Wide Volkswagen*, 444 U.S. at 297.

Carl Horn and Patrice P. Lewis, *Federal Civil Practice in the Fourth Circuit* § 41 (1997).

On at least four (4) separate occasions, JIF-PAK, acting through counsel or other

representatives, contacted Plaintiff's customers, SFG, Publix, Gusto, Tyson Foods, Dietz and

Watson and Cedar Hollow Foods. JIF-PAK has held itself out as the owner of the '148 Patent.

In the March 9, 2005 correspondence from JIF-PAK's lawyers to SFG, JIF-PAK threatened SFG

with legal consequences if SFG did not immediately stop doing business with Plaintiff:

> SFG has had more than adequate time to evaluate the validity and
> enforceability of the '148 Patent and to confirm their infringement
> . . . In view of the above, SFG's meat encased net product
> infringes at least claim 1 of the '148 Patent.
>
> * * *
>
> My client JIF-PAK Manufacturing, Inc. presumes that SFG takes
> such steps as are reasonably necessary to avoid improper and
> unauthorized use of another's patented technology. In order to
> avoid the expense and the time required to litigate this

NPGVL1:237428.1-DOC-(MSP) 017700-00017

EXHIBIT B     8

infringement, please provide, by return mail, your agreement to immediately cease and desist the use of JIF-PAK Manufacturing, Inc.'s technology embodied in claim 1 of the '148 Patent. Please understand that my client is anxious for an immediate resolution of this matter.

In view of SFG's failure to respond to our initial inquiry, JIF-PAK Manufacturing, Inc. will only consider an immediate resolution and if SFG and its affiliates immediately cease all use of the patented technology, JIF-PAK Manufacturing, Inc. will waive past damages.

(Exhibit A)

The intent of JIF-PAK could not be more clear: JIF-PAK meant for Plaintiff's customers to stop doing business with Plaintiff. As a direct result of those threats, both Publix and Gusto have stopped doing business with Package Concepts. (Bylenga Aff. at ¶ 3). The loss of the Publix and Gusto business has resulted in substantial monetary losses for Package Concepts in excess of $100,000.00. (Bylenga Aff. at ¶ 4). This monetary loss has was incurred by Package Concepts in the State of South Carolina. (Bylenga Aff. at ¶ 5).

JIF-PAK has not raised a jurisdictional defense; it does sufficient business in the State to satisfy the minimum contacts test in any event. (See Bylenga Aff. at ¶ 5). Neil Mintz as President, has control over the actions of the corporate Defendant. The exercise of personal jurisdiction over at least Neil Mintz[6] is therefore proper.

In *Magic Toyota, Inc. v. Southeast Toyota Distributors, Inc.*, 784 F. Supp. 306 (S.C. 1992), a group of individual defendants acting as corporate officers sought the dismissal of a RICO action against them in their individual capacities. They argued their actions taken as officers of the corporation were for its benefit and, as such, they were not subject to personal jurisdiction in South Carolina in light of the fact they had little or no ties with the forum state.

---

[6]       As noted above, Marcus Mintz is with JIF-PAK Industrial Knitting, presumably an affiliate of JIF-PAK Manufacturing, Inc.  Discovery is needed concerning the relationship between the JIF-PAK entities and Marcus Mintz' role in each company.

NPGVL1:237428.1-DOC-(MSP) 017700-00017

EXHIBIT B        9

Judge Norton disagreed and held that at least at the preliminary Rule 12 stage, dismissal was not warranted. *Id.* at 314-15. Relying on the Fourth Circuit's decision in *Columbia Briargate Co. v. First Nat'l Bank*, 713 F.2d 1052 (4th Cir. 1983), *cert. denied*, 465 U.S. 1007 (1984), the district court held an individual employee of a corporation may be subject to jurisdiction even though the allegedly tortuous acts are not committed within the foreign state; jurisdiction is proper where the employee has reason to believe that the acts committed outside the foreign state would nevertheless <u>cause injury within the forum state</u>. *Id.* at 315. In so holding, the court additionally noted that the Fourth Circuit in Columbia *Briargate* quoted with approval the following language from the First Circuit's decision in *Escude Cruz v. Ortho Pharmaceutical Corp*, 619 F.2d 902, 907 (1st Cir. 1980): "What is required [in order for a court to assert personal jurisdiction over an individual corporate officer] is some showing of direct, personal involvement by the corporate officer in some decision or action which is causally related to the plaintiff's injury." *Id.* The court went on to state that "such direct personal involvement typically exists 'where the defendant [agent is] the guiding spirit behind the wrongful conduct, or the central figure in the challenged corporate activity'." The district court also cited the United State Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 789-90 (1984) where, in a liable action, the Court held that individual defendants were subject to personal jurisdiction where they knew the brunt of the injury caused by their defamatory statements would be borne by the plaintiff in the forum state. *Id.*

Judge Norton's reasoning in *Magic Toyota* was subsequently adopted by Judge Herlong in *Springs Indus., Inc. v. Gasson*, 923 F. Supp. 823 (D.S.C. 1996). In that case the court held that jurisdiction over a corporate officer in his individual capacity was appropriate due to allegations that "he was the guiding spirit behind the wrongful conduct." *Id.* at 827-28.

6

EXHIBIT R 10

The Defendants will likely try to avoid application of *Magic Toyota* by citation to the Fourth Circuit's decision in *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir. 1997). *ESAB Group* is distinguishable and stands for the proposition that personal jurisdiction cannot be supported based solely upon the fact that a defendant's conduct happens to ultimately cause injury within the forum state. *Id.* at 625. In that case, officers of the defendant corporation allegedly acted in concert with a former employee of the plaintiff to misappropriate a customer list and other trade secrets. Those sales leads were then used in order to call on the plaintiff's customers on a nationwide basis and in Canada. Notably, the Fourth Circuit recognized that there was no evidence on the record to support any activity directed toward the forum state. *Id.*

In the case at bar, JIF-PAK did not merely engage in a nationwide campaign to call on the Plaintiff's customers. JIF-PAK (and individual Defendant Neil Mintz as its President) have targeted specific customers of the Plaintiff and made threats of litigation in the event that they did not immediately stop doing business with the Plaintiff. Those threats worked in at least two instances as evidenced by the Plaintiff's loss of the Publix and Gusto accounts resulting in a monetary loss in excess of $100,000.00. The Defendants' conduct purposefully targeted a South Carolina corporation and was intended to cause harm inside South Carolina; it was not merely a nationwide course of conduct which coincidently resulted in injury in the forum state.

Neil Mintz, as President of JIF-PAK, upon information and belief directed or at least played an important role in JIF-PAK's decision to threaten Plaintiff's customers concerning the alleged infringement of the '148 Patent. This tortuous interference resulted in substantial economic loss by Plaintiff within the State of South Carolina. That loss within the State was foreseeable. Under the *Magic Toyota* case and at this early stage of the proceedings, Neil Mintz's actions as an officer of JIF-PAK, standing alone, is sufficient to support jurisdiction in

7    NPGVL1:237428.1-DOC-(MSP) 017700-00017

EXHIBIT B 11

this State.[7] The Motion to Dismiss for lack of personal jurisdiction should therefore be denied.

## II. RULE 19

Assuming for the sake of argument only that this Court does not have personal jurisdiction over one or both of the Mintz, this case can still proceed in their absence as to JIF-PAK only. Rule 19 of the Federal Rules of Civil Procedure provides, in pertinent part:

> **(a) Persons to Be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.
>
> **(b) Determination by Court Whenever Joinder Not Feasible.** If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

---

[7]    As stated above, Package Concepts needs to conduct limited discovery on the jurisdictional issue to determine Marcus Mintz' involvement with the JIF-PAK affiliated companies.

    NPGVL1:237428.1-DOC-(MSP) 017700-00017

EXHIBIT B  12

Rule 19(a) determines whether the '148 Patent owners are necessary parties for Rule 19(a). However, the inquiry does not end there. They must also be indispensable parties for purposes of Rule 19(b) for the instant motion to be granted. They are not.

In *Clarkson Corp. v. Andritz Sprout-Bauer, Inc.*, 866 F. Supp. 773, 775 (S.D.N.Y. 1994), the court recognized that federal case law has developed two approaches when determining whether a patent owner is an indispensable party where a licensee is already a party to litigation involving patent validity and/or infringement. One line of cases follows the Second Circuit's opinion in *Capri Jewelry, Inc. v. Hattie Carnegie Jewelry Enter., Ltd.*, 539 F.2d 846, 847 (2d Cir. 1976). The second line of cases is based upon United States Supreme Court precedent and is addressed more fully below.

The *Capri Jewelry* case involved a declaration of patent invalidity brought by two costume jewelry distributors against a licensee of the owner of the patent for "Mood Rings." The defendant licensee argued that the case should be dismissed in the absence of the patent owner. The Second Circuit disagreed that the patent owner was a necessary and indispensable party for Rule 19 purposes, particularly in light of the fact that the patent owner was involved in separate litigation involving validity of the same patent and, further, was represented by the same counsel in both lawsuits. *Capri Jewelry*, 539 F.2d at 853. Accordingly, the patent owner's counsel had ample opportunity and motive to protect the owner's interests. *Id.*

Similarly, in *Micro-Acoustics Corp. v. Bose Corp.*, 493 F. Supp. 356 (S.D.N.Y. 1980), a stereo speaker manufacturer sued Bose seeking a declaration that one of Bose's patents was invalid or, alternatively, a declaration of non-infringement. Bose moved to dismiss the action, taking the position that one of its wholly-owned subsidiaries was the owner of the patent and, therefore, was an indispensable party under Rule 19. *Id.* at 358-59. Just like the Second Circuit

NPGVL1:237428.1-DOC-(MSP) D17700-00017

EXHIBIT B   13

in *Capri Jewelry*, the district court in the *Bose* case found significant the fact that there was a separate action pending where Bose was suing Micro-Acoustics for infringement of the same patent. *Id.* at 36-61. The court also found the following factors to be determinative based upon the facts of the case: (1) Bose had held itself out as the owner of the patent in question; (2) Bose had total control over the patent owner as its parent corporation; and (3) the same attorney represented Bose in both lawsuits. *Id.* at 361.

The instant case presents the same situation set forth in both the *Capri Jewelry* and *Bose* cases. Specifically, there is a separate infringement action pending in California federal court where JIF-PAK is suing Package Concepts for infringement of the same patent at issue in the instant declaratory judgment action. (Exhibit D). Significantly, JIF-PAK has held itself out as the owner of the Patent in question. (Exhibit A). In a March 9, 2005 letter penned by its lawyers, JIF-PAK wrote a letter to one of Package Concepts customers informing it of Package Concepts' alleged patent infringement, and further, requesting it immediately cease and desist from purchasing further product from Package Concepts. In that letter, JIF-PAK's counsel stated: "As indicated in my August 2, 2004 letter, JIF-PAK Manufacturing, Inc. is the owner of the '148 patent' and the '148 patent' is good and valid under the law." (Exhibit A). Moreover, the patent co-owner presumably has total control over its licensee, JIF-PAK. According to the Declaration of Neil Mintz, he is the co-inventor and co-owner of the patent in question. (Mintz Aff. at ¶¶ 2-3). Mr. Mintz is also president of JIF-PAK. (Mintz Aff. at ¶ 8). As president of JIF-PAK, Mr. Mintz presumably has control over the actions of the licensee. Last, JIF-PAK is represented by the same lawyers both in this action and in the California litigation it filed against Package Concepts alleging infringement of the very '148 Patent at issue in this lawsuit. (Exhibit B; Plaintiff's Memo. of Law at p. 6).

NPGVL1:237428.1-DOC-(MSP) 017700-00017

EXHIBIT B   14

Further bolstering the Plaintiff's position is the second line of federal case law based upon the venerable but valid United States Supreme Court case of *Independent Wireless Telephone Co. v. Radio Corp. of America*, 269 U.S. 459 (1926). In that case, the Supreme Court held that where the patent owner is beyond the reach of process, he can nevertheless be joined as an involuntary party bound by the court's decision as long as he is given notice of the pending litigation and an opportunity to join voluntarily. Id. at 473. While the *Independent Wireless* case was decided before the promulgation of Rule 19 and its subsequent amendment, a federal court in *Parkson Corp. v. Fruit of the Loom, Inc.*, No. LR-C-91-853, 1992 WL 541570 (E.D.Ark. Dec. 10, 1992) (copy attached), nevertheless acknowledged the case's continued validity when a federal court conducts its Rule 19(b) analysis. The court in *Parkson* determined the patent owner was not an indispensable party for purposes of Rule 19(b) because he had made the conscious decision not to join his exclusive licensee in litigation involving the validity of his patent. Accordingly, the court's lack of personal jurisdiction over him was not a bar to the case going forward. *Id.* at ** 5-6. In so holding, the court stated: "The Court finds no prejudice to any of the parties in this action if the patent owner is not joined as a party, and that '[t]here is therefore no conceivable reason for exalting formalizing over substance in dismissing the action in view of the non-joiner [the] patent owner.'" *Id.* at * 6 (quoting *Bose Corp.*, 493 F. Supp. 356, 361)).

The Defendants' unconvincingly try to distinguish the foregoing authorities. The Defendants attempt to distinguish *Capri Jewelry*, noting that there was nothing in that case to indicate that the district court lacked jurisdiction to proceed in the absence of patent owner. (Defendants' Memo. at p. xi.). Implicit in any analysis involving whether a patent owner was a necessary and indispensable party for Rule 19 purposes necessarily involves the situation where the addition of that party is not feasible due to a jurisdictional defect. Defendants distinguish the

11

NPGVL1:237428.1-DOC-(MSP) 017700-00017

EXHIBIT B 15

*Bose* case on the grounds that the exclusive licensee issued demand letters and, moreover, controlled both the subsidiary and the patent. That is the exact situation presented in the case at bar: JIF-PAK is a licensee of the '148 Patent under substantial if not complete control by its president, Neil Mintz, who coincidently is also the co-owner and co-inventor of the patent at issue. Defendants seek to distinguish the *Parkson Corporation* case on procedural grounds, noting that in that case the defendant was seeking dismissal due to the absence of the patent owner. This case is procedurally identical to *Parkson Corporation* in that respect: Defendant JIF-PAK is seeking dismissal due to the failure to include the Mintz as individual Defendants. None of the aforementioned authorities on which the Plaintiff relies are distinguishable.

Neil and Marcus Mintz are not indispensable parties for purposes of Rule 19(b). Accordingly, this lawsuit may go forward in their absence notwithstanding any alleged lack of personal jurisdiction. In the event that the Court finds that a question remains as to the individual Defendants' amenability to suit in South Carolina, the '148 Patent owners must be joined as parties to this litigation and that this Court must have personal jurisdiction, Plaintiff seeks leave to conduct limited discovery concerning the Mintz' contacts with the forum state, as well as the relationship between the JIF-PAK companies. *See Trintec Indus., Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1283 (Fed. Cir. 2005) (recognizing in a patent case that a party resisting a motion to dismiss on grounds of lack of personal jurisdiction may be entitled to conduct discovery on that issue).

## CONCLUSION

For the foregoing reasons, the instant Motion should be denied and this case should go forward. Alternatively, Plaintiff requests that this Court allow it to conduct limited discovery on

NPGVL1:237428.1-DOC-(MSP) 017700-00017

EXHIBIT B  16

the personal jurisdiction issue if the Court is inclined to rule that the Mintz are indispensable parties for purposes of Rule 19.

<div style="margin-left: 40%;">

Respectfully submitted,


s/ John B. Hardaway III
_____
John B. Hardaway III (Fed I.D. No. 1710)
NEXSEN PRUET, LLC
201 W. McBee Avenue, Suite 400 (29601)
Post Office Drawer 10648
Greenville, South Carolina  29603-0648
864.370.2211

Attorneys for Plaintiff
Package Concepts & Materials, Inc.

</div>

September 12, 2005
Greenville, South Carolina

NPGVL1:237428.1-DOC-(MSP) 017700-00017

EXHIBIT B  17

# EXHIBIT A

EXHIBIT B  1 8

JOHN L. HALLER
JHALLER@GORDONREES.COM
DIRECT DIAL: (619) 230-7451

ATTORNEYS AT LAW
101 WEST BROADWAY
SUITE 1600
SAN DIEGO, CA 92101
PHONE: (619) 696-6700
FAX: (619) 696-7124
WWW.GORDONREES.COM

March 9, 2005

Mr. Mark Gray
Vice President of Operations
SFG, Inc.
603 Pilot House Drive, 4th Floor
Newport News, Virginia 23606

Re:   Jif-Pak Manufacturing, Inc. vs. SFG, Inc.
      Patent Infringement
      U.S. Patent No. 5,413,148
      Our Ref. No. BJPMI 1027086 (7211-IN05)

Dear Mr. Gray:

This is further to my letter to dated August 2, 2004, notifying you of the existence of U.S. Patent No. 5,413,148 (the '148 Patent) and offering you the opportunity to discuss with Jif-Pak Manufacturing, Inc. various options for SFG, Inc. to avoid infringement of the '148 Patent. I have enclosed a copy of my August 2, 2004 letter for your reference.

SFG has had more than adequate time to evaluate the validity and enforceability of the '148 patent and to confirm their infringement. Notwithstanding the extended lapse of time, we have had no response from SFG regarding these options.

As indicated in my August 2, 2004 letter, Jif-Pak Manufacturing, Inc. is the owner of the '148 Patent and the '148 Patent is good and valid under the law. SFG's meat encased net includes a stockinette that includes a tubular net structure having a given stretch capacity and a first set of longitudinal strands and a second set of lateral strands where the longitudinal strands intersect the lateral strands in locking engagement to form a four sided grid like pattern and where the strands having less stretch capacity are knit into the threads of the stockinette member so that the checkerboard pattern is impressed upon meat product stuffed into the casing.

In view of the above, SFG's meat encased net product infringes at least claim 1 of the '148 Patent.

EXHIBIT B   19

Mr. Mark Gray
SFG, Inc.
March 9, 2005
Page 2

    My client Jif-Pak Manufacturing, Inc. presumes that SFG takes such steps as are reasonably necessary to avoid improper and unauthorized use of another's patented technology. In order to avoid the expense and the time required to litigate this infringement, please provide, by return mail, your agreement to immediately cease and desist the use of Jif-Pak Manufacturing, Inc.'s technology embodied in claim 1 of the '148 patent. Please understand that my client is anxious for an immediate resolution of this matter.

    In view of SFG's failure to respond to our initial inquiry, Jif-Pak Manufacturing, Inc. will only consider an immediate resolution and if SFG and its affiliates immediately cease all use of the patented technology, Jif-Pak Manufacturing, Inc. will waive past damages.

    This proposal remains valid for two weeks from the date of this letter and your immediate reply will assist in forming an amicable resolution.

                Very truly yours,

                GORDON & REES LLP

                John L. Haller

JLH:af
Enclosure

BJF148302700621S44f_3

EXHIBIT B  20

# EXHIBIT B

EXHIBIT B 21

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### GREENVILLE DIVISION

| | |
|---|---|
| PACKAGE CONCEPTS & MATERIALS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>JIF-PAK., Neil Mintz, and Marcus Mintz,<br><br>Defendants. | Case No. 6:05-1184 RBH<br><br>DECLARATION |

### DECLARATION of ANDREW EDWARD BYLENGA

I, Andrew Edward Bylenga, do state as follows:

1.  THAT I am Vice President of Package Concepts and Materials, Inc. (PCM), the plaintiff in the above entitled action;

2.  THAT I have been contacted by PCM customers who have been contacted by Jif-Pak, Inc., and advised of threats by Jif-Pak to initiate suit against PCM customers should they continue to buy netting product from PCM. Some of those customers have requested that PCM sign indemnification agreements as a condition of continued business; in particular, PCM has had to provide indemnification agreements to SFG, Inc., Publix Supermarkets, Inc., Cedar Hollow Foods, Inc., Tyson Foods, Dietz and Watson, and Fresh Mark, Inc.;

3.  THAT some businesses have discontinued doing business with PCM because of these threats from Jif-Pak, Inc. In particular, Publix Supermarkets and Gusto Packing have discontinued business with PCM because of the Jif-Pak threats;

4.  THAT while it is difficult to quantify the amount of business lost, I would estimate that loss to be large, at least as much as $100,000.00;

5.  THAT PCM is a South Carolina corporation doing business at 1023 Thousand Oaks Boulevard, Greenville South Carolina, 29607. This loss of business has economic impact here in Greenville, South Carolina;

1    NPGVL1:237537.1-AF-(JBHIII) 017700-00023

EXHIBIT B   22

6. That on information and belief, I believe that Jif-Pak is selling their netting product into the State of South Carolina to Louis Rich in Newberry, South Carolina and to Greenwood Packing in Greenwood, South Carolina.

I declare under penalty of perjury that the foregoing is true and correct (28 USC 1746) this 12th day of September, 2005.

Andrew Edward Bylenga: _____

NPGVL1:237537.1-AF-(JBHIII) 017700-00023

EXHIBIT B 23

# EXHIBIT C

EXHIBIT B  24

Food Online buyer's guide provides products and services for food processing, nutraceuti... Page 1 of 1

# Food Online℠
**A VertMarkets Marketplace for Industry Professionals**

THE ONE &
FOODSERVICE TECH

| Home | Buy Online | Sell Online | Services | Jobs | News & Community | Sign-In | Tools |

**Search:** Tips

Categories

( Search )

**Buyer's Guide**
List Suppliers

**Product Showcase**

**Market Research Reports**

**Bookstore**

**Tools**
Register
Free Newsletter
Help

## ▶ Buyer's Guide

Buyer's Guide Home | List Suppliers

**Company Contact And Product Information**

## Jif-Pak Industrial Knitting
2 Cedar St.
Champlain, New York 12919
UNITED STATES
**Phone:** 518-2988256
**Fax:** 518-298-8257
**Contact:** Marcus Mintz

**Products**

**Supplies and Accessories**
• Netting, Elastic
• Stockinettes For Beef; Ham; Etc.

**Keywords**

No Registered Keywords.

**Send This Page To An Associate**

Food Online | VertMarkets, Inc. | Contact Food Online
Legal | Help | Privacy Statement | Advertising

Copyright © 1996-2005, VertMarkets, Inc. All rights reserved.

EXHIBIT B   25

# EXHIBIT D

JS 44
(Rev. 07/89)

**CIVIL COVER SHEET**   **ORIGINAL**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I. (a) PLAINTIFFS**
NEIL MINTZ, MARCUS MINTZ, and JIF-PAK MANUFACTURING, INC.

**DEFENDANTS**
DIETZ & WATSON, INC., and PACKAGE CONCEPTS & MATERIALS, INC.

05 JUL 22  PH 4: 23

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  SAN DIEGO
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE DEPUTY
TRACT OF LAND INVOLVED

05 CV 1470 L      (AJB)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
GORDON & REES LLP
101 W. BROADWAY
SUITE 1600
SAN DIEGO, CA  92101
619-696-6700

ATTORNEYS (IF KNOWN)
John B. Hardaway, III, Esq.
NEXSEN PRUET
201 W. McBee Avenue, Suite 400
P. O. Drawer 10648, Greenville, SC  29603
864-282-1172

**II. BASIS OF JURISDICTION** (PLACE AN 'X' IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
Patent Infringent (direct, contributory, inducement); Declaratory Judgment (Non-Interference with Business Relationship)

LY: 1338 SD

**V. NATURE OF SUIT** (PLACE AN 'X' IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs. | ☒ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 343 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | SOCIAL SECURITY | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | LABOR | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | HABEAS CORPUS: | ☐ 750 Other Labor Litigation | FEDERAL TAX SUITS | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Conditions | | | |

**VI. ORIGIN** (PLACE AN 'X' IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removal from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ in excess of $75,000 and declaratory relief
CHECK YES only if demanded in complaint: JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE Hon. Robert B Harwell  Docket Number District of South Carolina (Greenville) Case No. 05-CV-1184

DATE
July 22, 2005

SIGNATURE OF ATTORNEY OF RECORD
John L. Haller, Esq., GORDON & REES LLP

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

115662  $250.0    7/22/05

**EXHIBIT B  27**

ORIGINAL

FILED

05 JUL 22 PH 4: 23

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

1  JOHN L. HALLER (SBN: 61392)
   CHARLES V. BERWANGER (SBN: 47,282)
2  SUSAN B. MEYER (SBN: 204931)
   GORDON & REES LLP
3  101 West Broadway
   Suite 1600
4  San Diego, CA 92101
   Telephone: (619) 696-6700
5  Facsimile: (619) 696-7124

6  Attorneys For: Plaintiffs
   NEIL MINTZ, MARCUS MINTZ AND
7  JIF-PAK MANUFACTURING, INC.

8                    UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10

11 NEIL MINTZ, an individual; and MARCUS          CASE NO. 05 CV 1470 L    (AJB)
   MINTZ, an individual; and JIF-PAK
12 MANUFACTURING, INC., a California             COMPLAINT FOR PRELIMINARY
   corporation,                                  AND PERMANENT INJUNCTION AND
13                                               FOR DAMAGES FOR PATENT
                                                 INFRINGEMENT, CONTRIBUTORY
14                          Plaintiffs,          INFRINGEMENT AND INDUCMENT
                                                 TO INFRINGE, AND FOR
15                    v.                          DECLARATORY RELIEF
                                                 REGARDING NON-INTERFERENCE
16 DIETZ & WATSON, INC., a Pennsylvania          WITH BUSINESS RELATIONSHIP
   corporation and PACKAGE CONCEPTS &
17 MATERIALS, INC., a South Carolina             *Demand for Jury Trial*
   corporation,
18                          Defendants.

19

20

21         Plaintiffs, NEIL MINTZ, MARCUS MINTZ, and JIF-PAK MANUFACTURING, INC.

22 (collectively "Plaintiffs") for their complaint against Defendant, DIETZ & WATSON, INC.,

23 (hereinafter called "D&W") and PACKAGE CONCEPTS & MATERIALS (hereinafter "PCM")

24 hereby alleges as follows:

25                                    I.

26                              JURISDICTION

27         1.    This is a civil action for patent infringement, contributory infringement and

28 inducement to infringe which arises under the Patent Laws of the United States namely Title 35

                                       -1-
                                     COMPLAINT

1    of the United States Code and this Court has jurisdiction under 28 U.S.C. §§ 1331, 1332 and

2    1338(a).  In addition, this is an action for declaratory judgment (28 U.S.C. § § 2201, 2202)

3    regarding the non-interference with a business relationship and this Court has jurisdiction under

4    28 U.S.C. § 1367.

## II.

### VENUE

7        2.      Plaintiffs are informed and believe that this Court is the proper venue under 28

8    U.S.C. §§ 1391(b), (c) and § 1400 because Defendant D&W is subject to personal jurisdiction in

9    this judicial district, the products of the infringing activities, as alleged herein below, are

10   advertised and sold within this judicial district and D&W is doing business in this judicial

11   district.

12       3.      Plaintiffs are informed and believe that this Court is the proper venue under 28

13   U.S.C. §1391(b), (c) and § 1440 because Defendant PCM, is subject to personal jurisdiction in

14   this judicial district, the products of the infringing activities, as alleged herein below, are

15   advertised and sold within this judicial district and PCM is doing business in this Judicial

16   District.  Plaintiffs are further informed and believe that Defendant PCM will admit to the

17   jurisdiction of this court.

## III.

### THE PARTIES

20       4.      Plaintiff Neil Mintz is an individual, residing in the county of San Diego.

21       5.      Plaintiff Marcus Mintz is an individual, residing in the county of San Diego.

22       6.      Jif-Pak Manufacturing, Inc. is a California corporation with its principal place of

23   business in the County of San Diego ("Jif-Pak").

24       7.      Upon information and belief, Defendant D&W is a Pennsylvania corporation,

25   with a principal place of business in Philadelphia, Pennsylvania.

26       8.      Upon information and belief, Defendant PCM is a South Carolina corporation,

27   with a principal place of business in Greenville, South Carolina.

28   /////

-2-

COMPLAINT

EXHIBIT B   29

Gordon & Rees LLP
101 West Broadway
Suite 1600
San Diego, CA 92101

**IV.**

**COUNT 1**

**PATENT INFRINGEMENT**

**(Against All Defendants)**

9.     Plaintiffs, Neil Mintz and Marcus Mintz, reallege the allegations of the foregoing Paragraphs 1 through 6, and incorporates allegations herein by reference as though fully set forth.

10.     On May 9, 1995, United States Letters Patent No. 5,413,148 (the '148 patent) entitled Casing Structure for Encasing Meat Products (hereinafter the Patented Invention) issued to co-inventors Neil Mintz and Marcus Mintz. Plaintiffs are the owners/licensees of the '148 patent and enjoy all rights, title and interest in and to said '148 patent.

11.     Plaintiffs Neil Mintz and Marcus Mintz, have informally licensed the right to make have made use sell and advertise the invention claimed in the '148 patent to Plaintiff Jif-Pak.

12.     The '148 patent relates to a tubular casing for meat products having a stockinette member with a knit tubular member formed of threads and a netting arrangement which is intricately formed with the stockinette member. The netting arrangement may either be knit in with the stockinette member or the strands of the knitting arrangement may be laid in.

13.     Plaintiffs are informed and believe and on that basis alleged that Defendants have been and continue to directly infringe, contributory infringement and/or induced others to infringe the '148 patent by practicing the patent invention, selling components which have no substantial non-infringing use and/or knowingly teaching others to practice the patented invention.

14.     Plaintiffs are informed and believe that Defendants infringement is willful, malicious and without regard to the rights of Plaintiffs.

15.     Plaintiffs are further informed and believe that such practice will continue unless enjoined by this Court.

/////

<div style="text-align:center">

Gordon & Rees LLP
101 West Broadway
Suite 1600
San Diego, CA 92101

</div>

-3-
COMPLAINT

EXHIBIT B   30

## V.

## COUNT TWO

## DECLARATORY JUDGMENT: NON-INTERFERENCE
## WITH BUSINESS RELATIONSHIP

### (Against All Defendants)

16.     Plaintiff Jif-Pak reallege all the allegations in the foregoing paragraphs 1 through 15 and incorporates said allegations herein by reference as though fully set forth.

17.     Plaintiff Jif-Pak is the licensee of the '148 patent and has notified Defendant D&W and other customers including Specialty Food Group, Inc. of Virginia of the existence of the '148 patent and that their activities may be infringing said patent.

18.     Plaintiff Jif-Pak's notice was in the form of a communication to Plaintiff Jif-Pak's current customers to identify the benefits of continuing to do business with Jif-Pak.

19.     Defendant PCM has asserted that Jif-Pak's communication with its customers regarding the existence of the '148 patent and encouraging its customers to maintain its business with Jif-Pak constitutes an interference with PCM's relationship with said customers.

20.     Jif-Pak has notified PCM that it has the right to advise others, specifically Plaintiffs own customers as to the existence of the '148 patent and of its belief that the activities of such customers may constitute infringement and that Jif-Pak would like to maintain their business.

21.     There is a present actual and continuing controversy between Plaintiff Jif-Pak and Defendant PCM as to Jif-Pak's right to notify its customers including Dietz &Watson, Inc. of the existence of the '148 patent and to indicate that its customers including Dietz & Watson, Inc. may be infringing such patent..

## VI.

## PRAYER

WHEREFORE, Plaintiffs pray the Court for the following relief:

1.      That Defendants, their subsidiaries, affiliates, parents, successors, assigns, officers, agents, servants, employees, attorneys, and all persons acting in concert or in

Gordon & Rees LLP
101 West Broadway
Suite 1600
San Diego, CA 92101

-4-
COMPLAINT

1   participation with them, or any of them, be preliminarily enjoined during the pendency of this

2   action, and permanently enjoined thereafter from infringing, contributing to the infringement of,

3   and inducing infringement of the '148 patent and specifically from directly or indirectly making,

4   using, marketing, advertising, offering for sale, or selling and distributing devices embodying the

5   invention of the '148 patent during the life of the '148 patent without express written authority of

6   Plaintiffs.  That Defendants be ordered to deliver to Plaintiffs for destruction at Plaintiffs' option,

7   their entire inventory of products that infringe the '148 patent.

8          2.      That Defendants and each of them, be directed to fully compensate Plaintiffs for

9   all damages attributable to Defendants' infringement of '148 patent in an amount according to

10  proof at trial.

11         3.      That Plaintiffs' notification to Dietz & Watson, Inc. and other customers and

12  potential customers regarding the existence of the '148 patent is lawful and does not constitute

13  an interference with any business relationship of Defendant PCM.

14         4.      For an accounting of such damages.

15         5.      That such damages be trebled.

16         6.      An award of attorneys' fees, interest and costs against Defendants and each of

17  them.

18

19  Dated: July 22, 2005                              GORDON & REES LLP

20

21                                          By: _____
                                                 John L. Haller
22                                               Attorneys For Plaintiffs
                                                 NEIL MINTZ and MARCUS MINTZ
23

24

25

26

27

28

                                             -5-
                                          COMPLAINT

Gordon & Rees LLP
101 West Broadway
Suite 1600
San Diego, CA 92101

EXHIBIT B   32

1   DEMAND FOR JURY TRIAL

2   Plaintiffs hereby demand trial by jury of every issue that is triable by jury.

3

4   Dated: July 22, 2005                              GORDON & REES LLP

5

6                                            By:
                                                 John L. Haller
7                                            Attorneys For Plaintiffs
                                             NEIL MINTZ and MARCUS MINTZ
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gordon & Rees LLP
101 West Broadway
Suite 1600
San Diego, CA 92101

-6-
COMPLAINT

EXHIBIT B  33

# APPENDIX OF UNREPORTED CASES

*Westlaw.*

Not Reported in F.Supp.                                                      Page 1

Not Reported in F.Supp., 1992 WL 541570, 28 U.S.P.Q.2d 1066
(Cite as: Not Reported in F.Supp.)

▷
Not Reported in F.Supp., 1992 WL 541570, 28
U.S.P.Q.2d 1066

United States District Court, E.D. Arkansas,
Western Division.
PARKSON CORPORATION, Plaintiff,
v.
FRUIT OF THE LOOM, INC., Union Underwear
Company, Inc., Fruit of the Loom Arkansas, Inc.,
and Environmental Dynamics, Inc., Defendants.
No. LR-C-91-853.

Dec. 10, 1992.

Richard J. Berkley , Marta E. Delsignore , Francis
J. Hone , Brumbaugh, Graves, Donohue &
Raymond , New York City, Peter B. Heister ,
Eichenbaum, Scott, Miller, Liles & Heister, P.A.,
Little Rock, AR, for plaintiff.
Norman H. Zivin , Cooper & Dunham , New York
City, Peter G. Kumpe , G. Alan Perkins , Williams
& Anderson , Little Rock, AR, Richard R. Johnson ,
Kokjer, Kircher, Bowman & Johnson, Kansas City
MO, for defendants.

*MEMORANDUM AND ORDER*

SUSAN WEBBER WRIGHT, District Judge.
*1 Plaintiff Parkson Corporation ("Parkson"),
brings this action against Environmental Dynamics,
Inc. ("EDI"), Fruit of the Loom, Inc. ("FOL"),
Union Underwear Company, Inc. ("Union"), and
Fruit of the Loom Arkansas, Inc. ("FOL-Arkansas")
for patent infringement and unfair competition.
The matter is before the Court on motion of EDI to
dismiss the complaint for failure to join an
indispensable party [doc. # 23]. For the ·reasons
that follow, the Court finds that EDI's motion to
dismiss should be and hereby is denied.

I.

Reinhart von Nordenskjold is the sole proprietor of
von Nordenskjold Verfahrenstechnik Ingeniorburo (
"VNO"), a firm in Hohenbrunn, West Germany.
On September 1, 1981, United States Patent No.
4,287,062 was issued to Mr. von Nordenskjold for "
Apparatus for Biological Purification of Sewage"
(the "Biolac Patent"). According to the abstract of
the Biolac Patent,
  [t]his invention relates to apparatus for the
  biological purification of sewage, comprising at
  least one active sludge basin having an inlet and
  an outlet, and a plurality of bottom aerators
  suspended adjacent one another from a carrier
  and supplied by an air supply conduit for
  introducing air into the sewage adjacent the
  bottom of said basin, said bottom aerators being
  disposed in said basin for reciprocating
  movement therein.
On October 4, 1984, Mr. von Nordenskjold,
through VNO, entered into an exclusive license
agreement with Parkson with respect to the Biolac
Patent. Pursuant to ¶ 2.01 of the license
agreement, VNO granted to Parkson "the exclusive
right and license" to make, use, and sell the
patented invention in the United States.

On August 19, 1991, Parkson filed a complaint in
the United States District Court for the Southern
District of New York against EDI and FOL alleging
patent infringement and unfair competition. By
order dated December 9, 1991, United States
District Judge Louis J. Freeh transferred this case to
the Eastern District of Arkansas pursuant to 28
U.S.C. § 1404(a) and 1406(a). At the time of
transfer, there were certain questions in the case still
unresolved. Parkson filed an amended complaint
on November 19, 1991, adding FOL-Arkansas and
Union as defendants. Judge Freeh stated in his
December 9 order that "[b]ecause FOL-Delaware
contests the filing of the amended complaint, the
court does not consider FOL-Arkansas. and Union
Underwear to be defendants at this time." *Parkson
Corp. v. Fruit of the Loom, Inc.,* No. 91 Civ. 5594,
slip op. at 2 n. 1 (S.D.N.Y. Dec. 9, 1991).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT B  35

Not Reported in F.Supp.                                                                                    Page 2

Not Reported in F.Supp., 1992 WL 541570, 28 U.S.P.Q.2d 1066
(Cite as: Not Reported in F.Supp.)

However, this Court, by order dated February 27, 1992, noted that FOL offered no further objections to the amended complaint, and that it did not appear that adding these two defendants, which are independent subsidiaries of FOL-Delaware, was prejudicial to FOL. The Court therefore found that the amended complaint adding the two additional defendants was proper.

Parkson states in its amended complaint that it has the right to initiate and maintain actions for the infringement of the Biolac Patent, and that pursuant to its license, it has manufactured, sold and installed a large number of biological purification systems throughout the United States. Parkson alleges that EDI has infringed the Biolac Patent by manufacturing, selling and installing on the premises of FOL, Union, and FOL-Arkansas at Osceola, Arkansas, a biological purification system that conforms to the requirements of the Biolac Patent. Parkson further alleges that EDI has manufactured, used and sold similar infringing installations at other locations within the United States, and alleges that EDI has competed unfairly with Parkson by submitting proposals to sell and install at various locations its infringing biological purification system in direct competition with Parkson proposals. Such competitive proposals for the installation of the infringing EDI biological purification systems have, Parkson alleges, caused substantial damage to Parkson by requiring Parkson to reduce its proposed prices for installation of the patented Biolac system.

II.

*2 EDI argues that Mr. von Nordenskjold and VNO are necessary parties to this action and must be joined under Fed.R.Civ.P. 19(a). FN1 It argues that it cannot be given complete relief without joinder of the patent owner because whatever the outcome, the patent owner retains the right to file an infringement action against EDI for the same acts as are at issue in this action. EDI further argues that it will be prejudiced due to the unavailability of essential discovery. If, EDI argues, Mr. von Nordenskjold cannot be made a party under Rule 19(a), Fed.R.Civ.P. 19(b) requires dismissal of this action.

A.

The Court first finds that Mr. von Nordenskjold would be a necessary party under Rule 19(a) if he is subject to process. Rule 19(a) provides:

(a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party.

If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff.

"A patent owner should be viewed as a necessary party if it retains 'any interest' in the patent." *Erbamont Inc. v. Cetus Corp.,* 720 F.Supp. 387, 393 (D.Del.1989) (citations omitted). Here, ¶ 6.01 of the licensing agreement between VNO and Parkson provides that in the event an infringement is discovered, VNO and Parkson shall agree what action to take against the third party and how to share between VNO and Parkson any recovery obtained as a result of such action. That paragraph further gives VNO the right to bring an infringement action on its own if VNO and Parkson do not agree as to what action to take. Agreeing on what action to take in the event an infringement is discovered and how to share in any recovery is the retention of an interest in the patent. *See Erbamont Inc. v. Cetus Corp., supra,* 720 F.Supp. at 393. Considering also that EDI's motion to dismiss is based on the argument that Mr. von Nordenskjold will not be bound by any judgment rendered in this action if he is not joined as a party, the Court finds that the joinder of Mr. von Nordenskjold as a necessary party under Rule 19(a) would clearly be proper if he was subject to service of process. *Cf. Catanzaro v. International Telephone & Telegraph*

© 2005 Thomson/West, No Claim to Orig. U.S. Govt. Works.

EXHIBIT B   36

Not Reported in F.Supp.                                                   Page 3

Not Reported in F.Supp., 1992 WL 541570, 28 U.S.P.Q.2d 1066
(Cite as: Not Reported in F.Supp.)

*Corp.*, 378 F.Supp. 203, 206 (D.Del.1974) (finding joinder of the patent owner under Rule 19(a) would be proper if subject to process where the patent owner retains an interest in the patent and defendants "vigorously contend" that patent owner would not be bound by resolution of case in his absence).

### B.

**\*3** In concluding that the patent owner would be a necessary party under Rule 19(a) if subject to process, the Court makes no conclusive finding as to whether the Agreement between VNO and Parkson is a license or an assignment. *See Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891) ( "[w]hether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions"). EDI argues that Parkson lacks standing to bring this action because the Agreement between VNO and Parkson is such that Parkson is suing as a mere licensee and only the patent owner has standing to sue for patent infringement in such cases. Certainly, the traditional rule has been that when the interest transferred is deemed a license, the patent-holder is a necessary party because the patent holder is still the real party in interest with respect to the validity of the patent. *Erbamont Inc. v. Cetus Corp.*, *supra*, 720 F.Supp. at 393 (citation omitted). *See also Independent Wireless Tel. Co. v. Radio Corp. of America*, 269 U.S. 459, 466-67 (1926) (finding that the patent owner or the owner's assignee can maintain an action for patent infringement but that a licensee alone cannot). However, the adoption of the 1966 amendment to Rule 19 of the Federal Rules of Civil Procedure makes clear that patent owners are not *per se* indispensable parties in infringement actions. *Catanzaro v. International Telephone & Telegraph Corp.*, *supra*, 378 F.Supp. at 205 (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968)). "Rule 19 teaches that whether or not a party is indispensable is the conclusion, not the starting point, of legal analysis." *Id. See also Calgon Corp. v. Nalco Chemical Co.*, 726 F.Supp. 983, 989 (D.Del.1989) (finding that the need for

the patent owner in an infringement case is a problem of joinder and proper parties under the rubric of Rule 19 ); *Erbamont Inc. v. Cetus Corp.*, *supra*, 720 F.Supp. at 393-94 (finding the patent owner to be a necessary party under Rule 19(a), but declining to definitively label the agreement a license or an assignment, noting that many cases fall in the middle of these two extremes). FN3

Looking to Rule 19 in determining whether this action may proceed in the absence of the patent owner does raise another issue, however, namely whether Mr. von Nordenskjold may be joined as an involuntary plaintiff if it should be determined that he is not subject to process. FN4 *See Calgon Corp. v. Nalco Chemical Co.*, *supra*, 726 F.Supp. at 990 n. 3 (questioning, but not deciding, whether the involuntary plaintiff procedure is available when the absent party is beyond the reach of the court's process). The plain language of the 1966 amendment to Rule 19(a) would seem to suggest that only if one is subject to the court's process can he or she be made an involuntary plaintiff. Nevertheless, courts have not been uniform in their application of the service of process requirement. *Compare Catanzaro v. International Telephone & Telegraph Corp.*, *supra*, 378 F.Supp. at 209 ("[i]t would appear that the present wording of Rule 19(a) , unlike the previous Rule 19(a) and the holding of *Independent Wireless*, limits the involuntary plaintiff procedure to situations where the absent party is already found within the reach of the court's process"), and *Vaupel Textilmaschinen v. Meccanica Euro Italia*, 944 F.2d 870, 876 n. 1 (Fed.Cir.1991) ("... if a party is deemed necessary under Rule 19(a), but cannot be joined because it is not subject to process, then the court must consider in equity and good conscience whether the party is indispensable and dismissal appropriate"), with *Joy Technologies, Inc. v. Flakt, Inc.*, 772 F.Supp. 842, 847-48 (D.Del.1991) (finding that the patent owner, a Danish corporation beyond the jurisdiction of the Court and who refused to voluntarily join the action upon the request of the licensee, must be joined as an involuntary plaintiff pursuant to Rule 19(a) ), and *Sheldon v. West Bend Equipment Corp.*, 718 F.2d 603, 606-07 (3rd Cir.1983) (citing the Advisory Committee Note to the *original* rule 19 in finding that a party may be joined as an involuntary

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT B 37

Not Reported in F.Supp.                                                                    Page 4

Not Reported in F.Supp., 1992 WL 541570, 28 U.S.P.Q.2d 1066
(Cite as: Not Reported in F.Supp.)

plaintiff if such party is beyond the jurisdiction of the court and has refused to voluntarily join the action).

*4 EDI attempts to avoid the issue by arguing that Mr. von Nordenskjold is subject to personal jurisdiction and service of process based on his receipt of significant licensing fees under the License Agreement as a result of commercial activity carried out in this judicial district. However, EDI cites no authority for such a proposition, and it is not apparent to this Court that such removed contact subjects Mr. von Nordenskjold to personal jurisdiction and service of process. The License Agreement between VNO, a West German firm, and Parkson, a Florida corporation, was made in the State of Florida and the construction, validity, and performance of the Agreement is to be governed by the laws of that State. The Agreement does not require that any act be done in the State of Arkansas, and the Court finds no other basis to sustain personal jurisdiction over Mr. von Nordenskjold. *See S.S. Kresge Co. v. Kamei-Autokomfort,* 363 F.Supp. 257 (D.Minn.1973) (finding that the patent owner, a West German corporation whose exclusive licensee did business in Minnesota, was not subject to suit in Minnesota to determine invalidity of patent, where licensing agreement did not require that anything be done in Minnesota).

The Court finds EDI has not shown that Mr. von Nordenskjold is subject to service of process and that he cannot for that reason be made an involuntary plaintiff under Rule 19(a). Because Mr. von Nordenskjold is a necessary party, the Court must consider whether, under Rule 19(b), this action can proceed in his absence.

### C.

Rule 19(b) provides that if a person described in Rule 19(a) cannot be made a party, the court shall consider whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent party being thus regarded as indispensable. The factors to be considered by the court include: first, to what

extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; and fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for joinder.

The first two factors to be considered concern the extent a judgment rendered in the absence of Mr. von Nordenskjold might be prejudicial to him or the other parties in this case and whether such prejudice can be lessened or avoided. EDI argues that these factors weigh in its favor because any judgment, whether favorable or unfavorable, would subject EDI to the risk of further litigation by the patent owners unless they are made parties and bound by the judgment. EDI further argues it will be prejudiced because essential discovery will be unavailable.

The Court does not find a significant threat of future litigation arising out of the facts comprising this action. Mr. von Nordenskjold states in his declaration filed on September 10, 1992, that pursuant to ¶ 6.01 of the license agreement, he authorized Parkson to bring this action as the sole plaintiff against EDI and the other named defendants, that he has refused to join as a plaintiff in this matter because he has no intent or interest in becoming involved in litigation relating to the Biolac Patent, and that he will be bound by the outcome of this action and will bring no independent legal action against EDI or the other named defendants on the same cause or causes of action stated in the complaint or amended complaint in this lawsuit. Considering Mr. von Nordenskjold's refusal to join in this action and his declaration that he will bring no independent legal causes of action against any of the defendants, the equitable defenses of laches and collateral estoppel should adequately protect EDI against any future duplicate litigation by the patent owner. *See Catanzaro v. International Telephone & Telegraph Corp., supra,* 378 F.Supp. at 206-07; *Erbamont Inc. v. Cetus Corp., supra,* 720 F.Supp. at 394-95; *Howes v. Medical Components, Inc.,* 698 F.Supp. 574, 578 (E.D.Pa.1988) ; *Willingham v. Star*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT B 38

Not Reported in F.Supp.                                                                                    Page 5

Not Reported in F.Supp., 1992 WL 541570, 28 U.S.P.Q.2d 1066
(Cite as: Not Reported in F.Supp.)

*Cutter Co.*, 555 F.2d 1340, 1345 (6th Cir.1977).

*5 Nor does the Court find that EDI will be unduly prejudiced in conducting discovery. EDI argues that joinder of Mr. von Nordenskjold and VNO is required to provide EDI with access to discovery that is essential under the special circumstances. It claims that documents relevant to its defense are apparently all located in Germany under the control of Mr. von Nordenskjold, and that obtaining such documents will be possible only if Mr. von Nordenskjold is made a party. The Court disagrees. EDI has made no showing that it has unsuccessfully attempted to obtain any documents relevant to its defense, and Parkson has stated that Mr. von Nordenskjold will be made reasonably available in this country for the taking of a deposition. Moreover, Parkson specifically represents to this Court that "discovery in this action will not be hampered," stating that "Dr. von Nordenskjold has ... confirmed [in his declaration filed September 10, 1992] that he will cooperate with Parkson in responding to reasonable discovery requests for information and/or documents within his files or VNO's files." Parker's representations to this Court should sufficiently address EDI's concerns regarding discovery. *Cf. Erbamont Inc. v. Cetus Corp., supra,* 720 F.Supp. at 395 (finding no prejudice in conducting discovery when the patent owner agreed to cooperate in discovery requests). The Court would only add that it expects Parkson and Mr. von Nordenskjold to fully cooperate with EDI in responding to reasonable discovery requests that are relevant to the allegations of Parkson's amended complaint.

The third factor to be considered is whether a judgment rendered in the person's absence will be adequate. This factor pertains to the interest of the courts and the public in complete, consistent and efficient settlement of controversies. *Erbamont Inc. v. Cetus Corp., supra,* 720 F.Supp. at 395 (citation omitted). Here, EDI argues that a judgment favorable to EDI would not put this matter to an end as it should because Mr. von Nordenskjold and VNO could bring another action and require EDI to defend again. As previously noted, however, the patent owner has specifically authorized this suit in his absence and waived the right to protest any

adverse consequences that might result from its adjudication, including the filing of duplicate litigation. The Court therefore finds that a judgment rendered in Mr. von Nordenskjold's absence will be adequate.

The fourth factor to be considered is whether the plaintiff will have an adequate remedy if the action is dismissed for joinder. EDI argues that Parkson has an adequate remedy if this action is dismissed as it could bring another action and join Mr. von Nordenskjold as an involuntary plaintiff. While an exclusive licensee can, in a proper case, join a patent owner as a party to an infringement suit when the owner is unwilling to voluntarily join the action, *see Independent Wireless Tel. Co. v. Radio Corp. of America, supra,* 269 U.S. 459, Parkson asks that Mr. von Nordenskjold be made an involuntary plaintiff in the case at bar if this Court determines that he is an indispensable party. Were this Court to accept EDI's argument that Parkson could join the patent owner as an involuntary plaintiff even though he is not subject to service of process and that such joinder was necessary to a fair resolution of this case, the Court would not grant EDI's motion to dismiss for nonjoinder of the patent owner, but would join Mr. von Nordenskjold as an involuntary plaintiff *in this case.* This factor therefore does not necessarily weigh in favor of EDI.

*6 Having considered the Rule 19(b) factors, the Court concludes that the patent owner in this case is not an indispensable party. Mr. von Nordenskjold specifically states that he has refused to join as a plaintiff in this matter, that he will be bound by the outcome of this action, that he will bring no independent legal action against EDI or the other named defendants on the same causes of action in this lawsuit, and that he will cooperate with Parkson in responding to reasonable discovery requests for information and documents within his files or VNO's files. The Court finds no prejudice to any of the parties in this action if the patent owner is not joined as a party, and that "[t]here is therefore no conceivable reason for exalting formalism over substance and dismissing the action in view of the nonjoinder of [the patent owner]." *Micro-Acoustics Corp. v. Bose Corp.,* 493 F.Supp. 356, 361 (S.D.N.Y.1980).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT B   39

Not Reported in F.Supp.                                                                    Page 6

Not Reported in F.Supp., 1992 WL 541570, 28 U.S.P.Q.2d 1066
(Cite as: Not Reported in F.Supp.)

### III.

In sum, the Court finds that EDI's motion to dismiss should be and it hereby is denied. The Court does note, however, that this decision involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from this order may materially advance the ultimate termination of the litigation. An interlocutory appeal may therefore be in order. *See* 28 U.S.C. § 1292(b).

> FN1. As VNO is a sole proprietorship owned by Mr. von Nordenskjold, the Court will refer to VNO and Mr. von Nordenskjold collectively as Mr. von Nordenskjold.

> FN2. In finding that a licensee alone cannot maintain an action for patent infringement, the Court in *Independent Wireless* fashioned a remedy for those licensees who are unable to procure the presence of the patent owner, holding that " [t]he owner beyond the reach of process may be made coplaintiff by the licensee, but not until after he has been requested to become such voluntarily. If he declines to take any part in the case, though he knows of its imminent pendency and of his obligation to join, he will be bound by the decree which follows. We think this result follows from the general principles of res judicata." *Id.* at 472-73.

> FN3. EDI cites *Agrashell, Inc. v. Hammons Products Co.,* 352 F.2d 443 (8th Cir.1965), as requiring the presence of a patent owner as plaintiff in an infringement action. *Agrashell* was decided prior to the 1966 amendment to Rule 19 and therefore is not controlling.

> FN4. Mr. von Nordenskjold filed a declaration on September 10, 1992, in which he states that he does not wish to join this action.

E.D.Ark.,1992.

Parkson Corp. v. Fruit of the Loom, Inc.
Not Reported in F.Supp., 1992 WL 541570, 28 U.S.P.Q.2d 1066

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT B  40