USDC SCAN INDEX SHEET

















RYC   10/24/05   14:20
3:05-CV-01470   MINTZ V. DIETZ AND WATSON INC
*11*
*DECL.*

ORIGINAL

JOHN L. HALLER (SBN: 61392)
SUSAN B. MEYER (SBN: 204931)
GORDON & REES LLP
101 West Broadway
Suite 1600
San Diego, CA 92101
Telephone: (619) 696-6700
Facsimile: (619) 696-7124

Attorneys For: Plaintiffs
NEIL MINTZ, MARCUS MINTZ and
JIF-PAK MANUFACTURING, INC.

FILED

OCT 21 2005

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

NEIL MINTZ, an individual; and MARCUS
MINTZ, an individual; and JIF-PAK
MANUFACTURING, INC., a California
corporation,

                              Plaintiffs,

        v.

DIETZ & WATSON, INC., a Pennsylvania
corporation and PACKAGE CONCEPTS &
MATERIALS, INC., a South Carolina
corporation,

                              Defendants.

CASE NO. 05 CV 1470 L (AJB)

**DECLARATION OF JOHN L. HALLER
IN SUPPORT OF OPPOSITION TO
MOTION TO DISMISS**

DATE:      **November 7, 2005**

TIME:      **10:30 a.m.**

PLACE:     **Courtroom 4**

JUDGE:     **Hon. M. James Lorenz**

MAGISTRATE
JUDGE:     **Hon Anthony J. Battaglia**

I, JOHN L. HALLER, declare:

1.      I am an attorney at law duly licensed to practice before all the Courts of

California and am an active member of the state bar of California, in good standing.

2.      I am one of the attorneys for Defendant, JIF-PAK, and as such I am familiar with

the facts of this case and therefore make this declaration of my own first-hand knowledge. The

facts stated herein are true and correct to the best of my knowledge. As to any matters stated

herein on the basis of information and belief, I believe them to be true.

3.      On July 22, 2005, I sent a letter to Mr. Stephen E. Story, counsel for Specialty

Food Group, Inc., in which I mentioned that my previous indication that Jif-Pak was the owner



*(left margin, vertical text)* Gordon & Rees LLP · 101 West Broadway · Suite 1600 · San Diego, CA 92101

1   of U.S. Patent No. 5,413,148 was incorrect, and that in fact Jif-Pak is a licensee. I also indicated

2   that Neil Mintz and Marcus Mintz are the owners of the patent. A true and correct copy of this

3   letter notification is attached hereto marked Exhibit A

4       4.      A true and correct copy of U.S. Patent No. 5,413,148 is attached hereto as Exhibit

5   B.

6       5.      A true and correct copy of Points and Authorities in Support of Motion to Dismiss

7   filed by Jif Pak, Inc., Neil Mintz and Marcus Mintz filed in the District of South Carolina is

8   attached as Exhibit C.

9       6.      A true and correct copy of Points and Authorities in Support of Reply to PCM's

10  Opposition to Motion to Dismiss filed in the District of South Carolina is attached as exhibit D.

11      7.      A true and correct copy of the October 4, 2004 opinion and order issued by the

12  District of South Carolina is attached hereto marked as Exhibit E.

13      I declare on penalty of perjury under the laws of the Untied States of America that the

14  foregoing is true and correct to the best of my knowledge. Executed this ⅀⅃ day of October,

15  2005 at San Diego, California.

17  John L. Haller

Gordon & Rees LLP
101 West Broadway
Suite 1600
San Diego, CA 92101

18
19
20
21
22
23
24
25
26
27
28

DECLARATION OF JOHN L. HALLER IN OPPOSITION TO MOTION TO DISMISS
CASE NO. 05 CV 1470 L (AJB)

# GORDON & REES LLP

JOHN L. HALLER
JHALLER@GORDONREES.COM
DIRECT DIAL: (619) 230-7451

ATTORNEYS AT LAW
101 WEST BROADWAY
SUITE 1600
SAN DIEGO, CA 92101
PHONE: (619) 696-6700
FAX: (619) 696-7124
WWW.GORDONREES.COM

July 22, 2005

Via e-mail to:  sstory@kaufcan.com
Stephen E. Story, Esq.
KAUFMAN & CANOLES
150 West Main Street
Suite 2100
Norfolk, VA  23514

     Re:    Jif-Pak Manufacturing, Inc. vs. SFG, Inc.
              Our Ref. No. BJPMI 1027086  (7211-IN05)
     Subject:    Owner of the '148 Patent

Dear Mr. Story:

     This letter is further to my letter to Mr. Mark Gray, Vice President of Operations of Specialty Foods Group, Inc. on approximately February 28, 2005, in which I informed him of the existence of U.S. Patent No. 5,413,148 (the '148 Patent), on behalf of the exclusive licensee of the '148 Patent.  In that letter, I inadvertently indicated that Jif-Pak Manufacturing, Inc. is the owner of the '148 patent.  This is not a true statement and in actual fact, Jif-Pak Manufacturing, Inc. is only the owner of a license to the '148 patent.

     I write today to correct that mistake, and to inform you on behalf of your client, Specialty Foods Group, Inc., that the true owners of the '148 Patent are Neil Mintz and Marcus Mintz, and that their licensee is Jif-Pak Manufacturing, Inc.

     I apologize for any inconvenience my inadvertent misstatement as to ownership of the '148 Patent may have caused.

              Very truly yours,

              GORDON & REES LLP

              John L. Haller

JLH:wp
copy:  Jif-Pak Manufacturing, Inc.



US005413148A

# United States Patent [19]

Mintz et al.

[11] Patent Number: 5,413,148

[45] Date of Patent: May 9, 1995

[54] **CASING STRUCTURE FOR ENCASING MEAT PRODUCTS**

[76] Inventors: **Marcus Mintz**, 5040 Hampton Ave., Montreal, Quebec, Canada, H3X 3P7; **Neil Mintz**, 3101 Del Rey Ave., Carlsbad, Calif. 92009

[21] Appl. No.: **177,800**

[22] Filed: **Jan. 6, 1994**

### Related U.S. Application Data

[63] Continuation of Ser. No. 886,280, May 20, 1992, abandoned, which is a continuation-in-part of Ser. No. 838,355, Feb. 19, 1992, abandoned.

[51] Int. Cl.⁶ ....................... F16L 11/00; A22C 13/00
[52] U.S. Cl. ................................ 138/118.1; 428/34.8; 428/36.1
[58] Field of Search ..............: 138/118.1, 123, 124; 428/36, 158, 159, 34.1, 34.3, 34.8; 426/105; 66/178 R, 180, 181, 201, 202

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 698,499 | 4/1902 | Hirner | 66/180 |
| 1,505,218 | 8/1924 | Sartori | 452/35 |
| 1,981,057 | 11/1934 | Lombardi | 66/180 |
| 2,289,302 | 7/1942 | Bradshaw | 66/195 |
| 2,366,710 | 1/1945 | Dimond | 138/118.1 |
| 2,375,474 | 5/1945 | Holmes et al. | 66/180 |
| 2,500,759 | 3/1950 | Largman | 66/180 |
| 2,977,782 | 4/1961 | Sheek | 66/178 R |
| 3,159,990 | 12/1964 | Monday | 66/180 |
| 3,448,595 | 6/1969 | Baltzer et al. | 66/195 |
| 3,639,130 | 2/1972 | Eichin et al. | 138/118.1 |
| 4,621,482 | 11/1986 | Crevasse et al. | 53/439 |
| 4,690,843 | 9/1987 | Inagaki | 138/118.1 |
| 4,967,798 | 11/1990 | Hammer et al. | 426/105 X |
| 5,043,194 | 8/1991 | Siebrecht et al. | 428/34.8 |

#### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 726424 | 1/1966 | Canada | 53/439 |
| 0303328 | 2/1989 | European Pat. Off. . | |
| 106965 | 5/1984 | Germany | 138/118.1 |
| 7614318 | 7/1977 | Netherlands . | |
| 9001395 | 1/1992 | Netherlands . | |
| 594359 | 9/1977 | Switzerland . | |
| WO9010576 | 9/1990 | WIPO . | |

*Primary Examiner*—David A. Scherbel
*Assistant Examiner*—Patrick F. Brinson
*Attorney, Agent, or Firm*—Fishman, Dionne & Cantor

[57] **ABSTRACT**

A stockinette member is formed of closely knit or woven threads. A netting arrangement is integrally formed with the stockinette member. The netting arrangement may either be knit in with the stockinette member or the strands of the netting arrangement may be laid in.

**8 Claims, 3 Drawing Sheets**



**U.S. Patent**          May 9, 1995          Sheet 1 of 3          **5,413,148**





**U.S. Patent**    May 9, 1995    Sheet 2 of 3    **5,413,148**



*Fig.2*

**U.S. Patent**          May 9, 1995          Sheet 3 of 3          **5,413,148**



*Fig. 3*



*Fig. 4*

5,413,148

1

CASING STRUCTURE FOR ENCASING MEAT
PRODUCTS

CROSS-REFERENCE TO RELATED
APPLICATION

This is a continuation of application Ser. No.
07/886,280 file on May 20, 1992, now abandoned,
which is a continuation-in-part of application Ser. No.
07/838,355 filed on Feb. 19, 1992 now abandoned.

BACKGROUND OF INVENTION

1. Field of the Invention

The invention relates to a casing structure for encasing meat products. More specifically, the invention relates to such a casing structure which comprises a stockinette with an integrally formed netting arrangement.

2. Description of Prior Art

It is known in the meat encasing art to encase meat and poultry products, especially during the cooking and/or smoking process, such as hams, poultry and the like, in netting arrangements. Such netting arrangements typically comprise a plurality of equally sized squares made of cotton or poly, and an elasticized strand material in the tubular form. The meat products are stuffed into the tubes such that the elasticized material is under tension, and the two ends of the tube of netting are then closed.

Because the meat product is stuffed into the tube with the elasticized material under tension, the strands tend to push back into the meat product to form squared indentations on the outer surface of the meat product. The meat product bulges out between the strands on either side of the indentations giving a desirable "checkerboard" pattern on the surface.

One of the problems in the art is that the product which bulges out between the strands can also bulge laterally whereby they will overlap, and cover, at least some of the strands. This makes it difficult to peel the netting off the meat product, especially when the bulges on either side of the strand bulge towards each other.

In the latter case, and taking into account the fact that the meat product contains binding materials, when the bulges on either side of a strand, bulging towards each other, physically contact each other, they can bind together so that it will be necessary to break the surface of the meat product at the binding points to peel the netting off the surface of the meat product.

One solution to these problems is to use a collagen film in association with the netting arrangement. The collagen film underlies the netting and overlies the outer surface of the meat product. The collagen film provides some restrictions on the bulging meat as it will permit the underlying meat product to bulge only upwardly, but it will substantially prevent the meat product from bulging laterally, so that the elasticized strands forming the netting will not be covered by laterally spreading bulges, thereby preventing the binding of the meat product to the netting. The binding of the meat is to the collagen. The meat product is sold to the consumer with the collagen covering. In addition, the intervention of the collagen film will prevent the bulges from binding to each other.

While the collagen film overcomes the above problems, it presents a different problem, namely, high costs. Collagen film, on a per unit basis, costs approximately four times as much as the netting arrangement so that

2

the cost of casing meat products using a collagen film and netting arrangement combination is seriously increased.

In addition, when the collagen film is used, air bubbles can form between the outer surface of the meat product and the collagen film. This causes an unattractive appearance in the meat product, especially when the meat product is cooked.

To overcome the above problems, a stockinette has been devised which takes the place of a collagen film in the above-described combination. The stockinette is a closely knit or closely woven tubular member knit or woven of threads comprising, for example, cotton, polyester, nylon or other suitable materials. Because the stockinette is knit or woven, it is stretchable and has openings. As it is closely knit or woven, the openings are very small. This finely knit stockinette acts to restrict the meat particles from penetrating through, thereby resisting the stockinette to be stuck to the meat product. However, the stockinette is porous enough to have the benefit of allowing easy smoke penetration into the meat product. Additionally, the stockinette can be treated with various solutions (for example, liquid smoke, oils, acid solutions, etc.), or coated with a film (for example, cellulose), to further enhance the peelability, if required. Also with the stockinettes, air bubbles between the outer surface of the meat product and the stockinette are substantially eliminated. In addition, the cost of the stockinette per unit is substantially less than the cost of the collagen film.

However, the stockinette and netting arrangement combination is still relatively expensive, and it also requires a two-step stuffing process, i.e., the meat product is first stuffed in the stockinette and then the meat product and stockinette are stuffed into the netting arrangement.

SUMMARY OF INVENTION

It is therefore an object of the invention to provide a casing structure for encasing meat products which overcomes the disadvantages of prior art casing structures.

It is a more specific object of the invention to provide such a casing structure which incorporates both the netting arrangement function for appearance and the ability to be easily removed from the meat after cooking.

In accordance with the invention, the casing structure comprises a stockinette member with an integrally formed netting arrangement.

The stockinette member is produced in tubular form.

The netting arrangement may be formed of elasticized strands or knitted or woven strands.

In accordance with the invention there is provided an elongated tubular casing structure for encasing meat products, the elongated structure having a longitudinal direction and a transverse lateral direction. The casing structure of the invention comprises:

a stockinette member comprising a closely knit tubular member formed of closely knit threads and having a first stretch capacity;

a knitted netting arrangement having a second stretch capacity and comprising a first plurality of spaced strands extending in the longitudinal direction and a second plurality of spaced strands extending in the lateral direction;

5,413,148

**3**

the longitudinal and lateral strands of the netting arrangement each intersecting in locking engagement with one another to form a grid-like pattern comprising a plurality of four-sided shapes;

the strands of the netting arrangement being knit into the threads of the stockinette member, whereby the netting arrangement and the stockinette member are integrally formed so that the casing structure comprises an integrally formed structure;

the first stretch capacity being greater than the second stretch capacity;

whereby, when a meat product is stuffed into the casing structure under pressure, the meat product forms a bulge within each of the four-sided shapes to thereby define a checker-board pattern on the surface thereof, the stockinette member forming a shield to prevent the adherence of adjacent meat product bulges over the strands of the netting arrangement.

## BRIEF DESCRIPTION OF DRAWINGS

The invention will be better understood by an examination of the following description, together with the accompanying drawings in which:

FIG. 1 illustrates one embodiment of a casing structure in accordance with the invention;

FIG. 2 is a blow-up of a portion of FIG. 1 illustrating a second embodiment of the invention;

FIG. 3 is a blown-up view of a portion of FIG. 1 showing the lateral strand in its rest position;

FIG. 4 is the same view as FIG. 3 but showing the lateral strand in its "stretched" position; and

FIG. 5 illustrates how the casing structure looks when stuffed with the meat product.

## DESCRIPTION OF PREFERRED EMBODIMENTS

Referring to the single drawing, a casing structure in accordance with the invention, illustrated generally at 1, comprises a stockinette 3 formed of closely knit or woven threads. The threads may comprise cotton, polyester, nylon or other suitable materials. As can be seen, the stockinette is tubular in shape.

Formed integrally with the stockinette are equally spaced longitudinal strands 5 and equally spaced lateral strands 7. The strands may comprise elasticized material laid into the stockinette. In a particular embodiment, the elasticized material comprises rubber which is laid in under tension. The longitudinal strands may be laid in every twelve stitches while the lateral strands may be laid in every 12 courses. Thus, the netting arrangement consisting of the strands 5 and 7 is integrally formed with the stockinette to form the inventive casing structure.

In an alternate embodiment, the strands of the netting arrangement are knit into the stockinette of the same threads which form the stockinette. To form the lateral strands 7 of the netting arrangement in the latter embodiment, twelve loose courses are first knit and then two tighter courses. The twelve loose courses comprise the stockinette while the two tighter courses comprise a lateral strand of the netting arrangement. By making the courses tighter, the strand thus formed is less elastic than the strands of the looser courses.

The above is repeated over fourteen course cycles so that each lateral strand of the netting arrangement is separated from adjacent strands by fourteen courses. As shown, the longitudinal strands 5 and lateral strands 7 cross each other to form square or four-sided shapes.

**4**

To form the longitudinal strands, the machine is set so that it knits three courses on high butt only and a fourth course on both low butt and high butt. One way of doing this is, of course, to have four cams, three of which are set on high butt and one of which is set on both low butt and high butt. The needles are then arranged so that a predetermined number are set on high butt and a smaller predetermined number are set on low butt. For example, twenty needles could be set on high butt and two on low butt. This cycle is repeated all around each course.

With this arrangement, the two needles set on low butt will cast off only every fourth course so that, in each cycle of twenty-two stitches, twenty will be knit on every course and two will be knit on every fourth course only. The two latter stitches will form the longitudinal strands of the netting arrangements which will accordingly be separated from each other by twenty of the former stitches.

As will be obvious, the spacing between both longitudinal and lateral strands would be varied according to need. The spacing given in the examples above was only to provide a clearer description, and the invention is not restricted to the above spacing.

Turning now to FIG. 2, in accordance with a further embodiment of the invention, each of the lateral strands 7 includes a plurality of loops 9 extending in the longitudinal direction. As can also be seen, each loop is interlaced with an adjacent preceding loop and an adjacent following loop, and the interlaced aligned loops form the longitudinal strands 5. The material for forming the strands in the FIG. 2 embodiment can be made of either elasticized or non-elasticized yarn.

As the same yarns are creating both the lateral and longitudinal strands, when the netting arrangement is pulled in the lateral direction (i.e., at the larger diameter portion of the meat product), then the loops 9 will shorten (shown generally at 11 in FIG. 5) and the remainder of the lateral lengths will lengthen, so that a certain amount of stretch is provided even if non-elastic material is used in the formation of the netting arrangement. As seen in FIG. 5, this versatility allows for a naturally shaped product to be formed, in which the center of the meat product has a larger diameter than the ends.

The finely knit stockinette is knit so that it stretches more than the integrally formed netting arrangement so that the meat will be forced to bulge outwardly between the lateral and longitudinal strands, when the casing structure is applied with pressure onto the meat product.

The following is an example of how to construct the casing structure as illustrated in FIG. 2 using arbitrary variables:

### Example

Using a 24 feed, 3 track jersey single knit machine consisting of 400 needles.

Feed #1 feeds the heavy yarn (from which the square netting pattern will be formed).

Feeds #2–24 feed the fine yarns (from which the tightly knit stockinette will be formed).

A set of needles are selected at the positions that a longitudinal strand is desired. For example, if 25 evenly spaced longitudinal strands are desired, every 16th needle will be selected (440/25=16). We will call this needle set "A" (needle #1, 16, 32, 48 . . . 384).

5,413,148

5

Needle set "A" will knit only on Feed #1. Needle set "A" will not knit on Feeds 2-24; i.e., welt stitch. However, all needles but set "A" will knit on Feeds 2-24.

At Feed #1, in addition to needle set "A", additional needles can be selected to knit (alternatively can be laid in) the heavy yarn into stockinette 3, forming the lateral strands 7. This is done to draw in more of the heavy yarn as is required depending on the size of the product required. This same heavy yarn is, of course, acting as both the longitudinal and lateral strands 5 and 7.

This additional set of needles can, for example, consist of every third needle; i.e., needle #4, 7, 10, 13 . . . ). Even though these needles are creating stitch loops 10 as seen in diagram #3, it is essential that when the meat product is stuffed firmly into the netting, the heavy yarn will be pulled tight causing these little loops to disappear (see diagram #4) so that the heavy yarn will be firmly pressed against the product.

The finely knit stockinette 3 is intentionally sized larger (i.e., can be stretched more) than the integrally formed netting pattern to allow the meat to bulge through the large square openings while the net pattern actually restricts the product, thereby being the determining factor of the product size.

The stockinette 3 would also be intentionally a size larger than the integrally formed netting pattern in the FIG. 1 embodiment for the same reasons.

The casing structure may be coated with a liquid such as liquid smoke a-non-toxic, acid solution (e.g., vinegar) or oils etc. The casing structure may also be coated with a smoke permeable film, for example, cellulose.

Although particular embodiments have been described, this was for the purpose of illustrating, but not limiting, the invention. Various modifications, which will come readily to the mind of one skilled in the art, are within the scope of the invention as defined in the appended claims.

We claim:

1. An elongated tubular casing structure for encasing meat products, said elongated structure having a longitudinal direction and a transverse lateral direction, said casing structure comprising:

a stockinette member comprising a closely knit tubular member formed of closely knit threads and having a first stretch capacity;

a knitted netting arrangement having a second stretch capacity and comprising a first plurality of spaced strands extending in said longitudinal direction and a second plurality of spaced strands extending in said lateral direction;

the longitudinal and lateral strands of said netting arrangement each intersecting in locking engage-

6

ment with one another to form a grid-like pattern comprising a plurality of four-sided shapes;

said strands of said netting arrangement being knit into the threads of said stockinette member, whereby said netting arrangement and said stockinette member are integrally formed so that said casing structure comprises an integrally formed structure;

said first stretch capacity being greater than said second stretch capacity;

whereby, when a meat product is stuffed into said casing structure under pressure, said meat product forms a bulge within each of said four-sided shapes to thereby define a checker-board pattern on the surface thereof, said stockinette member forming a shield to prevent the adherence of adjacent meat product bulges over said strands of said netting arrangement.

2. A casing structure as defined in claim 1 wherein said longitudinal and lateral strands comprise elasticized material.

3. A casing structure as defined in claim 2 wherein each said lateral strand comprises a plurality of loops, each of said loops extending in sad longitudinal direction.

4. A casing structure as defined in claim 3 wherein each loop is interlaced with an adjacent preceding loop and an adjacent following loop;

whereby to form a plurality of aligned interlaced loops;

each longitudinal strand comprising one of said aligned interlaced loops.

5. A casing structure as defined in claim 2 wherein the threads of said stockinette member and the strands of said netting arrangement are coated with a liquid selected from the group consisting of liquid smoke, non-toxic acid solutions and oils.

6. A casing structure as defined in claim 4 wherein the threads of said stockinette member and the strands of said netting arrangement are coated with a liquid selected from the group consisting of liquid smoke, non-toxic acid solutions and oils.

7. A casing structure as defined in claim 2 wherein the threads of said stockinette member and the strands of said netting arrangement are coated with a smoke permeable film.

8. A casing structure as defined in claim 4, wherein the threads of said stockinette member and the strands of said netting arrangement are coated with a smoke permeable film.

* * * * *

## UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.   : 5,413,148

DATED        : May 9, 1995

INVENTOR(S) :  Marcus Mintz et al

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Col. 6, line 23, Delete "claim 2" and insert therefor —claim 1—.

Col. 6, line 23, Delete "claim 2" and insert therefor —claim 1—.

Col. 6, line 44, Delete "claim 2" and insert therefor —claim 1—.

Signed and Sealed this

Twentieth Day of February, 1996

Attest:

*Bruce Lehman*

Attesting Officer

**BRUCE LEHMAN**

*Commissioner of Patents and Trademarks*

# UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.  : 5,413,148

DATED       : May 9, 1995

INVENTOR(S) : Marcus Mintz et al

   It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Col. 6, Line 23   Delete "claim 2" and insert therefor —claim 1—.

Col. 6,Line 34   Delete "claim 2" and insert therefor —claim 1—.

Col. 6,Line 44   Delete "claim 2" and insert therefor —claim 1—.

This certificate supersedes Certificate of Correction issued February 20, 1996.

Signed and Sealed this

Twenty-third Day of July, 1996

*Attest:*

*Bruce Lehman*

**BRUCE LEHMAN**

*Attesting Officer*          *Commissioner of Patents and Trademarks*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### GREENVILLE DIVISION

| | |
|---|---|
| PACKAGE CONCEPTS & MATERIALS, INC., | Case No. 6-05-1184-HMH |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION, FAILURE TO JOIN AN INDISPENSABLE PARTY, AND LACK OF SUBJECT MATTER JURISDICTION** |
| vs. | |
| JIF-PAK, NEIL MINTZ, and MARCUS MINTZ, | |
| Defendants. | |

# TABLE OF CONTENTS

I.      BACKGROUND AND PROCEDURAL HISTORY........................................................ i

II.     SUMMARY OF ARGUMENT ........................................................................... iii

III.    ARGUMENT................................................................................................. iv

    A.    THIS COURT LACKS PERSONAL JURISDICTION OVER NEIL AND
        MARCUS MINTZ........................................................................................ iv

        1.    Under the Due Process Test Employed by the Federal Circuit,
            Defendants Must be Subject to Either Specific or General Personal
            Jurisdiction........................................................................................... v

        2.    The Patent Owners are not Subject to General Personal
            Jurisdiction........................................................................................... v

        3.    The Patent Owners are not Subject to Specific Personal
            Jurisdiction........................................................................................ vi

    B.    PLAINTIFF'S CLAIM FOR DECLARATORY JUDGMENT OF NON-
        INFRINGEMENT SHOULD BE DISMISSED FOR FAILURE TO JOIN
        AN INDISPENSABLE PARTY........................................................................ vii

        1.    The Patent Owner is an Indispensable Party in a Patent
            Infringement Action............................................................................ vii

        2.    Neil Mintz and Marcus Mintz are Indispensable Parties in
            Plaintiff's Declaratory Relief Action But Cannot be Joined Therein...... viii

        3.    Because Neil and Marcus Mintz are necessary parties who are not
            subject to personal jurisdiction in South Carolina, the next
            determination is whether they are "indispensable" such that the
            action must be dismissed under Fed. R. Civ. Proc. 19(b)......................... ix

        4.    Plaintiff's Reliance on Case Law is Misplaced and Distinguishable
            on the Facts. .......................................................................................... xi

C.    PLAINTIFF'S CLAIM FOR DECLARATORY JUDGMENT OF NON-
    INFRINGEMENT SHOULD BE DISMISSED FOR LACK OF SUBJECT
    MATTER JURISDICTION ............................................................................. xiii

        1.    Defendant Jif-Pak Is Not The Patent Owner Or Exclusive Licensee
            Of The Patent At Issue........................................................................ xiii

        2.    Because Defendant Does Not Have A Sufficient Legal Interest In
            The Patent, There Is No Actual Controversy Between The Parties
            As Required By 28 U.S.C. Sec. 2201 ..................................................... xiv

D.    THERE IS NO SUBJECT MATTER JURISDICTION OVER THE STATE LAW
    INTERFERENCE WITH CONTRACT CLAIM ...............................................xv

CONCLUSION...............................................................................................xv

# TABLE OF AUTHORITIES

*Cases*

*3D Sys., Inc. v. Aarotech Labs, Inc.,*
   160 F.3d 1373, 1377 (Fed. Cir. 1998)................................................................................... v

*Abbot Labs v. Diamedix Corp.*, 47 F.3d 1128, 1132-33 (Fed. Cir. 1995) ........................viii, ix, xiv

*Agrashell, Inc. v. Hammons Prods. Co.,*
   352 F.2d 443, 446-47 (8th Cir. 1965) .................................................................................. viii

*American Elec. Power Service Corp. v. EC&C Tech., Inc.,*
   2002 U.S. Dist. LEXIS 21994 (D. Ohio 2002) .......................................................................... x

*Blonder-Tongue Laboratories v. University of Illinois Foundation,*
   402 U.S. 313, 91 S. Ct. 1434, 28 L. Ed.2d 788 (1971)............................................................. x

*Capri Jewelry, Inc. v. Hattie Carnegie Enterprises, Ltd.,*
   539 F.2d 846 (2nd Cir. 1976)............................................................................................... xi

*Central Tools, Inc. v. Mitutoyo Corp.,*
   2005 U.S. Dist. LEXIS 16996 (D. R.I. 2005)......................................................................... ix

*ESAB Group, Inv. v. Centricut, LLC,*
   34 F. Supp. 2d 323, 328 n.3 (D. S.C. 1999)........................................................................... v

*Fina Research, S.A. v. Baroid Ltd.,*
   141 F.3d 1479, 1481 (Fed. Cir. 1998)................................................................................ xiv

*Genetic Implant Sys., Inc. v. Core-Vent Corp.,*
   123 F.3d 1455 (Fed. Cir. 1997)........................................................................................... vi

*Hanson v. Deckla,*
   357 U.S. 235, 253 (1958)..................................................................................................... v

*Helicopteros Nacionales de Colombia,*
   S.A. v. Hall, 466 U.S. 408, 414 (1984) ................................................................................. v

*Independent Wireless Telegraph Co. v. Radio Corp. of America,*
   269 U.S. 459, 70 L. Ed. 357, 46 S. Ct. 166 (1926)................................................................ vii

*International Shoe Co. v. Washington,*
   326 U.S. 310 (1945)............................................................................................................ v

*Mallinckrodt Medical, Inc. v. Sonus Pharmaceutical, Inc.,*
   989 F. Supp. 265, 272 (D. D.C. 1998) ................................................................................ vii

*Messerschmitt-Boelkow-Blohm GmbH v. Hughes Aircraft Co.,*
   483 F. Supp. 49, 53 (S.D.N.Y. 1979).................................................................................... ix

*Micro- Acoustics Corp. v. Bose* Corporation, 493 F. Supp. 356, 361 (S.D.N.Y. 1980) ............. xii

*Moore U.S.A., Inc. v. Standard Register Co.,*
  60 F. Supp.2d 104, 110 (W.D. N.Y. 1999) ............................................................................ xii

*Ortho Pharm. Corp. v. Genetics Inst., Inc.,*
  52 F.3d 1026 (Fed. Cir. 1995) ............................................................................................. xiv

*Parkson Corp. v. Fruit of the Loom, Inc.,* Not Reported in F. Supp., 1992 WL 541570, 28
  U.S.P.Q.2d 1066 (E.D. Ark. 1992) ....................................................................................... xii

*Prima Tek II, L.L.C. v. A-Roo Co.,*
  222 F.3d 1372, 1377 (Fed. Cir. 2000) ................................................................................. viii

*Proctor & Gamble Co. v. Paragon Trade Brands, Inc.,*
  917 F. Supp. 305, 308 n. 3 (D. Del. 195) ............................................................................. ix

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,*
  148 F.3d 1355, 1358 (Fed. Cir. 1998) .................................................................................... v

*Sonoco Prods, Co. v. Interplast Corp.,*
  867 F. Supp. 352, 354 (D. S.C. 1994) .................................................................................... v

*Southern Plastics Co. v. Southern Commerce Bank,*
  423 S.E.2d 128, 130-31 (S.C. 1992) ...................................................................................... v

*Suprex Corp. v. Lee Scientific, Inc.,*
  660 F. Supp. 89, 93 (W.D. Penn. 1987) ......................................................................... vii, ix, x

*Textile Prods., Inc. v. Mead Corp.,*
  134 F.3d 1481 (Fed. Cir. 1998) ........................................................................................... xiv

*World-Wide Volkswagen Corp. v. Woodson,*
  444 U.S. 286 (1980) ............................................................................................................... v

*Zumbro, Inc. v. California Natural Prods.,*
  861 F. Supp. 773, 783 (D. Minn. 1994) ................................................................................. x

**Statutes**

28 U.S.C. § 1332 ....................................................................................................................... xv

**Other Authorities**

Declaratory Judgment Act, 28 U.S.C. Sec. 2201(1994) ..................................................... xiii, xiv

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................................ xv

Fed. R. Civ. Proc. 19(b) ............................................................................................. vii, viii, ix, x, xi

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 6-05-1184 HMH

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR LACK
OF PERSONAL JURISDICTION, FAILURE TO JOIN AN INDISPENSABLE PARTY,
AND LACK OF SUBJECT MATTER JURISDICTION**

Defendants Jif-Pak, Inc., Neil Mintz and Marcus Mintz hereby submit this memorandum

of points and authorities in support of their motions to dismiss for lack of personal jurisdiction,

as to Defendants Neil Mintz and Marcus Mintz, and failure to join an indispensable party, and

lack of subject matter jurisdiction as to JIF-PAK.

I.

<u>BACKGROUND AND PROCEDURAL HISTORY</u>

*Background.* Neil Mintz and Marcus Mintz are the owners of U.S. Patent No.

5,413,148.("the subject patent")  This has been established by their sworn declarations submitted

in evidence in support of Defendant Jif-Pak's original motion to dismiss.  Neil and Marcus Mintz

have granted a non-exclusive license to practice the subject patent.  This has also been

established by the sworn declarations of the patent owners.  The license is informal, unwritten.

The subject patent relates to a tubular casing for meat products having a stockinette

member with a knit tubular member formed of threads and a netting arrangement which is

intricately formed with the stockinette member.  The netting arrangement may either be knit in

with the stockinette member or the strands of the knitting arrangement may be laid in.



Under its non-exclusive license, Jif-Pak produces and sells a product for use in encasing meat.

Both Dietz & Watson, Inc. and Specialty Food Group, Inc. are customers of Jif-Pak, and both have purchased Jif-Pak's product. Jif-Pak maintains its customer relationships through certain promotional contacts, as it did by its letter to its customers, including both Dietz & Watson, Inc. and Specialty Food Group, Inc., in which it mentioned the patent license under which its product is produced,[1] and also mentioned that their use of the competing product offered by Package Concepts & Materials, Inc. may result in their infringement of the patent under which Jif-Pak produces and sells its product.

Notwithstanding Jif-Pak's attempts to maintain its customer relationship with its customers, including both Dietz & Watson, Inc. and Specialty Food Group, Inc., at least Dietz & Watson, Inc. has purchased and used the *competing* meat encasement product from Package Concepts and Materials, Inc. which *use* has resulted in the infringement of the patent under which Jif-Pak produces and sells its *licensed* product.

Apparently, from the allegations in Plaintiff's complaint, both Dietz & Watson, Inc. and Specialty Food Group, Inc. have contacted their alternative supplier, Package Concepts and Materials, Inc. and communicated to this supplier the contents of Jif-Pak's promotional notification letter. Package Concepts and Materials, Inc. then interpreted this letter not as the promotional letter that it was, but as an accusation of infringement demanding the customer to cease the infringing use instead of a marketing notice to licensee. Package Concepts and Materials, Inc., placing itself in the position of a declaratory relief plaintiff, has attempted, in this action, to claim that it, Package Concepts and Materials, has a reasonable apprehension of being sued by reason of the letter received by its customer, Specialty Foods Group. In addition to its attempt to state a declaratory relief claim against Jif-Pak, Package Concepts and Materials, Inc. also includes in its complaint a state law claim of interference with contract.

---

[1] Jif-Pak's notification to Specialty Food Group erroneously indicated that Jif-Pak was the owner of the patent [Haller Decl., ¶ 4.] This error was corrected by defendant Jif-Pak by letter of July 22, 2005 to Specialty Food Group's counsel (attorney Stephen Story, Haller Decl., Ex. 2) advising Specialty Food Group that Jif-Pak was not the owner of the patent, but rather was the owner of a license under the patent.

*Procedural History.* Defendant JIF-PAK has previously filed a motion to dismiss for lack of subject matter jurisdiction, to which Plaintiff has filed an opposition.

Based on Jif-Pak's understanding that this Court lacks subject matter jurisdiction, Jif-Pak, together with Neil Mintz and Marcus Mintz, the owners of the subject patent, filed a complaint in the Southern District of California, against Plaintiff and Plaintiff's customer, Dietz & Watson, Inc., where jurisdiction and venue are proper. [Haller Decl. ¶ 3, Ex. 1.]

When Plaintiff was served with Jif-Pak's motion to dismiss, Plaintiff filed its opposition to the motion to dismiss and contemporaneously filed its First Amended Complaint. In this Amended Complaint, Plaintiff added Neil and Marcus Mintz, the patent owners, as Defendants, presumably to address Defendant Jif-Pak's argument that the Court lacked subject matter jurisdiction because the patent owners (necessary parties) were not named defendants.

In view of Plaintiff's filing of its First Amended Complaint adding the two individual patent owners as defendants, Defendant Jif-Pak's initial motion to dismiss the original Complaint is moot, and Defendant Jif-Pak is filing contemporaneously herewith a Notice of Withdrawal of its initial Motion to Dismiss.

However, because the issue of subject matter jurisdiction still remains to be addressed, and because Plaintiff has added the patent owners as defendants, this new motion to dismiss, adding a claim of lack of personal jurisdiction is being filed. The issue of personal jurisdiction over the patent owners, along with the issues of failure to join an indispensable party and subject matter jurisdiction are all inter-related.

## II.

## SUMMARY OF ARGUMENT

Plaintiff's attempt to resolve the subject matter jurisdiction problem addressed in Jif-Pak's original motion is futile. *Adding the patent owner does not resolve the problem* because Neil and Marcus Mintz are not subject to personal jurisdiction in South Carolina. The patent owners *are* necessary and indispensable because, despite having granted non-exclusive licenses to Jif-Pak, they have retained substantial rights to the patent. Prejudice to both Plaintiff and the

8-26-05; 8:25PM; NELSON MU L INS ;864 250 2388 # 14/ 48
Case 3:05-cv-01470-L-CAB   Document 11   Filed 10/21/05   Page 24 of 83

6:05-cv-01184-HMH      Date Filed 08/25/2005      Entry Number 13      Page 8 of 20

patent owners could occur if the case went forward without them. If the patent owners could be collectively estopped by a decision in this case, then they would be greatly prejudiced by not being parties to the case. On the other hand, if the patent owners would not be collectively estopped by a decision in this case, then the plaintiff could not without them obtain a decision which would give it the protection from an infringement suit which it seeks. Therefore, the patent owners *are* indispensable parties; but they are not subject to the personal jurisdiction of this Court, and so may not be joined.

Even *if* the patent owners were to be considered *not* indispensable, the absence of subject matter jurisdiction issue remains – there is no actual case or controversy between Plaintiff and Jif-Pak, the non-exclusive licensee. Therefore, Plaintiff's declaratory relief claim against Jif-Pak fails to qualify for subject matter jurisdiction and must be dismissed.

Without the declaratory relief count (Plaintiff's patent action), this Court should exercise its discretion and also dismiss the pendant state law claim over which this Court has no independent jurisdiction.

## III.

## ARGUMENT

### A.  THIS COURT LACKS PERSONAL JURISDICTION OVER NEIL AND MARCUS MINTZ

Jif-Pak's original motion to dismiss for lack of subject matter jurisdiction was brought on the ground that there is no actual case or controversy between Plaintiff and Jif-Pak with respect to Plaintiff's declaratory relief count. There could not be any such actual case or controversy as alleged by Plaintiff – because Jif-Pak does not hold rights in the subject patent which *could* give Jif-Pak the capacity to bring a case against Plaintiff. Apparently in recognition and tacit admission of this defect in its Complaint, Plaintiff amended its Complaint to add the patent owners, and Plaintiff claimed an actual case or controversy against the patent owners. However, Plaintiff's amendment as an attempt to add the indispensable parties was an exercise in futility because the patent owners, Neil Mintz and Marcus Mintz, are not subject to personal jurisdiction

in South Carolina.

South Carolina courts have determined that the South Carolina long arm statute runs to the constitutional limits of the Due Process Clause. *See Southern Plastics Co. v. Southern Commerce Bank*, 423 S.E.2d 128, 130-31 (S.C. 1992). Evaluating the propriety of asserting personal jurisdiction over a nonresident defendant is generally a two-step process, but it compresses into one: whether the due process requirements are met. *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998), *Sonoco Prods, Co. v. Interplast Corp.*, 867 F. Supp. 352, 354 (D. S.C. 1994). Because this Court's subject matter jurisdiction arises under the patent laws, Federal Circuit law controls the analysis of the Due Process Clause. *See 3D Sys., Inc. v. Aarotech Labs, Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998), *ESAB Group, Inv. v. Centricut, LLC*, 34 F. Supp. 2d 323, 328 n.3 (D. S.C. 1999).

### 1.   Under the Due Process Test Employed by the Federal Circuit, Defendants Must be Subject to Either Specific or General Personal Jurisdiction.

The due process test for personal jurisdiction has two related components, the minimum contacts and fairness inquiries. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). Due process requires that a nonresident defendant have certain minimum contacts with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). Due process is satisfied if "the defendant purposefully avails himself of the privilege of conducting activities within the forum State." *Hanson v. Deckla*, 357 U.S. 235, 253 (1958).

Specific jurisdiction applies when a cause of action arises out of or is related to defendant's activities within the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). But if the suit is unrelated to the defendant's contacts with the forum state, the court exercises general jurisdiction. *See Helicopteros Nacionales*, 466 U.S. at 414.

### 2.   The Patent Owners are not Subject to General Personal Jurisdiction.

The patent owners are not subject to general personal jurisdiction in South Carolina because they do not have "continuous and systematic general business contacts" with the state.

*International Shoe*, 326 U.S. at 318. The patent owners, Neil Mintz and Marcus Mintz, do not have a residence in South Carolina, have no real property in South Carolina, have no bank account, no driver's license, no personal property, no mailing address, no telephone number in the State of Carolina, are not officers or directors of any business organized under the laws of the State of Carolina, and have no websites that reach South Carolina. [Neil Mintz Decl. ¶¶ 9-17[2], Marcus Mintz Decl. ¶¶ 7-15]. Further, a single visit by Neil Mintz to South Carolina as a representative of Jif-Pak at a trade show over 5 years ago is the only visit made by either Neil or Marcus to the state of South Carolina in the last 10 years. [Neil Mintz Decl., ¶ 17.]

### 3.    The Patent Owners are not Subject to Specific Personal Jurisdiction.

The patent owners are not subject to specific jurisdiction because the cause of action does not arise directly from any activity by Neil and Marcus Mintz in South Carolina. The cause of action seeks a declaration of non-infringement of the '148 patent and alleges that Jif-Pak "made written assertions that Plaintiff's customer, Specialty Foods Group, is infringing the '148 patent." [Amended Complaint, Para. 12]. Plaintiff makes no other factual allegation regarding contacts by Neil Mintz or Marcus Mintz with the state of South Carolina.

Plaintiff is factually correct that it was Jif-Pak, not Neil and Marcus Mintz, who contacted Specialty Food Group, Inc.  However neither Jif-Pak nor Specialty Foods Group are located in South Carolina.  Specialty Foods Group is located in Virginia.  Therefore, Plaintiff has made no factual allegation of any personal activity by Neil and Marcus Mintz from which the cause of action arose.[3]  Even if Specialty Foods was located in South Carolina and even if the letter was an infringement notice, merely sending infringement notices, without more activity in the forum state, is not sufficient to satisfy the requirements of due process. *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455 (Fed. Cir. 1997). Notwithstanding Plaintiff's argument, no defendant has sent any notices or demands to Plaintiff Package Concepts and Materials.

---

[2] The Declarations of Neil Mintz, Marcus Mintz and John L. Haller are filed concurrently herewith in support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (hereinafter "Neil Mintz Decl.", "Marcus Mintz Decl." and "Haller Decl.")
[3] The letter sent to Specialty Foods Group, Inc. was a promotional letter to Specialty Foods Group as a current client of Jif-Pak, intended to preserve the business relationship with that client. [Neil Mintz Decl., ¶ 8.]

In the Amended Complaint, Plaintiff continues to allege that Neil Mintz and Marcus Mintz granted an *exclusive* license to Jif-Pak under the subject patent. [Plaintiff's Amended Complaint, ¶ 9.] However, Plaintiff states in its opposition to Defendant Jif-Pak's original motion to dismiss that Plaintiff itself *has no information* which is inconsistent with the facts stated in the Neil Mintz declaration.[4] The previously served sworn declaration of Neil Mintz confirms that Jif-Pak enjoys a *non*-exclusive license. The allegation of exclusivity is therefore wholly support.

Because Neil and Marcus Mintz have not participated in any activity in South Carolina from which the cause of action arose they are not subject to specific personal jurisdiction in South Carolina. Therefore, although Plaintiff has attempted to join the patent owners because they are indispensable parties, these indispensable parties are not subject to either general or personal jurisdiction in South Carolina.

**B.     PLAINTIFF'S CLAIM FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT SHOULD BE DISMISSED FOR FAILURE TO JOIN AN INDISPENSABLE PARTY**

      **1.     The Patent Owner is an Indispensable Party in a Patent Infringement Action.**

A patent owner has long been held to be an indispensable party in an action by and against a patent licensee. *See, Independent Wireless Telegraph Co. v. Radio Corp. of America*, 269 U.S. 459, 70 L. Ed. 357, 46 S. Ct. 166 (1926); *Suprex Corp. v. Lee Scientific, Inc.*, 660 F. Supp. 89, 93 (W.D. Penn. 1987) (finding patent owner indispensable in declaratory judgment action brought against owner's licensee when owner was not subject to personal jurisdiction); *Mallinckrodt Medical, Inc. v. Sonus Pharmaceutical, Inc.*, 989 F. Supp. 265, 272 (D. D.C. 1998). But this Court does not have personal jurisdiction over patent owners, so these parties, although indispensable may not be joined. Because Plaintiff is unable to join Neil and Marcus Mintz, Plaintiff's claim for declaratory judgment of patent non-infringement should be dismissed for failure to join an indispensable party, under Fed. R. Civ. Proc. 19(b).

As recounted by Plaintiff in its opposition to Defendant Jif-Pak's initial motion to

---

[4] Plaintiff's Opposition to the original motion to dismiss, page 2, fn 5.

dismiss, Rule 19 requires an analysis of whether a party is "necessary", under Rule 19(a), such that it should be joined, and if the necessary party cannot be joined, then an analysis of whether the party is "indispensable" is necessary, under Rule 19(b). *If the party is deemed indispensable, and cannot be joined, the action must be dismissed.*

## 2. Neil Mintz and Marcus Mintz are Indispensable Parties in Plaintiff's Declaratory Relief Action But Cannot be Joined Therein.

As explained above and as is established by the previously filed sworn declaration of Neil Mintz, Neil and Marcus Mintz are the owners of the '148 patent at issue in this case. [Neil Mintz Decl., ¶¶ 3, 4.] Jif-Pak is the non-exclusive licensee of the '148 patent, under an oral license. [Neil Mintz Decl., ¶¶ 5-6.] The license simply allows Jif-Pak to make, use, or sell products claimed under the '148 patent. [Neil Mintz Decl., ¶ 5.] It does not give Jif-Pak the exclusive right to engage in those activities and it does not give Jif-Pak any right to enforce the '148 patent against others. [Neil Mintz Decl., ¶ 6.] In order to determine whether a licensee is an effective patentee who could enforce patent rights, a court must "pay particular attention to whether the agreement conveys in full the right to exclude others from making, using, and selling the patented invention in the exclusive territory." *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000), *citing Abbot Labs v. Diamedix Corp.*, 47 F.3d 1128, 1132-33 (Fed. Cir. 1995) (licensee lacked independent standing to sue where patent owner retained limited right to make, use and sell patented products) and *Agrashell, Inc. v. Hammons Prods. Co.*, 352 F.2d 443, 446-47 (8th Cir. 1965)(same). The Mintz patent owners have retained substantial rights in the patent and therefore Jif-Pak could not be deemed the effective patentee to have standing to maintain an infringement suit in its own name.

Neil and Marcus Mintz have not conveyed in full the right for Jif-Pak to exclude others from making, using, and selling the patented invention. Indeed, the patent owners are free to license the patent and allow as many third parties as they deem appropriate to practice the invention. [Neil Mintz Decl., ¶ 7.] Thus, the patent owners have retained all substantial rights under the patent.

Because Neil and Marcus Mintz have retained substantial rights under the patent, those

rights could be at risk if this Court deemed the '148 patent non-infringed or invalid. [5]*See Central Tools, Inc. v. Mitutoyo Corp.*, 2005 U.S. Dist. LEXIS 16996 (D. R.I. 2005). The *Central Tools* court recognized that the case law is unclear as to whether collateral estoppel would apply to a non-present patent owner, but concluded that, regardless, at the very least, a negative judgment would have a prejudicial effect on the patent owner's interests even if not absolutely binding. *Id.*, at *15-16, *citing Messerschmitt-Boelkow-Blohm GmbH v. Hughes Aircraft Co.*, 483 F. Supp. 49, 53 (S.D.N.Y. 1979).

In this case, a decision of non-infringement would, even if not binding, have a prejudicial effect on the patent owner's interests in, for example, the co-pending case for patent infringement in the Southern District of California brought by Neil Mintz and Marcus Mintz against both Dietz and Watson for infringement and against Package Concepts and Materials, Inc. (the Plaintiff in this action) for contributory and inducement to infringe.[6] Moreover, although Plaintiff has not yet asserted patent invalidity, it is a very rare patent case where the alleged infringer does not seek a declaration that the asserted patent is invalid. When, and if, Plaintiff attempts to amend the complaint again to add a charge of invalidity, the patent owners' substantial retained rights are at much greater risk. *See Suprex Corp. v. Lee Scientific, Inc.*, 660 F. Supp. 89, 93 (W.D. Penn. 1987) (finding a patent owner necessary because "A determination by this court of invalidity of the patent, as a practical mater, impairs the [patent owner]'s ability to defend the patent in later litigation, due to collateral estoppel implications").

3.  **Because Neil and Marcus Mintz are necessary parties who are not subject to personal jurisdiction in South Carolina, the next determination is whether they are "indispensable" such that the action must be dismissed under Fed. R. Civ. Proc. 19(b).**

There is broad case support for the finding that a patent owner who has retained substantial rights in the patent is an indispensable party in an action regarding validity or infringement of the patent. *See, Abbot Laboratories*, 47 F.3d 1128, 1132-33 (Fed. Cir. 1995); *Mallinckrodt Medical, Inc.*, 989 F. Supp. 265, 272 (D.D.C. 1998); *Proctor & Gamble Co. v.*

---

[6] The San Diego action by Neil Mintz and Marcus Mintz pre-dates Plaintiff's amended complaint, newly naming Neil and Marcus Mintz. [Haller Decl., Ex. 1.]

*Paragon Trade Brands, Inc.*, 917 F. Supp. 305, 308 n. 3 (D. Del. 1995); *Suprex Corp.*, 660 F. Supp. 89, 93-94 (N.D. Pa. 1987); *American Elec. Power Service Corp. v. EC&C Tech., Inc.*, 2002 U.S. Dist. LEXIS 21994 (D. Ohio 2002) (dismissing patent declaratory judgment action against patent licensee because indispensable patent owner was not subject to personal jurisdiction). One court even found that a declaratory judgment plaintiff could not pursue its claim without both patent co-owners in the suit: "The Court agrees with decisions by courts in this District and other districts that a patent holder – even one who holds a patent with another party – is an indispensable party in a declaratory judgment action challenging a patent's validity and enforcement." *Zumbro, Inc. v. California Natural Prods.*, 861 F. Supp. 773, 783 (D. Minn. 1994) (dismissing declaratory judgment patent claims against patent co-owner because other co-owner was not subject to personal jurisdiction and was deemed indispensable).

The Rule 19(b) analysis turns on "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed. R. Civ. P. 19(b). The Rule sets out four factors the Court must consider.

The first consideration is to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties. A judgment regarding claim construction, non-infringement, or patent invalidity in the patent owner's absence would be prejudicial. This is the case both with regard to the potential collateral estoppel and market effects of such judgments. *See Suprex Corp.*, 660 F. Supp. at 93 (recognizing the potential devaluing effect on the patented asset and negative effects on technology development).

Furthermore, to the extent that Neil and Marcus Mintz might not be bound by this Court's determination under collateral estoppel principles, Plaintiff would not have realized its objective in this suit of eliminating threats of infringement litigation. *See Messerschmit-Boelkow-Blohm GmbH*, 483 F. Supp. at 53, discussing *Blonder-Tongue Laboratories v. University of Illinois Foundation*, 402 U.S. 313, 91 S. Ct. 1434, 28 L. Ed.2d 788 (1971). Therefore, under the first factor, both Plaintiff and the patent owners would be prejudiced.

The second Rule 19(b) factor is the extent to which, by protective provisions in the judgment, the shaping of relief, or other measures, the prejudice can be lessened or avoided. It does not appear that any protective provisions could lessen the prejudice to both the patent owners and Plaintiff.

The third consideration is whether a judgment rendered in the person's absence will be adequate. Here, a judgment against licensee Jif-Pak may not accomplish Plaintiff's goal to stop enforcement of the '148 patent and to free Plaintiff in its efforts to market its product. *See Suprex Corp.*, 550 F. Supp. at 93.

The fourth Rule 19(b) factor is whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Plaintiff in this case could resort to a forum, such as the Southern District of California, having personal jurisdiction over both the patent owners and licensee Jif-Pak. *See Suprex Corp.*, 660 F. Supp at 94. Thus, Plaintiff would not be without a forum to seek a remedy.

Considering all of the Rule 19(b) "equity and good conscience" factors, patent owners Neil and Marcus Mintz are indispensable parties without whom this case must be dismissed.

4.    **Plaintiff's Reliance on Case Law is Misplaced and Distinguishable on the Facts.**

In its Memorandum in Opposition to Defendant's previous Motion to Dismiss, Plaintiff has cited several distinguishable cases for the proposition that the Mintz patent owners are not indispensable parties. The *Capri Jewelry* court allowed the action to proceed where "there is nothing in appellant's assertion that the district court lacked 'jurisdiction' to proceed in the absence of the patent-owner." *Capri Jewelry, Inc. v. Hattie Carnegie Enterprises, Ltd.*, 539 F.2d 846, 853 (2nd Cir. 1976). In this case, however, Jif-Pak has directly asserted that the Court lacks subject matter jurisdiction for a lack of actual controversy, as discussed below. In the *Capri Jewelry* case, the demand letters sent by the licensee claimed it would take action individually and with the patent owners, which it in fact did when it filed a suit two weeks after the demand letter for enforcement. *Id.* Similarly, in the *Bose* case in which the wholly owned Bose Corporation subsidiary which owned the patent was not deemed to be an indispensable party,

the exclusive licensee Bose Corporation issued the demand letters itself and wholly controlled both the subsidiary and the patent. *See Micro- Acoustics Corp. v. Bose* Corporation, 493 F. Supp. 356, 361 (S.D.N.Y. 1980). In this case, Defendant Jif-Pak made no such claims in its letter to its customers. Moreover, Jif-Pak has never made such a claim against Plaintiff.

The *Parkson* case cited by Plaintiff also involved a suit by an exclusive patent licensee seeking to . *See Parkson Corp. v. Fruit of the Loom, Inc.*, Not Reported in F. Supp., 1992 WL 541570, 28 U.S.P.Q.2d 1066 (E.D. Ark. 1992). That suit was procedurally different in that the defendant was asking for dismissal due to the absence of the patent owner. The license provided exclusive rights to make, use or sell the invention throughout the United States and, apparently, the only substantive right retained by the owner was the right to agree on what action to take in the event of an infringement. Moreover, the patent owner had filed a declaration whereby he stated that he had authorized the licensee to bring the action as the sole plaintiff, would be bound by the outcome of the action, and would bring no independent legal action against the defendants. Thus, the patent owner further granted the licensee the limited remaining rights it had in the patent.

Other cases have found such exclusive licensees to be the "effective patentee" for purposes of standing. *See Prima Tek II, L.L.C.*, 222 F.3d at 1377. The patent owner in *Parkson* had licensed substantially all of its rights and delegated authority to exercise the rest to the licensee. In marked contrast, the Mintz patent owners have retained the substantial rights in the patent. [Neil Mintz Decl., ¶¶ 5-6.] In this case, they remain indispensable parties. *See Moore U.S.A., Inc. v. Standard Register Co.*, 60 F. Supp.2d 104, 110 n.4 (W.D.N.Y. 1999)( granting motion to add patent owner as indispensable party where it had retained reversionary rights in the patent and distinguishing *Parkson* since patent owner had produced no assurances that it would not litigate the case after the license expired).

In marked contrast to *Parkson* and like *Moore U.S.A.*, there has been no promise by the patent owners in this case to refrain from bringing another action against Plaintiff. Nor have the patent owners in this case given licensee Jif-Pak authority to file an action as the sole plaintiff.

Rather, the patent owners in this case have retained those substantial rights in the patent for themselves. Indeed, the action filed in the Southern District of California names only Neil and Marcus Mintz as the plaintiffs on the patent causes of action. [Haller Decl., Ex. 1.] Thus, while in the *Parkson* case the court was assured that the case before it would resolve the dispute because all parties were either present or had waived their rights, the case at hand is markedly different.

Because Neil and Marcus Mintz are patent owners with substantial retained patent rights they are indispensable parties. Because Plaintiff cannot not join these indispensable parties (because of lack of personal jurisdiction over these parties), the declaratory relief/patent action must be dismissed.

## C.  PLAINTIFF'S CLAIM FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

In addition, the claim for declaratory judgment of non-infringement should be dismissed for lack of subject matter jurisdiction. This issue was addressed in Jif-Pak's original motion to dismiss but was not substantively addressed by Plaintiff's opposition. Even if Plaintiff succeeds in its argument that Neil and Marcus Mintz are not indispensable, this Court would have before it only a non-exclusive licensee as a declaratory judgment defendant.

This Court lacks subject matter jurisdiction over the declaratory judgment cause of action, because there is no case or controversy between the parties. Plaintiff has sued Jif-Pak, Inc., who does not have ownership rights to the '148 patent. As such, Jif-Pak does not have standing to bring a patent infringement suit against Plaintiffs. Since Jif-Pak has no such standing, Plaintiff does not have a reasonable apprehension of suit by Jif-Pak. Therefore, there is no controversy between the parties, as required by the Declaratory Judgment Act.

### 1.  Defendant Jif-Pak Is Not The Patent Owner Or Exclusive Licensee Of The Patent At Issue

Plaintiff makes no allegation about ownership of the '148 patent, although a quick search of the U.S. Patent Office website would have revealed it is currently owned by the inventors,

Neil and Marcus Mintz. (Neil Mintz Decl., ¶ 4; Marcus Mintz Decl., ¶¶ 3,4.)

The patent law provides that a "patentee" shall have a remedy by civil action for

infringement of a patent. 35 U.S.C. 281. This law has been interpreted to require that a suit for

infringement must ordinarily be brought by a party holding legal title to the patent. *Textile*

*Prods., Inc. v. Mead Corp.*, 134 F.3d 1481 (Fed. Cir. 1998).

A "bare licensee", who enjoys only a non-exclusive license and has no right to exclude

others, has no standing to bring a patent infringement action. *Abbott Labs v. Diamedix Corp.*, 47

F.3d 1128; *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026 (Fed. Cir. 1995).

In this case, Jif-Pak, Inc. is a bare, non-exclusive licensee of the '148 patent. The license

is informal and verbal. Jif-Pak has no rights to exclude anyone else from making, using or

selling the claimed structure. (Neil Mintz Decl., ¶¶ 5, 6, 7; Marcus Mintz Decl., ¶¶ 5, 6.)

Furthermore, patent owners Neil and Marcus Mintz separately have the right to license the patent

to anyone else or to make and sell products under the patent. [Neil Mintz Decl., ¶ 7; Marcus

Mintz Decl., ¶ 6.]

Therefore, Defendant Jif-Pak does not have sufficient legal interest in the '148 patent

such that it could bring a patent infringement case.

2.    **Because Defendant Does Not Have A Sufficient Legal Interest In The Patent,**
      **There Is No Actual Controversy Between The Parties As Required By 28**
      **U.S.C. Sec. 2201**

If a Defendant does not have legal interest in the patent, and therefore could not bring suit

for patent infringement, there is no actual controversy which would support jurisdiction under

the Declaratory Judgment Act, 28 U.S.C. Sec. 2201(1994). *Fina Research, S.A. v. Baroid Ltd.*,

141 F.3d 1479, 1481 (Fed. Cir. 1998).

Like the case in *Fina*, Defendant here does not have the rights to enforce the patent, and

thus could not have brought suit for patent infringement. As such, there is no "actual

controversy" between the parties, as required by the Declaratory Judgment Act. Because

Plaintiff fails to show such a controversy, this Court lacks subject matter jurisdiction.

Thus, even if Plaintiff succeeds in its argument that the patent owners are not

indispensable, and this Court determines that the case can proceed without Neil and Marcus Mintz, Plaintiff can not resolve the absence of subject matter jurisdiction. Without subject matter jurisdiction over the declaratory judgment action, Plaintiff's patent Count One must be dismissed under Fed. R. Civ. P. 12(b)(1).

**D.    THERE IS NO SUBJECT MATTER JURISDICTION OVER THE STATE LAW INTERFERENCE WITH CONTRACT CLAIM**

If this Court dismisses the only claim over which it has original jurisdiction, the declaratory judgment patent claim, the remaining claim will be the entirely state-law based claim of Tortious Interference with Contract. This Court may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. 1367(c)(3). It is important to note that Plaintiff has failed to allege any amount in dispute relevant to its interference with contract count, thereby failing to properly allege and/or be able to qualify for diversity jurisdiction under 28 U.S.C. § 1332.

Jif-Pak requests the Court exercise its discretion in dismissing the remaining claim over which it only has supplemental jurisdiction and for which no amount in controversy has been alleged, thereby failing to meet the requirement for diversity jurisdiction.

## IV.

## CONCLUSION

Plaintiff's attempt to resolve the subject matter jurisdiction problem addressed in Jif-Pak's original motion is futile. Adding the patent owner does not resolve the problem because Neil and Marcus Mintz are not subject to personal jurisdiction in South Carolina. The patent owners are necessary and indispensable because they have retained substantial rights to the patent and prejudice to both Plaintiff and the patent owners could occur if the case went forward without them. No case and controversy exists for Plaintiff without addition of the patent owners. Existence of an actual case and controversy is an essential element of Plaintiff's claim for declaratory judgment of non-infringement of patent. Therefore, the declaratory relief patent action must be dismissed.

Without the patent action to provide federal question jurisdiction, this Court should

exercise its discretion and also dismiss the pendant state law claim (interference with contract)

over which this Court has no independent jurisdiction.

Respectfully submitted,

                                  s/Rivers S. Stilwell
                                  Neil C. Jones, Esq. (Fed. Bar No. 5470)
                                  Rivers S. Stilwell (Fed. Bar No. 6271)
                                  NELSON MULLINS RILEY & SCARBOROUGH LLP
                                  Poinsett Plaza
                                  104 South Main Street
                                  Suite 900
                                  P. O. Box 10084
                                  Greenville, SC 29603-0084
                                  864-250-2300

                                  -and-

**OF COUNSEL:**

John L. Haller, Esq. (CA State Bar No. 61,392
Susan B. Meyer, Esq. (CA State Bar No. 204931)
GORDON & REES LLP
101 West Broadway
Suite 1600
San Diego, CA  92101
619-696-6700

                               Attorneys for Defendants,
                               JIF-PAK, Neil Mintz and Marcus Mintz

August 25, 2005

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF SOUTH CAROLINA
### GREENVILLE DIVISION

| | |
|---|---|
| Package Concepts & Materials, Inc., | C.A. No. 6:05-1184-HMH |
| Plaintiff, | |
| vs. | **PLAINTIFF'S RESPONSE TO DEFENDANTS' REQUEST FOR TRANSFER OF THE CASE** |
| JIF-PAK, Neil Mintz, and Marcus Mintz, | |
| Defendants. | |

The Plaintiff, Package Concepts & Materials, Inc. ("PCM") respectfully submits the following Response to Defendants' Request for Transfer of the Case.

## I.    INTRODUCTION.

This Response is being filed pursuant to the Order of the Court, issued on October 4, 2005, to submit a brief to the Court concerning its position regarding a transfer of this case to the Southern District Court of California under either 28 U.S.C. § 1404 or 28 U.S.C. § 1406. Plaintiff respectfully submits that this case is not appropriate for transfer under either of these two statutes. For the reasons that follow, Defendants' Request must be denied, and this declaratory judgment action should move forward in this Court.

## II.    LAW AND ANALYSIS.

As a preliminary matter, it should be recognized that identical issues of validity and enforcement of the '148 patent have been raised in this declaratory judgment action and the later filed patent infringement action that is pending in California. PCM filed the action before this Court seeking a declaration that the patent in dispute, U.S. Patent No. 5,413,148 ("the '148 patent") has not been infringed, and also asserted a tortious interference with contract claim against JIF-PAK. The Complaint filed in the District Court for the Southern District of California also raises allegations of infringement of the '148 patent.[1] Specifically, JIF-PAK and

---

[1] See, *Neil Mintz and Marcus Mintz, and JIF-PAK v. Dietz & Watson, Inc. and Package Concepts & Materials,*

the Mintzes have alleged that PCM is contributorily infringing the '148 patent by producing the meat packaging product it sells to its customers, and that Dietz & Watson ("DW"), one of PCM's customers, is directly infringing the '148 patent in purchasing and using PCM's product. See, Plaintiff's Complaint, Count Two. In short, the validity and enforcement of the '148 patent are the focus of this declaratory judgment action and the later filed patent infringement action currently pending in California. PCM has moved to dismiss the California case on this basis.[2]

A.    28 U.S.C. § 1404 is the transfer provision that must be applied to determine whether venue of this case should be transferred.

28 U.S.C. § 1404 and 28 U.S.C. § 1406 have been recognized as the two principal provisions applicable to transfer of venue. *Martin v. Stokes*, 623 F.2d 469, 471 (6th Cir. 1980); see also *Carefirst of Maryland, Inc. v. Carefirst Urgent Care Center, LLC*, 305 F.3d 253, 255-256 (4th Cir. 2002). Section 1404 allows for transfer of an action "for the convenience of parties and witnesses, in the interest of justice," further stating, "a district court may transfer any civil action to any other district or division where it might have been brought." Section 1406 states: "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

The purposes of the two provisions are significantly different. Section 1404(a) applies in general to those actions brought in a permissible but inconvenient forum. *Martin*, 623 F.2d at 471. A transfer under this provision has been held to represent only a change in courtroom for the convenience of the litigants and witnesses. Id. at 472. In contrast, section 1406(a) applies in general to those actions brought in an impermissible forum. Id. at 471. This section provides a district court the discretionary opportunity to transfer an action to a permissible forum when the issue is raised, instead of dismissing it. Id. The rule in this circuit has been interpreted as authorizing the transfer of a case where venue is proper but some impediment exists that would prevent the action from going forward in that district to any district where venue would have been proper. *Carefirst of Maryland, Inc. v. Carefirst Urgent Care Center, LLC*, 305 F.3d at 255, citing *Martin v. Stokes*, supra. A transfer under section 1406(a) is based not on the inconvenience of the transferor forum but on the impropriety of that forum. *Martin*, 623 F.2d at

---

*Inc.*, Case No. 05 CV 1470L (AJB), attached as Ex. A.
[2] See, Defendants' Motion to Dismiss and Memorandum of Law in Support, attached as Ex. B.

2

472. This declaratory action cannot be transferred under 28 U.S.C. § 1406 because there is no impropriety to serve as the basis for application of the rule.

### 1.  Venue of this declaratory judgment action is proper in South Carolina.

Section 1406 cannot apply to this case because there is no underlying impropriety with South Carolina serving as the forum. PCM has moved to dismiss the patent infringement action that was filed by JIF-PAK and the Mintzes after the commencement of this action. In the Memorandum of Law filed by PCM in support of its Motion to Dismiss, PCM demonstrated that a declaratory judgment action may be properly used to determine issues of patent infringement and invalidity. See, PCM's Memorandum of Law in Support of Motion to Dismiss, Section IIA, attached hereto as Ex. B. It has been long understood that a declaratory judgment action alleging invalidity and noninfringement of a patent is not an action for patent infringement and that, in such a case, venue jurisdiction is controlled by U.S.C. § 1391(c), and not by U.S.C. § 1400(b). *General Tire & Rubber Co. v. Watkins,* 326 F.2d 926, 929 (4th Cir. 1964), *cert. denied,* 377 U.S. 909, 84 S.Ct. 1166, 12 L.Ed.2d 179 (1964), citing *Barber-Greene Co. v. Blaw-Knox Co.,* 239 F.2d 774 (6th Cir. 1957); *Crosley Corp. v. Westinghouse Elec. & Mfg. Co.,* 130 F.2d 474 (3rd Cir. 1942); *E.I. Dupont de Nemours & Co. v. Burnes,* 101 F.2d 14 (2nd Cir. 1939).

PCM has demonstrated that South Carolina is an appropriate venue for this declaratory judgment action. See, Memorandum of Law in Support of Defendants' Motion to Dismiss filed by PCM in the California case, Section IIB, subsection 1, attached hereto as Ex. B. In further support of this position, PCM emphasizes that venue is appropriate in South Carolina because it is where the infringement claim arose. A declaratory judgment action regarding the validity of a patent arises "where the alleged infringer is located, receives the damaging charges of infringement, or suffers economic injury as a result of the charges." *Millipore Corp. v. University Patents, Inc.,* 682 F.Supp. 227, 234, (D.Del. 1987), citing *Pennwalt Corp. v. Hutton Co.,* 582 F.Supp. 438, 440 (E.D.Pa. 1984). The source of the charges of infringement is not a factor in determining where the claim arose. Id.

As PCM has already demonstrated to this Court, the alleged infringer, PCM, has its principle place of business in Greenville, South Carolina. See, Plaintiff PCM's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, pp. 1-2 and 7-8. All of the allegedly infringing manufacturing occurred in South Carolina. Letters sent by JIF-PAK alleged that JIF-

NPCHAR1:288078.1-MM-(AMC) 017700-00017

PAK was the owner of the '148 patent, and that the patent was being infringed by the purchase
and use of PCM's product, which is manufactured in South Carolina. Most importantly, JIF-
PAK and its President, Neil Mintz, purposely directed activity at South Carolina by targeting
specific customers of PCM's with letters threatening litigation if they did not stop doing business
with PCM. PCM has already demonstrated the loss of two accounts worth over $100,000.00 due
to these letters. See, Plaintiff PCM's Memorandum of Law in Opposition to Defendants' Motion
to Dismiss, pp. 1-2 and 7-8. Hence, JIF-PAK's action ultimately caused injury within South
Carolina in the form of over $100,000 worth of lost business to PCM.

### 2. Defendants have failed to establish that the absence of Marcus Mintz must bar this declaratory judgment action.

JIF-PAK did not raise a jurisdictional defense in this declaratory judgment action. See,
Plaintiff PCM's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, pp. 4-5.
The jurisdictional challenges that have been raised by Defendants concern the patent owners,
Neil Mintz and Marcus Mintz. This Court can properly assert personal jurisdiction over Neil
Mintz because he is President of JIF-PAK and undoubtedly was aware and in control of JIF-
PAK's decision to send the "cease and desist" letters which held JIF-PAK out as the owner of
the '148 patent. See, Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to
Dismiss, pp. 1-2 and attachments. It is Plaintiff's position that Marcus Mintz is not an
indispensable party for purposes of Rule 19(b).[3]

In arguing their position that this case should be dismissed if personal jurisdiction cannot
be asserted by this Court over Marcus Mintz, Defendants have repeatedly cited to case law
indicating that patent co-owners should generally be joined in patent infringement suits. See,
Defendants' Memorandum of Law in Reply to Plaintiff's Opposition to Defendants' Motion to
Dismiss, p 6. Recognizing that this general rule does not apply to actions brought against an
exclusive licensee whose rights are equivalent to those of an assignee or who has been invested
with sufficient incidents of patent ownership, Defendants have produced testimony from Neil
Mintz and Marcus Mintz in an attempt to demonstrate that JIF-PAK should be construed as a
"bare" or "non-exclusive" licensee. See, Defendants' Memorandum of Law in Reply to

---

[3] Plaintiff does not believe that Neil Mintz is an indispensable party but will not repeat the arguments already
presented in previous briefs. Moreover, as Plaintiff has also previously demonstrated, this Court can assert personal
jurisdiction over Neil Mintz as President of JIF-PAK.

NPCHAR1:268078.1-MM-(AMC) 017700-00017

Plaintiff's Opposition to Defendants' Motion to Dismiss, p 8. The production of this testimony is not surprising, and follows directly the pattern established by JIF-PAK's on-again-off-again ownership of the '148 patent.

In another non-surprising turn of events, Defendants have indicated that there is no written document memorializing the license agreement between JIF-PAK and the Mintzes regarding the '148 patent. Although JIF-PAK and its counsel have clearly represented otherwise, on several occasions, Neil Mintz and Marcus Mintz now come before this Court claiming that they have retained substantial rights in the patent to license it to anyone else and make or sell products (for themselves, it is assumed) under the patent. See, Defendants' Memorandum of Law in Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss, p 2. Yet, they have failed to come forward anything other than their own testimony to substantiate the rights they claim to have retained in the '148 patent.[4] Basically, by minimizing the written representations made regarding JIF-PAK's ownership of the '148 patent and JIF-PAK's rights and interests in the patent, the Mintzes have attempted to neutralize previous actions by their own counsel which they undoubtedly authorized. It would not be in the interest of justice for this Court to sanction this behavior by transferring this action to California. *Fina Research, S.A. v. Baroid Ltd.,* 141 F.3d 1479, 1483 (Fed. Cir. 1998).

The Mintzes' position that Neil Mintz and Marcus Mintz are the indispensable parties to this action, rather than JIF-PAK, defies logic. JIF-PAK, according to information provided on the company's website, is held out as "**the developer** of the innovative Casing-Net™ product line" and "the leader in the development of new technology for nettings, casings and related equipment for the meat processing industry." See, home page at http://www.jifpak.com, printed copy of screen attached as Ex. C, emphasis added. On a separate page presenting information about the Casing-Net™ Elastic Netting product offered for sale by JIF-PAK, the content of the website states "Our state-of-the-art **patented** knitting technology insures that the Jif-Pak elastic netting is the highest quality and most consistent elastic netting on the market today." See, http://www.jifpak.com/elasticnetting.shtml, printed copy of screen attached as Ex. D (emphasis added). JIF-PAK is also the listed Applicant and Owner of the Casing-Net trademark, which application has been submitted for federal registration with the United States Patent and

---

[4] Unlike this case, *Abbott Labs v. Diamedix* and the other cases cited in Defendants' Memorandum of Law involved written license agreements between wholly independent parties, i.e., companies and individuals not founded, owned and/or operated by the patent holders.

NPCHAR1:288078.1-MM-(AMC) 017700-00017

Trademark Office. See, TARR status pages for CASING-NET at www.uspto.gov, printouts of screens attached as Ex. E. These representations agree with the representations made by JIF-PAK in the original letters, and fly in the face of the current position of JIF-PAK, the Mintzes, and their counsel.

Neil Mintz is the current President of JIF-PAK. Marcus Mintz is a 30% shareholder in JIF-PAK, was formerly involved in the company's business and is now retired from the company.   See, Affidavits of Neil Mintz and Marcus Mintz, attached to Defendants' Memorandum of Law in Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss. It is likely that Neil Mintz and Marcus Mintz are the majority shareholders in the company.

JIF-PAK must have the dominant interest at stake in defending the validity and alleged infringement of the '148 patent, since it manufactures, markets and sells the product that is protected by the '148 patent, provides Neil Mintz with employment, and Marcus Mintz with retirement income. The Mintzes cannot convincingly argue that they have retained their rights in the patent in order to license the technology elsewhere or to go into business for themselves, either case in direct competition with JIF-PAK and their own considerable interests. Marcus Mintz's rights cannot supersede either JIF-PAK's or Neil Mintz's. His interests will necessarily be protected by JIF-PAK and Neil Mintz. PCM reiterates that Marcus Mintz and Neil Mintz, are not indispensable parties to this declaratory judgment action, and that the case can move forward in the absence of Marcus Mintz.

**B.     This case is not appropriate for transfer under 28 U.S.C. § 1404 because it is in the interest of convenience of the parties to permit the South Carolina action to proceed.**

The balance of convenience analysis under 28 U.S.C. § 1404 favors proceeding with the instant declaratory judgment action in South Carolina over the patent infringement action filed by Defendants in the District Court for the Southern District of California. In performing the analysis, the greatest weight is given to the first factor taken into consideration, the plaintiff's choice of forum. *Collins v. Straight, Inc.*, 748 F.2d 916, 921-922 (4th Cir. 1984); *Ellicott Machinery Corp. v. Modern Welding Co.*, 502 F.2d 178, 180 (4th Cir. 1974). Additional factors taken into consideration are:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other

NPCHAR1:288078.1-MM-(AMC) 017700-00017

practical problems that make trial of a case easy, expeditious and
inexpensive. There may also be questions as to the enforceability
of the judgment if one is obtained. The Court will weigh
advantages and obstacles to [a] fair trial. *Gulf Oil Corp. v. Gilbert*,
330 U.S. 501, 508 (1947).

The parties have not engaged in any discovery thus far in this case. However, it is clear
that the majority of the witnesses needed to appear at proceedings pertaining to the alleged
infringement of the '148 patent by PCM will be located in or near South Carolina. PCM's own
corporate officers and employees are located within South Carolina. Dietz & Watson, the
customer of PCM's that has been named as a defendant in the California case and whose
employees may serve as witnesses in this declaratory judgment action, is located in
Pennsylvania, which is obviously closer to South Carolina. Other customers of PCM's who
received letters from JIF-PAK regarding the alleged infringement of the '148 patent by PCM and
whose employees may also be called as witnesses, including Specialty Food Group, Inc., a
Virginia corporation, Publix Supermarkets, Inc., a Florida corporation, and Gusto Packing, an
Illinois company, are obviously closer to South Carolina than California. All documents in the
possession of PCM that may be germane to this action are located within South Carolina, and
those in the possession of DW are located in Pennsylvania. Only JIF-PAK is located in
California, or even in the western United States for that matter. Clearly, it would be more
convenient and less costly overall to resolve the issues between the parties in South Carolina
rather than in California.

C.    **It is within the discretion of this Court to proceed with the declaratory judgment
      action.**

District courts have been given substantial discretion regarding the decision to issue a
declaratory judgment. "Since its inception, the Declaratory Judgment Act has been understood
to confer on federal courts unique and substantial discretion in deciding whether to declare the
rights of litigants." *Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1485-1486 (Fed. Cir.
1998), citing *Wilton v Seven Falls Co.*, 515 U.S. 277, 286 (1995). "The statute specifically
entrusts courts with discretion to hear declaratory suits or not depending on the circumstances."
*Fina Research*, supra at 1486, citing *Serco Servs. Co. v. Kelley Co.*, 51 F.3d 1037, 1039 (Fed.
Cir. 1995). Where there is an "actual controversy" between the parties, and thus jurisdiction, the

7                        NPCHAR1:288078.1-MM-(AMC) 017700-00017

exercise of that jurisdiction rests within the sound discretion of the court. *Fina Research*, 141 F.3d at 1481.

An "actual controversy" results from 1) an explicit threat or other action by the patentee which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and 2) present activity which could constitute infringement. *Fina Research*, 141 F.3d at 1481. As established in *Fina Research*, letters alleging patent infringement by a manufacturer and suggesting the possibility of legal action or the imposition of liability can create the necessary apprehension to support the filing of a declaratory judgment action. *Fina Research*, 141 F.3d at 1482-1484. PCM received the letters alleging infringement from its customers who contemplated, and actually stopped, doing business with PCM after reading the letters. Ongoing production and sale of the meat packing product by PCM, along with its purchase and use by PCM's customers, is the "present activity which could constitute infringement" that is required to support pursuit of the declaratory judgment in this case. An "actual controversy" clearly exists, conferring the jurisdiction that may be exercised by this Court. Plaintiff respectfully submits that the circumstances of this case warrant a decision by this Court to exercise its discretion to move forward with the declaratory judgment action.

### III.    CONCLUSION.

· Plaintiff in this case, Package Concepts & Materials, Inc., submits that 28 U.S.C. § 1404 is the applicable transfer provision to this declaratory judgment action. This provision applies because venue of the action is proper in South Carolina, where the alleged infringement claim arose and where PCM, the alleged infringer, resides, received the damaging charges of infringement, and suffered economic injury as a result of JIF-PAK's charges. In addition, because this Court has personal jurisdiction over JIF-PAK and Neil Mintz, and Marcus Mintz is not indispensable to the litigation, there is no impediment to prevent the action from moving forward in this Court. In short, 28 U.S.C. § 1404 applies because South Carolina is a permissible forum for the case.

Defendants' request to transfer this case to California must be denied. The balance of convenience analysis under 28 U.S.C. § 1404 favors proceeding with the action in South Carolina, where PCM and the documents germane to the case are located and which is closer to

· NPCHAR1:288078.1-MM-(AMC) 017700-00017

all of PCM's customers who received letters from JIF-PAK alleging infringement of JIF-PAK's patent and who will likely serve as witnesses in the case.

For the foregoing reasons, Plaintiff Package Concepts & Materials, Inc., respectfully submits that this case is not appropriate for transfer to the District Court for the Southern District of California. PCM also renews its request that this Court deny Defendants' Motion to Dismiss, and proceed with the pending declaratory judgment action.

Respectfully submitted,


s/ John B. Hardaway, III
John B. Hardaway III (Fed. ID No. 1710)
NEXSEN PRUET, LLC
201 W. McBee Avenue, Suite 400 (29601)
PO Drawer 10648
Greenville, SC 29202
864.370.2211

Attorneys for Plaintiff,
Package Concepts & Materials, Inc.

October 13, 2005

Greenville, South Carolina

9

NPCHAR1:288078.1-MM-(AMC) 017700-00017

# EXHIBIT A

08/08/2005 18:28 FAX ⬤ 6:05-cv-01184-HM⬤ Date Filed 10/13/2005 Entry Number 21 Page 2 of 9 ☐001

Summons in a Civil Action (Rev 11/97)

# United States District Court
## SOUTHERN DISTRICT OF CALIFORNIA

NEIL MINTZ, an individual; and MARCUS MINTZ,
an individual; and JIF-PAK MANUFACTURING,
INC., a California corporation

**SUMMONS IN . CIVIL ACTION**

Case No. 05 C 1470 L (AJB)

vs

DIETZ & WATSON, INC., a Pennsylvania
corporation and PACKAGE CONCEPTS &
MATERIALS, INC., a South Carolina
corporation

TO: (Name and Address of Defendant)

DIETZ & WATSON, INC.
c/o its Agent for Service of Process
115 Vine Street
Philadelphia, PA 19106

or   DIETZ & WATSON, INC.
c/o its Agent for Service of Process
5701 Tacony Street
Philadelphia, PA 191: :

YOU ARE HEREBY SUMMONED and required to file with the Clerk of this Court and serve upon
PLAINTIFF'S ATTORNEY
JOHN L. HALLER, ESQ.
GORDON & REES LLP
101 West Broadway, Suite 1500
San Diego, CA 92101
Telephone: 619-696-6700     Facsimile: 6190-696-71 4

An answer to the complaint which is herewith served upon you, within _twenty (20)_ days after
service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by
default will be taken against you for the relief demanded in the complaint.

W. Samuel Hamrick, Jr.
CLERK

JUL 25 2005

By _____, Deputy Clerk

DATE

Summons in a Civil Action

::ODMA\PCDOCS\WORDPERFECT\14443\1 May 5, 1999 (11:34am)

AO-4405

08/08/2005 18:28 FAX                                                                      Ø002
6:05-cv-01184-HM    Date Filed 10/13/2005    Entry Number 21    Page 3 of 91

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**COPY**

| **.. (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| NEIL MINTZ, MARCUS MINTZ, and JIF-PAK MANUFACTURING, INC. | DIETZ & WATSON, INC., and PACKAGE CONCEPTS & MATERIAL 3, INC. |

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  SAN DIEGO
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

05 CV .470 L    (AJB)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
GORDON & REES LLP
101 W. BROADWAY
SUITE 1600
SAN DIEGO, CA  92101
619-696-6700

ATTORNEYS (IF KNOWN)
John B. Hardaway, II, Esq.
NEXSEN PRUET
201 W. McBee Avenue, Suite 400
P. O. Drawer 10648
Greenville, SC  29603
864-282-1172

| **II. BASIS OF JURISDICTION** (PLACE AN 'X' IN ONE BOX ONLY) | **III. CITIZENSHIP OF PRINCIPAL PARTIES** (For Diversity Cases Only) (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) |
|---|---|

| | | | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government not a Party) | Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| | | Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
Patent Infringent (direct, contributory, inducement); Declaratory Judgment (Non-Interference with Business Relationship)

**V. NATURE OF SUIT** (PLACE AN 'X' IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Medical Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☒ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☒ 290 All Other Real Property | | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Conditions | | | |

**VI. ORIGIN** (PLACE AN 'X' IN ONE BOX ONLY)
☒ 1 Original Proceeding    ☐ 2 Removal from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district    ☐ 6 Multidistrict Litigation    ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ in excess of $75,000 and declaratory relief    CHECK YES only if demanded in complaint: JURY DEMAND: ☒ YES  ☐ NO

**VIII. RELATED CASE(S)** (See instructions): JUDGE Hon. Robert B Harwell    Docket Number District of South Carolina (Greenville) Case No. 05-CV-1184
**IF ANY**

DATE
July 22, 2005

SIGNATURE OF ATTORNEY OF RECORD

John C. Miller, Esq. GORDON & REES LLP

::ODMA\PCDOCS\WORDPERFECT\228164\1 January 24, 2000 (3:10pm)

COPY

1   JOHN L. HALLER (SBN: 61392)
    CHARLES V. BERWANGER (SBN: 47,282)
2   SUSAN B. MEYER (SBN: 204931)
    GORDON & REES LLP
3   101 West Broadway
    Suite 1600
4   San Diego, CA 92101
    Telephone: (619) 696 6700
5   Facsimile: (619) 696-7124

6   Attorneys For: Plaintiffs
    NEIL MINTZ, MARCUS MINTZ AND
7   JIF-PAK MANUFACTURING, INC.

8               UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

11  NEIL MINTZ, an individual; and MARCUS    CASE NO. 05 CV 1470 L (AJB)
    MINTZ, an individual and JIF-PAK
12  MANUFACTURING, INC., a California     COMPLAINT FOR PRELIMINARY
    corporation,                            AND PERMANENT INJUNCTION AND
13                               FOR DAMAGES FOR PATENT
                   Plaintiffs,     INFRINGEMENT, CONTRIBUTORY
14                               INFRINGEMENT AND INDUCEMENT
              v.                   TO INFRINGE AND FOR
15                               DECLARATORY RELIEF
    DIETZ & WATSON, INC., a Pennsylvania   REGARDING NON-INTERFERENCE
16  corporation and PACKAGE CONCEPTS &    WITH BUSINESS RELATIONSHIP
    MATERIALS, INC., a South Carolina
17  corporation,                      *Demand for Jury Trial*

18                Defendants.

19

20

21      Plaintiffs, NEIL MINTZ, MARCUS MINTZ, and JIF-PAK MANUFACTURING, INC.

22  (collectively "Plaintiffs") for their complaint against Defendant, DIETZ & WATSON, INC.,

23  (hereinafter called "D&W") and PACKAGE CONCEPTS & MATERIALS (hereinafter "PCM")

24  hereby alleges as follows:

25                               I.

26                        JURISDICTION

27      1.    This is a civil action for patent infringement, contributory infringement and

28  inducement to infringe which arises under the Patent Laws of the United States namely Title 35

                                -1-

1  of the United States Code and this Court has jurisdiction under 28 U.S.C. §§ 1331, 1332 and

2  1338(a). In addition, his is an act on for declaratory judgment (28 U.S.C. § § 2201, 2202)

3  regarding the non-interference with a business relationship and this Court has jurisdiction under

4  28 U.S.C. § 1367.

### II.

### VENUE

7      2.      Plaintiffs are informed and believe that this Court is the proper venue under 28

8  U.S.C. §§ 1391(b), (c) and § 1400 because Defendant D&W is subject to personal jurisdiction in

9  this judicial district, the products of the infringing activities, as alleged herein below, are

10  advertised and sold within this judicial district and D&W is doing business in this judicial

11  district.

12      3.      Plaintiffs are informed and believe that this Court is the proper venue under 28

13  U.S.C. §1391(b), (c) and § 1440 because Defendant PCM, is subject to personal jurisdiction in

14  this judicial district, the products of the infringing activities, as alleged herein below, are

15  advertised and sold within this judicial district and PCM is doing business in this Judicial

16  District. Plaintiffs are further informed and believe that Defendant PCM will admit to the

17  jurisdiction of this court.

### III.

### THE PARTIES

20      4.      Plaintiff Neil Mintz is an individual, residing in the county of San Diego.

21      5.      Plaintiff Marcus Mintz is an individual, residing in the county of San Diego.

22      6.      Jif-Pak Manufacturing, Inc. is a California corporation with its principal place of

23  business in the County of San Diego ("Jif-Pak").

24      7.      Upon information and belief, Defendant D&W is a Pennsylvania corporation,

25  with a principal place of business in Philadelphia, Pennsylvania.

26      8.      Upon information and belief, Defendant PCM is a South Carolina corporation,

27  with a principal place of business in Greenville, South Carolina.

28  /////

Gordon & Rees LLP
101 West Broadway
Suite 1600
San Diego, CA 92101

IV.

## COUNT 1

### PATENT INFRINGEMENT

#### (Against All Defendants)

9.      Plaintiffs, Neil Mintz and Marcus Mintz, reallege the allegations of the foregoing Paragraphs 1 through 6, and incorporates allegations herein by reference as though fully set forth.

10.     On May 9, 1995, United States Letters Patent No. 5,413,148 (the '148 patent) entitled Casing Structure for Encasing Meat Products (hereinafter th Patented Invention) issued to co-inventors Neil Mntz and Marcus Mintz. Plaintiffs are the owners/licensees of the '148 patent and enjoy all rights, title and interest in and to said '148 paten

11.     Plaintiffs Neil Mintz and Marcus Mintz, have informally licensed the right to make have made use sell and advertise the invention claimed in the '148 patent to Plaintiff Jif-Pak.

12.     The '148 patent relates to a tubular casing for meat products having a stockinette member with a knit tubular member formed of threads and a netting rangement which is intricately formed with the stockinette member. The netting arrangement may either be knit in with the stockinette member or the strands of the knitting arrangement may be laid in.

13.     Plaintiffs are informed and believe and on that basis a eged that Defendants have been and continue to directly infringe, contributory infringement and or induced others to infringe the '148 paten by practicing the patent invention, selling co ponents which have no substantial non-infringing use and/or knowingly teaching others to pr ctice the patented invention.

14.     Plaintiffs are informed and believe that Defendants in ingement is willful, malicious and without regard to the rights of Plaintiffs.

15.     Plaintiffs are further informed and believe that such pr ctice will continue unless enjoined by this Court.

/////

Gordon & Rees LLP
101 West Broadway
Suite 1600
San Diego, CA 92101

V.

## COUNT TWO

### DECLARATORY JUDGMENT: NON-INTERFERENCE
### WITH BUSINESS RELATIONSHIP

(Against All Defendants)

16. Plaintiff Jif-Pak reallege all the allegations in the foregoing paragraphs 1 through 15 and incorporates said allegations herein by reference as though fully set forth.

17. Plaintiff Jif-Pak is the licensee of the '148 patent and has notified Defendant D&W and other customers including Specialty Food Group, Inc. of Virginia of the existence of the '148 patent and that their activities may be infringing said patent

18. Plaintiff Jif-Pak's notice was in the form of a communication to Plaintiff Jif-Pak's current customers to identify the benefits of continuing to do business with Jif-Pak.

19. Defendant PCM has asserted that Jif-Pak's communication with its customers regarding the existence of the '148 patent and encouraging its customers to maintain its business with Jif-Pak constitutes an interference with PCM's relationship with said customers.

20. Jif-Pak has notified PCM that it has the right to advise others, specifically Plaintiffs own customers as to the existence of the '148 patent and of its belief that the activities of such customers may constitute infringement and that Jif-Pak would like to maintain their business.

21. There is a present actual and continuing controversy between Plaintiff Jif-Pak and Defendant PCM as to Jif-Pak's right to notify its customers including Dietz &Watson, Inc. of the existence of the '148 patent and to indicate that its customers including Dietz & Watson, Inc. may be infringing such patent..

VI.

## PRAYER

WHEREFORE, Plaintiffs pray the Court for the following relief:

1. That Defendants, their subsidiaries, affiliates, parents, successors, assigns, officers, agents, servants, employees, attorneys, and all persons acting in concert or in

-4-

COMPLAINT

1 participation with them or any of them, be preliminarily enjoined during the pendency of this

2 action, and permanently enjoined thereafter from infringing, contributing to the infringement of,

3 and inducing infringement of the '148 patent and specifically from directly or indirectly making,

4 using, marketing, advertising, offering for sale, or selling and distributing devices embodying the

5 invention of the '148 patent during the life of the '148 patent without express written authority of

6 Plaintiffs. That Defendants be ordered to deliver to Plaintiffs for destruction at Plaintiffs' option,

7 their entire inventory of products that infringe the '148 patent.

8           2.      That Defendants and each of them, be directed to fully compensate Plaintiffs for

9 all damages attributable to Defendants' infringement of '148 patent in an amount according to

10 proof at trial.

11          3.      That Plaintiffs' notification to Dietz & Watson, Inc. and other customers and

12 potential customers regarding the existence of the '148 patent is lawful and does not constitute

13 an interference with any business relationship of Defendant PCM.

14          4.      For an accounting of such damages.

15          5.      That such damages be trebled.

16          6.      An award of attorneys' fees, interest and costs against Defendants and each of

17 them.

18

19 Dated: July 22, 2005                           GORDON & REES LLP

20

21                                          By
                                                 John L. Haller
22                                          Attorneys For Plaintiffs
                                            NEIL MINTZ and MARCUS MINTZ

23

24

25

26

27

28

-5-
**COMPLAINT**

1    DEMAND FOR JURY TRIAL

2    Plaintiffs hereby demand trial by jury of every issue that is triable by jury.

3

4    Dated: July 22, 2005                    GORDON & REE  LLP

5

6    By: _____
         John L. Haler
7    Attorneys For Plaintiffs
     NEIL MINTZ and MARCUS MINTZ

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gordon & Reea LLP
101 West Broadway
Suite 1600
San Diego, CA 92101

-6-
COMPLAINT

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Package Concepts & Materials, Inc., ) | Civil Action No. 6-05-1184-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **DEFENDANT JIF-PAK'S NOTICE OF** |
| ) | **MOTION AND MOTION TO DISMISS** |
| JIF-PAK, ) | **PLAINTIFF'S COMPLAINT FOR** |
| ) | **LACK OF SUBJECT MATTER** |
| Defendant. ) | **JURISDICTION** |
| ) | |
| ) | |

PLEASE TAKE NOTICE that Defendant JIF-PAK will and hereby does move this Court

for an order dismissing Plaintiff's Complaint for lack of subject matter jurisdiction.

Defendant JIF-PAK's motion to dismiss Plaintiff's Complaint is based on the ground that

There can be no case or controversy between these parties on the facts alleged in the complaint

because Defendant JIF-PAK does not own the patent at issue. Plaintiff could not have and had

no reasonable apprehension that Defendant would sue Plaintiff. Plaintiff has named the wrong

party. There therefore is no case or controversy existing between Plaintiff and Defendant.

Since there is no case or controversy, this Court does not have subject matter jurisdiction over

Plaintiff's declaratory relief count.

This motion to dismiss is further based on the ground that it would be futile to allow an

amendment complaint naming the patent owners because this Court would not have personal

jurisdiction over them. Therefore, an amended complaint naming the patent owners would

ultimately have to be dismissed for lack of personal jurisdiction.

This motion to dismiss is further based on the ground that upon dismissal of Plaintiff's

declaratory relief count, the only remaining cause of action for interference with contract is a

state cause of action over which this Court would not have even supplemental jurisdiction.

This motion to dismiss is further based on all the papers on file in this action and on such

further evidence and argument as may be presented at the hearing on this motion.

Respectfully submitted.

s/Neil C. Jones
Neil C. Jones, Esq. (Fed. Bar No. 5470)
Rivers S. Stilwell (Fed. Bar No. 6271)
NELSON MULLINS RILEY & SCARBOROUGH LLP
Poinsetta Plaza
104 South Main Street
Suite 900
P. O. Box 10084
Greenville, South Carolina 29603-0084
864-250-2300

-and-

John L. Haller, Esq. (CA State Bar No. 61,392
(*pro hac vice* application pending)
Susan B. Meyer, Esq. (CA State Bar No. 204931)
(*pro hac vice* application pending)
GORDON & REES LLP
101 West Broadway
Suite 1600
San Diego, CA 92101
619-696-6700

Attorneys for Defendant, JIF-PAK

July 27, 2005

2

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

### GREENVILLE DIVISION

| | |
|---|---|
| Package Concepts & Materials, Inc., )<br><br>Plaintiff, )<br><br>vs. )<br><br>JIF-PAK, )<br><br>Defendant. )<br> ) | Civil Action No. 6-05-1184-RBH<br><br>**DEFENDANT JIF-PAK INC.'S<br>MEMORANDUM OF POINTS AND<br>AUTHORITIES IN SUPPORT OF<br>MOTION TO DISMISS FOR LACK OF<br>SUBJECT MATTER JURISDICTION**<br><br>Jury Trial Requested |

Defendant Jif-Pak, Inc. is not the owner or exclusive licensee of the patent at issue in this case. As such, there is no actual controversy between the parties as required by the Declaratory Judgment Act. Allowing Plaintiff to amend the complaint to join the patent owners will not solve the jurisdiction problem because this Court does not have personal jurisdiction over the patent owners. Furthermore, because the Court lacks jurisdiction over the federal question cause of action (declaratory judgment), the remaining state-law cause (interference with contract), brought under supplemental jurisdiction, should also be dismissed.

**A.    This Court lacks subject matter jurisdiction over the declaratory judgment cause of action**

This Court lacks subject matter jurisdiction over the declaratory judgment cause of action because there is no case or controversy between the parties. Plaintiff has sued Jif-Pak, Inc., who does not have ownership rights to U.S. Patent No. 5,413,148 ("the '148 patent"). As such, Jif-Pak does not have standing to bring a patent infringement suit against Plaintiffs. Since Jif-Pak has no such standing, Plaintiff does not have a reasonable apprehension of suit by Jif-Pak. Therefore, there is no controversy between the parties, as required by the Declaratory Judgment Act.

1. **Defendant Jif-Pak is not the patent owner or exclusive licensee of the patent at issue**

Plaintiff makes no allegation about ownership of the '148 patent, although a quick search

of the U.S. Patent Office website would have revealed it is currently owned by the inventors,

Neil and Marcus Mintz. (Neil Mintz Decl., ¶ 4[1]; Marcus Mintz Decl., ¶¶ .3,4.)

The patent law provides that a "patentee" shall have a remedy by civil action for

infringement of a patent. 35 U.S.C. 281. This law has been interpreted to require that a suit for

infringement must ordinarily be brought by a party holding legal title to the patent. *Textile*

*Prods., Inc. v. Mead Corp.*, 134 F.3d 1481 (Fed. Cir. 1998).

A "bare licensee", who enjoys only a non-exclusive license and has no right to exclude

others, has no standing to bring a patent infringement action. *Abbott Labs v. Diamedix Corp.*, 47

F.3d 1128 (Fed. Cir. 1995); *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026 (Fed. Cir.

1995).

In this case, Jif-Pak, Inc. is a bare, non-exclusive licensee of the '148 patent. The license

is informal and verbal. Jif-Pak has no rights to exclude anyone else from making, using or

selling the claimed structure. (Neil Mintz Decl., ¶ ¶ 5, 6, 7; Marcus Mintz Decl., ¶ ¶ 5, 6.)

Furthermore, patent owners Neil and Marcus Mintz separately have the right to license the patent

to anyone else or to make and sell products under the patent. Neil Mintz Decl., ¶ 7; Marcus

Mintz Decl., ¶ 6.

Therefore, Defendant Jif-Pak does not have sufficient legal interest in the '148 patent

such that it could bring a patent infringement case.

2. **Because Defendant does not have a sufficient legal interest in the patent, there is no actual controversy between the parties as required by 28 U.S.C. Sec. 2201**

If a Defendant does not have legal interest in the patent, and therefore could not bring suit

for patent infringement, there is no actual controversy which would support jurisdiction under

the Declaratory Judgment Act, 28 U.S.C. Sec. 2201(1994). *Fina Research, S.A. v. Baroid Ltd.*,

---

[1] The declarations of Neil Mintz and Marcus Mintz are filed concurrently herewith in support of this motion to dismiss. The Declaration of Neil Mintz is hereinafter referred to as "Neil Mintz Decl." The Declaration of Marcus Mintz is hereinafter referred to as Marcus Mintz Decl.".

Case 3:05-cv-01470-L  -CAB   Document 11    Filed 10/21/05   Page 61 of 83
6:05-cv-01184-HMI    Date Filed 10/13/2005    Entry Nu    21    Page 6 of 13
6:05-cv-01184-RBH    Date Filed 07/27/2005    Document Number 7    Page 3 of 6

141 F.3d 1479, 1481 (Fed. Cir. 1998).

Like the case in *Fina*, Defendant here does not have the rights to enforce the patent, and

thus could not have brought suit for patent infringement. As such, there is no "actual

controversy" between the parties, as required by the Declaratory Judgment Act. Because

Plaintiff fails to show such a controversy, this Court lacks subject matter jurisdiction.

**B.    Plaintiff Cannot Overcome the Jurisdiction Problem by Joining the Patent Owners
        Because This Court Lacks Personal Jurisdiction**

In *Fina*, discussed above, the plaintiffs were able to amend the complaint to join the

patent owners. This solution will not work in this case because the Court lacks personal

jurisdiction over Marcus Mintz and Neil Mintz.

South Carolina courts have determined that the South Carolina long arm statute runs to

the constitutional limits of the Due Process Clause. *See Southern Plastics Co. v. Southern*

*Commerce Bank*, 423 S.E.2d 128, 130-31 (S.C. 1992). Evaluating the propriety of asserting

personal jurisdiction over a nonresident defendant is generally a two-step process, but it

compresses into one: whether the due process requirements are met. *Red Wing Shoe Co. v.*

*Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998), *Sonoco Prods, Co. v.*

*Interplast Corp.*, 867 F. Supp. 352, 354 (D. S.C. 1994). Because this Court's subject matter

jurisdiction arises under the patent laws, Federal Circuit law controls the analysis of the Due

Process Clause. *See 3D Sys., Inc. v. Aarotech Labs, Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998),

*ESAB Group, Inv. v. Centricut, LLC*, 34 F. Supp. 2d 323, 328 n.3 (D. S.C. 1999).

The due process test for personal jurisdiction has two related components, the minimum

contacts and fairness inquiries. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286

(1980). Due process requires that a nonresident defendant have certain minimum contacts with

the forum such that the maintenance of the suit does not offend "traditional notions of fair play

and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). Due

process is satisfied if "the defendant purposefully avails himself of the privilege of conducting

activities within the forum State." *Hanson v. Deckla*, 357 U.S. 235, 253 (1958).

Personal jurisdiction may be specific or general. In this case, neither type of jurisdiction

3

exists over Neil and Marcus Mintz, the patent owners.

Specific jurisdiction applies when a case of action arises out of or is related to defendant's activities within the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). But if the suit is unrelated to the defendant's contacts with the forum state, the court exercises general jurisdiction. *See Helicopteros Nacionales*, 466 U.S. at 414.

The patent owners are not subject to general personal jurisdiction in South Carolina because they do not have "continuous and systematic general business contacts" with the state. *International Shoe*, 326 U.S. at 318. The patent owners, Neil Mintz and Marcus Mintz, do not have a residence in South Carolina, have no real property in South Carolina, have no bank account, no driver's license, no personal property, no mailing address, no telephone number in the State of Carolina, are not officers or directors of any business organized under the laws of the State of Carolina, and have no websites that reach South Carolina. Further, a single visit by Neil Mintz to South Carolina as a representative of Jif-Pak at a trade show over 5 years ago is the only visit made by either Neil or Marcus to the state of South Carolina.

The patent owners are not subject to specific jurisdiction because the cause of action does not arise directly from any activity by Neil and Marcus Mintz in South Carolina. The cause of action seeks a declaration of non-infringement of the '148 patent and alleges that Jif-Pak "made written assertions that Plaintiff's customer, Specialty Foods Group, is infringing the '148 patent." [Complaint, Para. 8]. Plaintiff makes no other factual allegation.

Plaintiff is factually correct that it was Jif-Pak, not Neil and Marcus Mintz, who contacted Specialty Foods Group, Inc. Therefore, Plaintiff has made no factual allegation of any activity by Neil and Marcus Mintz, personally, from which the cause of action arose.

Regardless of who made the contact, however, it is important to note that Specialty Foods

4

Case 3:05-cv-01470-L -CAB Document 11 Filed 10/21/05 Page 63 of 83
6:05-cv-01184-HMH Date Filed 10/13/2005 Entry Number 21 Page 8 of 13
6:05-cv-01184-RBH Date Filed 07/27/2005 Document Number 7 Page 5 of 6

Group, Inc. is not located in South Carolina. It is located in Virginia.[2] Even if Specialty Foods was located in South Carolina and even if the letter was an infringement notice, merely sending infringement notices, without more activity in the forum state, is not sufficient to satisfy the requirements of due process. *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455 (Fed. Cir. 1997).

Because Neil and Marcus Mintz have not participated in any activity in South Carolina from which the cause of action arose they are not subject to specific personal jurisdiction in South Carolina. Therefore, although Plaintiff may attempt to join the patent owners as defendants, this would be an exercise in futility as they are not subject to personal jurisdiction in South Carolina.

## C. If the Declaratory Judgment Claim is Dismissed, the State-Law Tortious Interference with Contract Claim Should Also be Dismissed

If this Court dismisses the only claim over which it has original jurisdiction, the declaratory judgment patent claim, the remaining claim will be the entirely state-law based claim of Tortious Interference with Contract. This Court may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. 1367(c)(3). It is important to note that Plaintiff has failed to allege any amount in dispute relevant to its interference with contract count, thereby failing to properly allege and/or be able to qualify for diversity jurisdiction under 28 U.S.C. § 1332.

Jif-Pak requests the Court exercise its discretion in dismissing the remaining claim over which it only has supplemental jurisdiction and for which no amount in controversy has been alleged, thereby failing to meet the requirement for diversity jurisdiction.

## D. Conclusion

Plaintiff's declaratory judgment cause of action should be dismissed because there is a complete absence of a case or controversy between the parties. Plaintiff has simply sued the wrong party. But even if Plaintiff amends the complaint to join the patent owners, this Court

---

[2] The letter sent to Specialty Foods Group, Inc. was a promotional letter to Specialty Foods Group as a current client of Jif-Pak, intended to preserve the business relationship with that client.

Case 3:05-cv-01470-L -CAB Document 11 Filed 10/21/05 Page 64 of 83
6:05-cv-01184-HMF Date Filed 10/13/2005 Entry Nu 21 Page 9 of 13
6:05-cv-01184-RBH Date Filed 07/27/2005 Document Number 7 Page 6 of 6

does not have personal jurisdiction over them. As such, this claim must be dismissed. The remaining pendant state-law claim should also be dismissed in the Court's discretion and for lack of jurisdiction.

Respectfully submitted,

s/Neil C. Jones
Neil C. Jones, Esq. (Fed. Bar No. 5470)
Rivers S. Stilwell (Fed. Bar No. 6271)
NELSON MULLINS RILEY & SCARBOROUGH LLP
Poinsett Plaza
104 South Main Street
Suite 900
P. O. Box 10084
Greenville, SC 29603-0084
864-250-2300

-and-

John L. Haller, Esq. (CA State Bar No. 61,392
(*pro hac vice* application pending)
Susan B. Meyer, Esq. (CA State Bar No. 204931)
(*pro hac vice* application pending)
GORDON & REES LLP
101 West Broadway
Suite 1600
San Diego, CA 92101
619-696-6700

Attorneys for Defendant, JIF-PAK

Dated: July 27, 2005

Case 3:05-cv-01470-L  -CAB   Document 11    Filed 10/21/05   Page 65 of 83
6:05-cv-01184-HMH ● Date Filed 10/13/2005    Entry Num●21    Page 10 of 13
Jul 26 6:05-cv-01184-RBH● Date Filed 07/27/2005     Document Number 30● Page 1 of 2 p. 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | |
|---|---|
| PACKAGE CONCEPTS & MATERIALS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> JIF-PAK <br><br> Defendant. | Case No. 6-05-1184-RBH <br><br> **DECLARATION OF MARCUS MINTZ IN SUPPORT OF JIF-PAK'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |

## DECLARATION OF MARCUS MINTZ IN SUPPORT OF JIF-PAK'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

I, Marcus Mintz, declare:

1.      I am an individual resident of the county of San Diego state of California. I make this declaration of my own first hand knowledge. If called to testify to the facts stated herein, I could and would competently testify thereto. As to matters stated herein on the basis of information and belief, I believe them to be true.

2.      I am the co-inventor of the invention which is the subject matter of U.S. Patent No. 5,413,148. My son Neil Mintz is the other co-inventor.

3.      I am the co-owner of U.S. Patent No. 5,413,148. My son Neil Mintz is the other co-owner

4.      I am informed and believe that my and my son's ownership of the '148 patent is reflected on the records of the United States Patent and Trademark Office website, uspto.gov.

5.      I have informally (verbally) licensed the right to make, have made, use, sale, and advertise the invention claimed in the '148 patent to Jif-Pak Manufacturing, Inc.

6.  As co-owner of '148 patent, I understand that I have the right to license others to rights under the '148 patent.

7.  I have no residence in South Carolina.

8.  I have no real property in South Carolina.

9.  I have no drivers license for the state of South Carolina.

10.  I have no personal property located in the state of South Carolina.

11.  I am not an officer or director of any business organized under the laws of the state of South Carolina.

12.  I have no mailing address in the state of South Carolina.

13.  I have no telephone number in the state of South Carolina

14.  I have not traveled to South Carolina for business.

15.  I have not traveled to South Carolina except for pleasure and that was over 15 years ago, before the '148 patent issued.

I declare under penalty of perjury under the laws of the Untied States of America that the foregoing is true and correct to the best of my knowledge.  Executed this 25th day of July, 2005 at San Diego, California.

Marcus Mintz

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | |
|---|---|
| PACKAGE CONCEPTS & MATERIALS, INC., <br><br>                   Plaintiff, <br><br> vs. <br><br> JIF-PAK <br><br>                   Defendant. | Case No. 6-05-1184-RBH <br><br> **DECLARATION OF NEIL MINTZ IN SUPPORT OF JIF-PAK'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |

**DECLARATION OF NEIL MINTZ IN SUPPORT OF JIF-PAK'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

I, Neil Mintz, declare:

1.    I am an individual resident of the county of San Diego state of California. I make this declaration of my own first hand knowledge. If called to testify to the facts stated herein, I could and would competently testify thereto. As to matters stated herein on the basis of information and belief, I believe them to be true.

2.    I am the co-inventor of the invention which is the subject matter of U.S. Patent No. 5,413,148. My father Marcus Mintz is the other co-inventor.

3.    I am the co-owner of U.S. Patent No. 5,413,148. My father Marcus Mintz is the other co-owner

4.    I am informed and believe that my and my father's ownership of the '148 patent is reflected on the records of the United States Patent and Trademark Office website, uspto.gov.. Attached hereto marked Exhibit A is a true and correct copy of the results of a query of the USPTO's Assignment database, which yielded the report that no assignment data is available with respect to the '148 patent. This negative report shows that there has been no assignment with respect to the '148 patent, independently confirming that my father and I still own the '148

patent

5.     I have informally (verbally) licensed the right to make, have made, use, sale, and advertise the invention claimed in the '148 patent to Jif-Pak Manufacturing, Inc.

6.     As a licensor, I understand that licensee, Jif-Pak, does not have the right to initiate or maintain a patent or infringement lawsuit even though it can notify others of the existence of a patent and that it can indicate that another's practice may infringe the license patent.

7.     As co-owner of the '148 patent, I understand that I have the right to license others to rights under the '148 patent.

8.     As president of Jif-Pak, I understand that a notification was sent to Specialty Food Group that advised that Jif-Pack was the owner of the '148 patent when in fact it is not the owner of the '148 patent because Jif-Pak is only a licensee of the '148 patent. A corrective statement has been forwarded to Specialty Foods Group.

9.     I have no residence in South Carolina.

10.     I have no real property in South Carolina.

11.     I have no bank account in South Carolina.

12.     I have no drivers license for the state of South Carolina.

13.     I have no personal property located in the state of South Carolina.

14.     I am not an officer or director of any business organized under the laws of the state of South Carolina.

15.     I have no mailing address in the state of South Carolina.

16.     I have no telephone number in the state of South Carolina

17.     I have most recently visited South Carolina approximately 5 years ago briefly and on a single visit to attend a trade show as a representative of Jif-Pak.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge. Executed this _26_ day of July, 2005 at San Diego, California.

Neil Mintz

# EXHIBIT C



## Shaping meat products for the future.

Jif-Pak Manufacturing, Inc. as the developer of the innovative Casing-Net™ product line has proven to be the leader in the development of new technology for Casings, Casings and related equipment for the meat processing industry.

Casing-Net materials will offer many benefits to any meat processing plant whether it be through improved product consistency, increased throughput, improved yields or reduced material costs.

Our goal as the leader in providing innovation and innovative products to the meat processing industry is to show the efficiency, savings and quality upgrades achieved using Casing-Net. Jif-Pak's highly trained technical staff is available to travel to your facility to demonstrate the Casing-Net process, equipment and technical advantages.

**Contact Us**

Jif-Pak Manufacturing Inc.
1451 Engineer Street
Vista, CA 92083

Customer service: 1-800-777-6613
Telephone: 1 920-603-7904
Fax: 920-603-7909

Email: info@jifpak.com

# EXHIBIT D

Trademark Electronic Search System (TESS)                                        Page 1 of 2

 **United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System(Tess)

*TESS was last updated on Tue Oct 11 04:13:30 EDT 2005*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |

| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

**Logout** Please logout when you are done to release system resources allocated for you.

**Start** List At: [        ] OR **Jump** to record: [        ] **Record 1 out of 2**

| TARR Status | ASSIGN Status | TDR Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

# CASING-NET

| Word Mark | CASING-NET |
|---|---|
| Goods and Services | IC 018. US 001 002 003 022 041. G & S: casings, for food prodcuts. FIRST USE: 19890415. FIRST USE IN COMMERCE: 19890501 |
| Standard Characters Claimed | |
| Mark Drawing Code | (4) STANDARD CHARACTER MARK |
| Serial Number | 78548722 |
| Filing Date | January 12, 2005 |
| Current Filing Basis | 1A |
| Original Filing Basis | 1A |
| Owner | (APPLICANT) Jif-Pak Manufacturing, Inc. CORPORATION CALIFORNIA 1451 Engineer Street Vista CALIFORNIA 92083 |
| Attorney of Record | Heidi Eisenhut |
| Type of Mark | TRADEMARK |
| Register | PRINCIPAL |
| Live/Dead Indicator | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST |

| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

# EXHIBIT E

Thank you for your request. Here are the latest results from the TARR web server.

This page was generated by the TARR system on 2005-10-11 10:56:06 ET

**Serial Number:** 78546722

**Registration Number:** (NOT AVAILABLE)

**Mark**

# CASING-NET

**(words only):** CASING-NET

**Standard Character claim:** Yes

**Current Status:** Final review prior to publication has been completed, application will be published for opposition.

**Date of Status:** 2005-08-29

**Filing Date:** 2005-01-12

**The Information will be/was published in the Official Gazette on** (DATE NOT AVAILABLE)

**Transformed into a National Application:** No

**Registration Date:** (DATE NOT AVAILABLE)

**Register:** Principal

**Law Office Assigned:** LAW OFFICE 107

**Attorney Assigned:**
HAYASH SUSAN C Employee Location

**Current Location:** 657 -Pre-Publication Final Review

**Date In Location:** 2005-09-08

---

**LAST APPLICANT(S)/OWNER(S) OF RECORD**

---

1. Jif-Pak Manufacturing, Inc.

Case 3:05-cv-01470-L    -CAB    Document 11    Filed 10/21/05    Page 75 of 83
6:05-cv-01184-HM      Date Filed 10/13/2005    Entry Number 21      Page 3 of 4
Latest Status Info                                                         Page 2 of 3

**Address:**
Jif-Pak Manufacturing, Inc.
1451 Engineer Street
Vista, CA 92083
United States
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** California
**Phone Number:** 619-696-6700
**Fax Number:** 619-696-7124

---

### GOODS AND/OR SERVICES

**International Class:** 018
casings, for food prodcuts
**First Use Date:** 1989-04-15
**First Use in Commerce Date:** 1989-05-01

**Basis:** 1(a)

---

### ADDITIONAL INFORMATION

(NOT AVAILABLE)

---

### MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

---

### PROSECUTION HISTORY

2005-08-29 - Law Office Publication Review Completed

2005-08-26 - Assigned To LIE

2005-08-22 - Approved for Pub - Principal Register (Initial exam)

2005-08-11 - Case file assigned to examining attorney

2005-07-18 - Amendment From Applicant Entered

2005-07-06 - Communication received from applicant

2005-07-06 - TEAS Preliminary Amendment Received

2005-01-26 - New Application Entered In Tram

---

### CORRESPONDENCE INFORMATION

**Correspondent**
Heidi Eisenhut (Attorney of record)

HEIDI EISENHUT
GORDON AND REES LLP
101 W BROADWAY STE 1600
SAN DIEGO, CA 92101-8217

**Phone Number:** 619-696-6700
**Fax Number:** 619-696-7124

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Package Concepts & Materials, Inc., | ) | |
| | ) | C.A. No. 6:05-1184-HMH |
| Plaintiff, | ) | |
| | ) | **OPINION & ORDER** |
| vs. | ) | |
| | ) | |
| JIF-PAK, Neil Mintz, and Marcus | ) | |
| Mintz, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Jif-Pak Manufacturing, Inc. ("Jif-Pak"), Neil Mintz,

and Marcus Mintz's (collectively "defendants") motion to dismiss for lack of personal

jurisdiction, failure to join an indispensable party, and lack of subject matter jurisdiction.

After Package Concepts & Materials, Inc. ("PCM") filed its response to the defendants'

motion on September 12, 2005, the defendants filed their reply on September 22, 2005, in

which they asserted, "The Southern District of California is the best forum for this action, as

there is no disagreement about personal jurisdiction over any of Neil or Marcus Mintz or Jif-

Pak and no resulting problems with subject matter jurisdiction." (Defs.' Reply Pl.'s Mem.

Opp'n Mot. Dismiss 9.) Accordingly, Neil and Marcus Mintz requested "that the Court

dismiss this case or use its discretion in transferring this case under 28 U.S.C. § 1404." (Id.)

A court need not rule on a pending motion to dismiss for lack of personal jurisdiction

if the court's decision to transfer the case renders the motion to dismiss moot. See, e.g.,

Johnson v. Ford Motor Co., No. 2:04-1311, 2005 WL 2353469, at *5 (S.D. W.Va. Sept. 26,

2005); Sassy, Inc. v. Berry, No. 04-C-7219, 2005 WL 1766376, at *2 (N.D. Ill. July 21,

1

2005).  Moreover, a court may transfer a case sua sponte, but it must give the parties the

opportunity to be heard before rendering its decision.  Feller v. Brock, 802 F.2d 722, 729 n.7

(4th Cir. 1986).

   Transferring this case pursuant to 28 U.S.C. § 1404(a) may be appropriate and may

serve the interests of justice, be more convenient to the parties and witnesses, and provide

easier access to the sources of proof.  Although not raised by the parties, transfer pursuant to

28 U.S.C. § 1406 may also be appropriate.  As the Mintzs' requested that the court transfer

the case in their reply, PCM has not yet had the opportunity to respond.  PCM is ordered to

brief the court concerning its position regarding a transfer of this case to the Southern District

of California under either 28 U.S.C. § 1404 or § 1406 within fifteen (15) days from the date

of this order.  The defendants are ordered to reply within ten (10) days of PCM's response.

   **IT IS SO ORDERED.**

                                                s/ Henry M. Herlong, Jr.
                                                United States District Judge

Greenville, South Carolina
October 4, 2005

2

## Vickie Cafferky

| | |
|---|---|
| **From:** | Vickie Cafferky |
| **Sent:** | Friday, October 21, 2005 1:16 PM |
| **To:** | 'Neil Mintz (nmintz@jifpak.com)' |
| **Cc:** | John Haller; Susan Meyer |
| **Subject:** | JIF-PAK: REVISED DECLARATION OF NEIL MINTZ |
| **Importance:** High | |

Hi, Neil.

I have revised Paragraph 18.  Please sign and fax back.

Thank you.

Vickie Cafferky, CLA, RP
*Intellectual Property Litigation Paralegal*
GORDON & REES LLP
101 West Broadway, Suite 1600
San Diego, CA  92101
Tel:  619-230-7446
Fax:  619-696-7124
website:  www.gordonrees.com
e-mail:  vcafferky@gordonrees.com
San Francisco    San Diego    Sacramento
Los Angeles    Newport Beach    Phoenix
Las Vegas    Portland    Houston    Dallas
New York City

JOHN L. HALLER (SBN: 61392)
SUSAN B. MEYER (SBN: 204931)
GORDON & REES LLP
101 West Broadway
Suite 1600
San Diego, CA 92101
Telephone: (619) 696-6700
Facsimile: (619) 696-7124

Attorneys For: Plaintiffs
NEIL MINTZ, MARCUS MINTZ and
JIF-PAK MANUFACTURING, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEIL MINTZ, an individual; and MARCUS MINTZ, an individual; and JIF-PAK MANUFACTURING, INC., a California corporation,<br><br>      Plaintiffs,<br><br>    v.<br><br>DIETZ & WATSON, INC., a Pennsylvania corporation and PACKAGE CONCEPTS & MATERIALS, INC., a South Carolina corporation,<br><br>      Defendants. | CASE NO. 05 CV 1470 L (AJB)<br><br>**DECLARATION OF NEIL MINTZ IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS**<br><br>**DATE:**  **November 7, 2005**<br><br>**TIME:**  **10:30 a.m.**<br><br>**PLACE:**  **Courtroom 4**<br><br>**JUDGE:**  **Hon. M. James Lorenz**<br><br>**MAGISTRATE**<br>**JUDGE:**  **Hon Anthony J. Battaglia** |

I, Neil Mintz, declare:

  1.  I am an individual resident of the county of San Diego state of California. I make this declaration of my own first hand knowledge. If called to testify to the facts stated herein, I could and would competently testify thereto. As to matters stated herein on the basis of information and belief, I believe them to be true.

  2.  I am the co-inventor of the invention which is the subject matter of U.S. Patent No. 5,413,148. My father Marcus Mintz is the other co-inventor.

  3.  I am the co-owner of U.S. Patent No. 5,413,148. My father Marcus Mintz is the other co-owner

Gordon & Rees LLP
101 West Broadway
Suite 1600
San Diego, CA 92101

1    4.    I have informally (verbally) licensed the right to make, have made, use, sale, and

2    advertise the invention claimed in the '148 patent to Jif-Pak Manufacturing, Inc.

3    5.    As a licensor, I understand that licensee, Jif-Pak, does not have the right to initiate

4    or maintain a patent or infringement lawsuit even though it can notify others of the existence of a

5    patent and that it can indicate that another's practice may infringe the license patent.

6    6.    As co-owner of the '148 patent, I understand that I have the right to license others

7    to rights under the '148 patent.

8    7.    As president of Jif-Pak, I understand that a notification was sent to Specialty Food

9    Group that advised that Jif-Pack was the owner of the '148 patent when in fact it is not the owner

10    of the '148 patent because Jif-Pak is only a licensee of the '148 patent.  A corrective statement

11    has been forwarded to Specialty Foods Group.

12    8.    I have no residence in South Carolina.

13    9.    I have no real property in South Carolina.

14    10.    I have no bank account in South Carolina.

15    11.    I have no drivers license for the state of South Carolina.

16    12.    I have no personal property located in the state of South Carolina.

17    13.    I am not an officer or director of any business organized under the laws of the

18    state of South Carolina.

19    14.    I have no mailing address in the state of South Carolina.

20    15.    I have no telephone number in the state of South Carolina

21    16.    I have most recently visited South Carolina approximately 5 years ago briefly and

22    on a single visit to attend a trade show as a representative of Jif-Pak.

23    17.    All documents and things related to the sale of a commercial embodiment of the

24    patent, publications about the invention claimed in the patent, and use of the product claimed in

25    the patent are held by Marcus Mintz, licensee Jif-Pak, or me in San Diego, California.  All

26    documents related to the prosecution of the patent are located in San Diego, California.

27    18.    Most all of the documents related to sales, revenue, licensing, costs, and

28    marketing the commercial embodiment of the patent are located in San Diego, California, and

Gordon & Rees LLP
101 West Broadway
Suite 1600
San Diego, CA  92101

-2-

DECLARATION OF NEIL MINTZ IN OPPOSITION TO MOTION TO DISMISS
CASE NO. 05 CV 1470 L (AJB)

1    none of these documents are located in South Carolina.

2        I declare on penalty of perjury under the laws of the Untied States of America that the

3    foregoing is true and correct to the best of my knowledge.  Executed this _____ day of October,

4    2005 at San Diego, California.

5

6                                 Neil Mintz

7

8

9

10

11

Gordon & Rees LLP
101 West Broadway
Suite 1600
San Diego, CA  92101

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BJPM\1017899\302853.1

DECLARATION OF NEIL MINTZ IN OPPOSITION TO MOTION TO DISMISS
CASE NO. 05 CV 1470 L (AJB)