















SMV    1/30/06    14:55

3:05-CV-01470   MINTZ V. DIETZ AND WATSON INC

*30*

*ANS/CNT.*

1 | NEIL A. SMITH, Cal. Bar No. 63777
SHEPPARD MULLIN RICHTER & HAMPTON LLP
2 |   A Limited Liability Partnership
   Including Professional Corporations
3 | 4 Embarcadero Center, 17th Floor
San Francisco, California 94111-4106
4 | Telephone: 415-434-9100
Facsimile: 415-434-3947
5

6 | JONATHAN HANGARTNER, Cal. Bar No. 196268
SHEPPARD MULLIN RICHTER & HAMPTON LLP
501 West Broadway, 19th Floor
7 | San Diego, California 92101-3598
Telephone: 619-338-6500
8 | Facsimile: 619-234-3815

9 | JOHN B. HARDAWAY, III, Fed. Bar No. 1710
NEXSEN PRUET, LLC
10 | 201 West McBee Avenue, Suite 400
Post Office Drawer 10648
11 | Greenville, South Carolina 29603
Telephone: 864-370-2211
12

Attorneys for Defendants DIETZ & WATSON,
13 | INC. and PACKAGE CONCEPTS &
MATERIALS, INC.

14

FILED

06 JAN 27 PM 2:52

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY                    DEPUTY

**NUNC PRO TUNC**

JAN 25 2006

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEIL MINTZ, an individual; MARCUS MINTZ, an individual; and JIF-PAK MANUFACTURING, INC., a California corporation, <br><br>             Plaintiffs, <br><br>   v. <br><br> DIETZ & WATSON, INC., a Pennsylvania corporation; and PACKAGE CONCEPTS & MATERIALS, INC., a Southern Carolina corporation, <br><br>             Defendants. | Case No. 05 CV 1470 L (AJB) (Consolidated with Case No. 05 CV 2200) <br><br> **DEFENDANT PACKAGE CONCEPTS & MATERIALS, INC.'S ANSWER TO COMPLAINT AND COUNTERCLAIM** <br><br> Date: <br> Time: <br> Ctrm:   14 <br> Judge:   Hon. M. James Lorenz <br><br> [Complaint Filed: July 22, 2005] |

24

25

26

27

28

30

- 1 -

ORIGINAL

1

2  PACKAGE CONCEPTS & MATERIALS,
   INC.,
3
                              Plaintiffs,
4        v.

5  JIF-PAK MANUFACTURING, INC.,
   a California corporation;
6  NEIL MINTZ, an individual;
   MARCUS MINTZ, an individual,
7
                              Defendants.
8

9        Comes now Defendant Package Concepts & Materials, Inc., and answers the

10 complaint in the above-identified action as follows:

11                              **I.**

12                        **JURISDICTION**

13       1.      This is a civil action for patent infringement, contributory

14 infringement and inducement to infringe which arises under the Patent Laws of the United

15 States, namely Title 35 of the United States Code and this Court has jurisdiction under 28

16 U.S.C. §§ 1331, 1332 and 1338(a).  In addition, this is an action for declaratory judgment

17 (28 U.S.C. §§ 2201, 22020 regarding the non-interference with a business relationship and

18 this Court has jurisdiction under 28 U.S.C. §§ 1367.

19       **Answer:**  Admitted.

20                              **II.**

21                           **VENUE**

22       2.      Plaintiffs are informed and believe that this Court is the proper venue

23 under 28 U.S.C. §§ 1391(b), (c) and § 1400 because Defendant D & W is subject to

24 personal jurisdiction in this judicial district, the products of the infringing activities, as

25 alleged herein below, are advertised and sold within this judicial district and D & W is

26 doing business in this judicial district.

27       **Answer:**  Admitted.

28

- 2 -

W02-SD:8JH2\51407406.1

CASE NO. 05 CV 1470 L (AJB)
(Consolidated with Case No. 05 CV 2200)

1        3.     Plaintiffs are informed and believe that this Court is the proper venue

2 under 28 U.S.C. §1391(b), (c) and § 1440 because Defendant PCM, is subject to personal

3 jurisdiction in this judicial district, the products of the infringing activities, as alleged

4 herein below, are advertised and sold within this judicial district and PCM is doing

5 business in this Judicial District.  Plaintiffs are further informed and believe that Defendant

6 PCM will admit to the jurisdiction of this court.

7        **Answer:**  Defendant denies any infringing activity, but otherwise admits the

8 allegations of Paragraph 3.

9                                **III.**

10                         **THE PARTIES**

11        4.     Plaintiff Neil Mintz is an individual, residing in the county of San

12 Diego.

13        **Answer:**  Defendant has no knowledge of the residence of Neil Mintz and

14 therefore denies the allegation of Paragraph 4.

15        5.     Plaintiff Marcus Mintz is an individual, residing in the county of San

16 Diego.

17        **Answer:**  Defendant has no knowledge of the residence of Marcus Mintz and

18 therefore denies the allegation of Paragraph 5.

19        6.     Jif-Pak Manufacturing, Inc. is a California corporation with its

20 principal place of business in the County of San Diego ("Jif-Pak").

21        **Answer:**  Defendant is without sufficient information to form a belief as to

22 the accuracy of Paragraph 6 and therefore denies same.

23        7.     Upon information and belief, Defendant D & W is a Pennsylvania

24 corporation, with a principal place of business in Philadelphia, Pennsylvania.

25        **Answer:**  Admitted.

26        8.     Upon information and belief, Defendant PCM is a South Carolina

27 corporation, with a principal place of business in Greenville, South Carolina.

28        **Answer:**  Admitted.

- 3 -

## IV.

## COUNT 1

## PATENT INFRINGEMENT

### (Against All Defendants)

9.  Plaintiffs, Neil Mintz and Marcus Mintz, re-allege the allegations of the foregoing Paragraphs 1 through 6, and incorporates allegations herein by references as though fully set forth.

**Answer:** Defendant repeats the answers to Paragraphs 1 through 6.

10. On May 9, 1995, United States Patent No. 5,413,148 (the '148 patent) entitled Casing Structure for Encasing Meat Products (hereinafter the Patented Invention) issued to co-inventors Neil Mintz and Marcus Mintz. Plaintiffs are the owners/licensees of the '148 patent and enjoy all rights, title and interest in and to said '148 patent.

**Answer:** Defendant admits that U.S. Patent Number 5,413,148 issued on May 9, 1995, but otherwise is without sufficient information to form a belief as to the remaining allegations and therefore denies same.

11. Plaintiffs Neil Mintz and Marcus Mintz have informally licensed the right to make, have made, use, sell, and advertise the invention claimed in the '148 patent to Plaintiff Jif-Pak.

**Answer:** Defendant is without sufficient information to form a belief as to the allegations of Paragraph 11 and therefore denies same.

12. The '148 patent relates to a tubular casing for meat products having a stockinette member with a knit tubular member formed of threads and a netting arrangement which is intricately formed with the stockinette member. The netting arrangement may either be knit in with the stockinette member or the strands of the knitting arrangement may be laid in.

**Answer:** Defendant admits that the '148 patent describes a tubular casing for meat products but otherwise denies the allegations of Paragraph 12.

- 4 -

1        13.    Plaintiffs are informed and believe and on that basis alleged that

2 Defendants have been and continue to directly infringe, contributory infringement and/or

3 induced others to infringe the '148 patent by practicing the patent invention, selling

4 components which have no substantial non-infringing use and/or knowingly teaching

5 others to practice the patented invention.

6        **Answer:** Denied.

7        14.    Plaintiffs are informed and believe the Defendants infringement is

8 willful, malicious and without regard to the rights of the Plaintiffs.

9        **Answer:** Denied.

10        15.    Plaintiffs are further informed and believe that such practice will

11 continue unless enjoined by this Court.

12        **Answer:** Denied.

13 **V.**

14 **COUNT TWO**

15 **DECLARATORY JUDGMENT: NON-INTERFERENCE**

16 **WITH BUSINESS RELATIONSHIP**

17 **(Against All Defendants)**

18        16.    Plaintiff Jif-Pak re-allege all the allegations in the foregoing

19 paragraphs 1 through 15 and incorporates said allegations herein by references as though

20 fully set forth.

21        **Answer:** Defendant repeats the answers to the allegations of Paragraphs 1

22 through 15.

23        17.    Plaintiff Jif-Pak is the licensee of the '148 patent and has notified

24 Defendant D & W and other customers including Specialty Food Group, Inc. of Virginia of

25 the existence of the '148 patent and that their activities may be infringing said patent.

26        **Answer:** Admitted.

27

28

- 5 -

18. Plaintiff Jif-Pak's notice was in the form of a communication to Plaintiff Jif-Pak's current customers to identify the benefits of continuing to do business with Jif-Pak.

**Answer:** Defendant has insufficient information to form a belief and therefore denies the allegation of Paragraph 18.

19. Defendant PCM has asserted that Jif-Pak's communication with its customers regarding the existence of the '148 patent and encouraging its customers to maintain its business with Jif-Pak constitutes an interference with PCM's relationship with said customers.

**Answer:** Admitted.

20. Jif-Pak has notified PCM that it has the right to advise others, specifically Plaintiffs own customers as to the existence of the '148 patent and of its belief that the activities of such customers may constitute infringement and that Jif-Pak would like to maintain their business.

**Answer:** Admitted.

21. There is a present actual and continuing controversy between Plaintiff Jif-Pak and Defendant PCM as to Jif-Pak's right to notify its customers including Dietz & Watson, Inc. of the existence of the '148 patent and to indicate that its customers including Dietz & Watson, Inc. may be infringing such patent.

**Answer:** Admitted.

## GENERAL DENIAL

Defendant denies any allegation in the Complaint that has not been expressly admitted herein.

WHEREFORE, Defendant respectfully requests that Plaintiffs take nothing by way of its Complaint, that judgment be entered in the Defendant's favor and against Plaintiffs, that Plaintiffs be enjoined from further contact with Defendant's customers, that Plaintiffs be directed to fully compensate Defendant for all damages because of Plaintiffs' interference with Defendant's business relationship, that such damages be trebled and that

- 6 -

1   the Defendant be awarded its interests and costs and reasonable attorney fees in defending
2   this action.

### DEFENDANT'S AFFIRMATIVE DEFENSES

#### FIRST AFFIRMATIVE DEFENSE

5         1.    The '148 Patent is invalid and/or unenforceable under the Patent Laws
6   of the United States, 35 U.S. §§1, et seq.

#### SECOND AFFIRMATIVE DEFENSE

8         2.    Defendant has not infringed, and is not infringing, any claim of the
9   '148 Patent, either directly, contributorily, or by inducement.

#### THIRD AFFIRMATIVE DEFENSE

11         3.    Plaintiffs' Complaint fails to state a claim upon which relief can be
12   granted.

#### FOURTH AFFIRMATIVE DEFENSE

14         4.    Plaintiffs' prayer for relief is barred by the Doctrine of Laches.

#### FIFTH AFFIRMATIVE DEFENSE

16         5.    Plaintiffs' claims are barred by the Doctrine of Equitable Estoppel.

#### SIXTH AFFIRMATIVE DEFENSE

18         6.    Defendant reserves the right to assert additional affirmative defenses,
19   at such time, and to such extent, as warranted by discovery and factual developments in
20   this case.

### DEFENDANT'S COUNTERCLAIM

22         1.    Defendant, PACKAGE CONCEPTS & MATERIALS (hereinafter
23   "Plaintiff" or "PCM"), is a corporation organized under the laws of the State of South
24   Carolina, and maintains its principal place of business at 1023 Thousand Oaks Blvd.,
25   Greenville, South Carolina 29607.

26         2.    Plaintiff, JIF-PAK, is upon information and belief a corporation
27   organized under the laws of the State of California, and maintains its principal place of
28   business at 1451 Engineer Street, Vista, California 92083.

- 7 -

1          3.      Plaintiff Neil Mintz is an individual, residing in the county of San

2   Diego.

3          4.      Plaintiff Marcus Mintz is an individual, residing in the county of San

4   Diego.

5          5.      This is a counterclaim for declaratory judgment of invalidity and non-

6   infringement of U.S. Patent No. 5,413,148 ("the '148 patent"). Jurisdiction of this Court

7   arises under the Declaratory Judgment Act, Title 28, United States Code Sections 2201-

8   2202, and under the laws of the United States concerning actions related to patents, Title

9   28, United States Code, Sections 1331 and 1338(a).

10         6.      Venue lies in this Judicial District under Title 28, United States Code,

11  Section 1391(b)-(c) on the grounds that Plaintiff Jif-Pak is subject to personal jurisdiction

12  because its principal place of business is in this judicial district and a substantial part of the

13  events or omissions giving rise to the counterclaim occurred in this District. Defendant if

14  further informed and believes that Plaintiff Jif-Pak will admit to the jurisdiction of this

15  court.

16         7.      Venue lies in this Judicial District under Title 28, United States Code,

17  Section 1391(b)-(c) on the grounds that Plaintiffs Neil Mintz and Marcus Mintz reside in

18  this judicial district, are subject to personal jurisdiction in this judicial district, and a

19  substantial part of the events or omissions giving rise to the counterclaim occurred in this

20  District. Defendant is further informed and believes that Plaintiffs Neil Mintz and Marcus

21  Mintz will admit to the jurisdiction of this court.

22                              <u>COUNT ONE</u>

23  **(Declaratory Judgment – Noninfringement - U.S. Patent No. 5,413,148)**

24         8.      On May 9, 1995, U.S. Patent No. 5,413,148 issued for a "Casing

25  structure for encasing meat products" (Exhibit A) to Plaintiffs Neil and Marcus Mintz.

26         9.      Plaintiffs Neil and Marcus Mintz, on information and belief, have

27  exclusively licensed Plaintiff Jif-Pak under the above U.S. Patent No. 5,413,148.

28

                                  - 8 -

1    10.    Plaintiff Jif-Pak originally asserted itself to be the owner of the `148

2  patent, but has now withdrawn that assertion.

3    11.    Defendant has made, offered for sale and/or sold certain stockinette

4  devices in the United States since the issuance of the '148 patent.

5    12.    Plaintiff Jif-Pak has made written assertions that Defendant's

6  customer, Specialty Foods Group, Inc., is infringing the '148 patent because Specialty

7  Foods Group is using an infringing product manufactured by Defendant. Based on

8  Plaintiff's assertions, Defendant has been sued for infringement of the '148 patent.

9  Accordingly, there is a present and continuing justiciable controversy between Defendant

10  and Plaintiff as to Plaintiff's right to threaten or maintain suit for infringement of the '148

11  patent, and as to the validity and scope thereof, and as to whether any of Defendant's

12  products infringe any valid claim thereof.

13    13.    No valid claim of the '148 patent is infringed by any of Defendant's

14  products.

**COUNT TWO**

**(Tortious Interference with Contract)**

17    14.    Defendant incorporates by reference paragraphs 1-13 of this

18  Counterclaim as if fully set forth herein.

19    15.    Defendant has contracts with Specialty Foods Group, who in turn has

20  contracts with customers for products incorporating Defendant's stockinette devices.

21    16.    Plaintiffs have knowledge of the aforementioned contracts.

22    17.    Upon information and belief, Plaintiff Jif-Pak is notifying Defendant's

23  customers that Defendant is infringing upon Plaintiffs' patent. Upon information and

24  belief, this has directly caused breaches of contract. Upon information and belief, Plaintiff

25  Jif-Pak by its actions, is intentionally procuring the aforementioned breaches of contract.

26    18.    Plaintiffs have no justification for its intentional interference with

27  contract.

28

- 9 -

1        19.    Defendant has been damaged as a result of Plaintiff Jif-Pak's

2   intentional acts.

3                        **PRAYER FOR RELIEF**

4        WHEREFORE, Defendant prays:

5        A.    For entry of judgment that United States Patent No. 5,413,148 is

6   invalid; that the manufacture, use, sale, offer for sale and/or importation of Defendant's

7   stockinette devices do not infringe; and have not at any time infringed, the '148 patent; and

8   that Plaintiff Jif-Pak is without any right or authority to threaten or to maintain suit against

9   Defendant or its customers for alleged infringement of the '148 patent.

10        B.    For entry of an injunction enjoining Plaintiffs, its agents, employees,

11   assignees and attorneys, and those persons in active concert or participation with Plaintiffs,

12   from initiating infringement litigation and from threatening Defendant, any of its related

13   companies, any of its prospective or present customers, dealers, agents, employees,

14   vendors, suppliers, or owners or users of Defendant's stockinette devices with

15   infringement litigation, and from charging any of them wither verbally or in writing with

16   infringement of the '148 patent because of the manufacture, use, offer for sale, sale, or

17   importation of Defendant's stockinette devices.

18        C.    For entry of judgment for Defendant on the count of Tortious

19   Interference with Contract.

20        D.    For entry of judgment for costs and reasonable attorneys' fees

21   incurred by Defendant.

22

23

24

25

26

27

28

- 10 -

1        E.      For a grant to Defendant such other and further relief as is just and

2  proper.

3

4  Dated:  January 25, 2006

5                                    SHEPPARD MULLIN RICHTER & HAMPTON LLP

6

7                          By    _____

8                                        JONATHAN HANGARTNER

9                                  Attorneys for Defendants DIETZ & WATSON,
                                   INC. and PACKAGE CONCEPTS &
10                                 MATERIALS, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 11 -



US005413148A

# United States Patent [19]

## Mintz et al.

| | |
|---|---|
| [11] | Patent Number: **5,413,148** |
| [45] | Date of Patent: **May 9, 1995** |

[54] **CASING STRUCTURE FOR ENCASING MEAT PRODUCTS**

[76] Inventors: Marcus Mintz, 5040 Hampton Ave., Montreal, Quebec, Canada, H3X 3P7; Neil Mintz, 3101 Del Rey Ave., Carlsbad, Calif. 92009

[21] Appl. No.: 177,800

[22] Filed: Jan. 6, 1994

**Related U.S. Application Data**

[63] Continuation of Ser. No. 886,280, May 20, 1992, abandoned, which is a continuation-in-part of Ser. No. 838,355, Feb. 19, 1992, abandoned.

[51] Int. Cl.⁶ ....................... F16L 11/00; A22C 13/00
[52] U.S. Cl. ............................... 138/118.1; 428/34.8; 428/36.1
[58] Field of Search ...................... 138/118.1, 123, 124; 428/36, 158, 159, 34.1, 34.3, 34.8; 426/105; 66/178 R, 180, 181, 201, 202

[56] **References Cited**

**U.S. PATENT DOCUMENTS**

| | | | |
|---|---|---|---|
| 698,499 | 4/1902 | Hirner | 66/180 |
| 1,505,218 | 8/1924 | Sartori | 452/35 |
| 1,981,057 | 11/1934 | Lombardi | 66/180 |
| 2,289,302 | 7/1942 | Bradshaw | 66/195 |
| 2,366,710 | 1/1945 | Dimond | 138/118.1 |
| 2,375,474 | 5/1945 | Holmes et al. | 66/180 |

| | | | |
|---|---|---|---|
| 2,500,759 | 3/1950 | Largman | 66/180 |
| 2,977,782 | 4/1961 | Sheek | 66/178 R |
| 3,159,990 | 12/1964 | Monday | 66/180 |
| 3,448,595 | 6/1969 | Baltzer et al. | 66/195 |
| 3,639,130 | 2/1972 | Eichin et al. | 138/118.1 |
| 4,621,482 | 11/1986 | Crevasse et al. | 53/439 |
| 4,690,843 | 9/1987 | Inagaki | 138/118.1 |
| 4,967,798 | 11/1990 | Hammer et al. | 426/105 X |
| 5,043,194 | 8/1991 | Siebrecht et al. | 428/34.8 |

**FOREIGN PATENT DOCUMENTS**

| | | | |
|---|---|---|---|
| 726424 | 1/1966 | Canada | 53/439 |
| 0303328 | 2/1989 | European Pat. Off. . | |
| 106965 | 5/1984 | Germany | 138/118.1 |
| 7614318 | 7/1977 | Netherlands . | |
| 9001395 | 1/1992 | Netherlands . | |
| 594359 | 9/1977 | Switzerland . | |
| WO9010576 | 9/1990 | WIPO . | |

*Primary Examiner*—David A. Scherbel
*Assistant Examiner*—Patrick F. Brinson
*Attorney, Agent, or Firm*—Fishman, Dionne & Cantor

[57] **ABSTRACT**

A stockinette member is formed of closely knit or woven threads. A netting arrangement is integrally formed with the stockinette member. The netting arrangement may either be knit in with the stockinette member or the strands of the netting arrangement may be laid in.

**8 Claims, 3 Drawing Sheets**







EXHIBIT A  13



*Fig.2*

**U.S. Patent**          May 9, 1995          Sheet 3 of 3          **5,413,148**



*Fig. 3*



*Fig. 4*

EXHIBIT A  15

5,413,148

**1**

## CASING STRUCTURE FOR ENCASING MEAT PRODUCTS

### CROSS-REFERENCE TO RELATED APPLICATION

This is a continuation of application Ser. No. 07/886,280 file on May 20, 1992, now abandoned, which is a continuation-in-part of application Ser. No. 07/838,355 filed on Feb. 19, 1992 now abandoned.

### BACKGROUND OF INVENTION

1. Field of the Invention

The invention relates to a casing structure for encasing meat products. More specifically, the invention relates to such a casing structure which comprises a stockinette with an integrally formed netting arrangement.

2. Description of Prior Art

It is known in the meat encasing art to encase meat and poultry products, especially during the cooking and/or smoking process, such as hams, poultry and the like, in netting arrangements. Such netting arrangements typically comprise a plurality of equally sized squares made of cotton or poly, and an elasticized strand material in the tubular form. The meat products are stuffed into the tubes such that the elasticized material is under tension, and the two ends of the tube of netting are then closed.

Because the meat product is stuffed into the tube with the elasticized material under tension, the strands tend to push back into the meat product to form squared indentations on the outer surface of the meat product. The meat product bulges out between the strands on either side of the indentations giving a desirable "checkerboard" pattern on the surface.

One of the problems in the art is that the product which bulges out between the strands can also bulge laterally whereby they will overlap, and cover, at least some of the strands. This makes it difficult to peel the netting off the meat product, especially when the bulges on either side of the strand bulge towards each other.

In the latter case, and taking into account the fact that the meat product contains binding materials, when the bulges on either side of a strand, bulging towards each other, physically contact each other, they can bind together so that it will be necessary to break the surface of the meat product at the binding points to peel the netting off the surface of the meat product.

One solution to these problems is to use a collagen film in association with the netting arrangement. The collagen film underlies the netting and overlies the outer surface of the meat product. The collagen film provides some restrictions on the bulging meat as it will permit the underlying meat product to bulge only upwardly, but it will substantially prevent the meat product from bulging laterally, so that the elasticized strands forming the netting will not be covered by laterally spreading bulges, thereby preventing the binding of the meat product to the netting. The binding of the meat is to the collagen. The meat product is sold to the consumer with the collagen covering. In addition, the intervention of the collagen film will prevent the bulges from binding to each other.

While the collagen film overcomes the above problems, it presents a different problem, namely, high costs. Collagen film, on a per unit basis, costs approximately four times as much as the netting arrangement so that

**2**

the cost of casing meat products using a collagen film and netting arrangement combination is seriously increased.

In addition, when the collagen film is used, air bubbles can form between the outer surface of the meat product and the collagen film. This causes an unattractive appearance in the meat product, especially when the meat product is cooked.

To overcome the above problems, a stockinette has been devised which takes the place of a collagen film in the above-described combination. The stockinette is a closely knit or closely woven tubular member knit or woven of threads comprising, for example, cotton, polyester, nylon or other suitable materials. Because the stockinette is knit or woven, it is stretchable and has openings. As it is closely knit or woven, the openings are very small. This finely knit stockinette acts to restrict the meat particles from penetrating through, thereby resisting the stockinette to be stuck to the meat product. However, the stockinette is porous enough to have the benefit of allowing easy smoke penetration into the meat product. Additionally, the stockinette can be treated with various solutions (for example, liquid smoke, oils, acid solutions, etc.), or coated with a film (for example, cellulose), to further enhance the peelability, if required. Also with the stockinettes, air bubbles between the outer surface of the meat product and the stockinette are substantially eliminated. In addition, the cost of the stockinette per unit is substantially less than the cost of the collagen film.

However, the stockinette and netting arrangement combination is still relatively expensive, and it also requires a two-step stuffing process, i.e., the meat product is first stuffed in the stockinette and then the meat product and stockinette are stuffed into the netting arrangement.

### SUMMARY OF INVENTION

It is therefore an object of the invention to provide a casing structure for encasing meat products which overcomes the disadvantages of prior art casing structures.

It is a more specific object of the invention to provide such a casing structure which incorporates both the netting arrangement function for appearance and the ability to be easily removed from the meat after cooking.

In accordance with the invention, the casing structure comprises a stockinette member with an integrally formed netting arrangement.

The stockinette member is produced in tubular form.

The netting arrangement may be formed of elasticized strands or knitted or woven strands.

In accordance with the invention there is provided an elongated tubular casing structure for encasing meat products, the elongated structure having a longitudinal direction and a transverse lateral direction. The casing structure of the invention comprises:

a stockinette member comprising a closely knit tubular member formed of closely knit threads and having a first stretch capacity

a knitted netting arrangement having a second stretch capacity and comprising a first plurality of spaced strands extending in the longitudinal direction and a second plurality of spaced strands extending in the lateral direction;

5,413,148

**3**

the longitudinal and lateral strands of the netting arrangement each intersecting in locking engagement with one another to form a grid-like pattern comprising a plurality of four-sided shapes;

the strands of the netting arrangement being knit into the threads of the stockinette member, whereby the netting arrangement and the stockinette member are integrally formed so that the casing structure comprises an integrally formed structure;

the first stretch capacity being greater than the second stretch capacity;

whereby, when a meat product is stuffed into the casing structure under pressure, the meat product forms a bulge within each of the four-sided shapes to thereby define a checker-board pattern on the surface thereof, the stockinette member forming a shield to prevent the adherence of adjacent meat product bulges over the strands of the netting arrangement.

BRIEF DESCRIPTION OF DRAWINGS

The invention will be better understood by an examination of the following description, together with the accompanying drawings in which:

FIG. 1 illustrates one embodiment of a casing structure in accordance with the invention;

FIG. 2 is a blow-up of a portion of FIG. 1 illustrating a second embodiment of the invention;

FIG. 3 is a blown-up view of a portion of FIG. 1 showing the lateral strand in its rest position;

FIG. 4 is the same view as FIG. 3 but showing the lateral strand in its "stretched" position; and

FIG. 5 illustrates how the casing structure looks when stuffed with the meat product.

DESCRIPTION OF PREFERRED EMBODIMENTS

Referring to the single drawing, a casing structure in accordance with the invention, illustrated generally at 1, comprises a stockinette 3 formed of closely knit or woven threads. The threads may comprise cotton, polyester, nylon or other suitable materials. As can be seen, the stockinette is tubular in shape.

Formed integrally with the stockinette are equally spaced longitudinal strands 5 and equally spaced lateral strands 7. The strands may comprise elasticized material laid into the stockinette. In a particular embodiment, the elasticized material comprises rubber which is laid in under tension. The longitudinal strands may be laid in every twelve stitches while the lateral strands may be laid in every 12 courses. Thus, the netting arrangement consisting of the strands 5 and 7 is integrally formed with the stockinette to form the inventive casing structure.

In an alternate embodiment, the strands of the netting arrangement are knit into the stockinette of the same threads which form the stockinette. To form the lateral strands 7 of the netting arrangement in the latter embodiment, twelve loose courses are first knit and then two tighter courses. The twelve loose courses comprise the stockinette while the two tighter courses comprise a lateral strand of the netting arrangement. By making the courses tighter, the strand thus formed is less elastic than the strands of the looser courses.

The above is repeated over fourteen course cycles so that each lateral strand of the netting arrangement is separated from adjacent strands by fourteen courses. As shown, the longitudinal strands 5 and lateral strands 7 cross each other to form square or four-sided shapes.

**4**

To form the longitudinal strands, the machine is set so that it knits three courses on high butt only and a fourth course on both low butt and high butt. One way of doing this is, of course, to have four cams, three of which are set on high butt and one of which is set on both low butt and high butt. The needles are then arranged so that a predetermined number are set on high butt and a smaller predetermined number are set on low butt. For example, twenty needles could be set on high butt and two on low butt. This cycle is repeated all around each course.

With this arrangement, the two needles set on low butt will cast off only every fourth course so that, in each cycle of twenty-two stitches, twenty will be knit on every course and two will be knit on every fourth course only. The two latter stitches will form the longitudinal strands of the netting arrangements which will accordingly be separated from each other by twenty of the former stitches.

As will be obvious, the spacing between both longitudinal and lateral strands would be varied according to need. The spacing given in the examples above was only to provide a clearer description, and the invention is not restricted to the above spacing.

Turning now to FIG. 2, in accordance with a further embodiment of the invention, each of the lateral strands 7 includes a plurality of loops 9 extending in the longitudinal direction. As can also be seen, each loop is interlaced with an adjacent preceding loop and an adjacent following loop, and the interlaced aligned loops form the longitudinal strands 5. The material for forming the strands in the FIG. 2 embodiment can be made of either elasticized or non-elasticized yarn.

As the same yarns are creating both the lateral and longitudinal strands, when the netting arrangement is pulled in the lateral direction (i.e., at the larger diameter portion of the meat product), then the loops 9 will shorten (shown generally at 11 in FIG. 5) and the remainder of the lateral lengths will lengthen, so that a certain amount of stretch is provided even if non-elastic material is used in the formation of the netting arrangement. As seen in FIG. 5, this versatility allows for a naturally shaped product to be formed, in which the center of the meat product has a larger diameter than the ends.

The finely knit stockinette is knit so that it stretches more than the integrally formed netting arrangement so that the meat will be forced to bulge outwardly between the lateral and longitudinal strands, when the casing structure is applied with pressure onto the meat product.

The following is an example of how to construct the casing structure as illustrated in FIG. 2 using arbitrary variables:

Example

Using a 24 feed, 3 track jersey single knit machine consisting of 400 needles.

Feed #1 feeds the heavy yarn (from which the square netting pattern will be formed).

Feeds #2-24 feed the fine yarns (from which the tightly knit stockinette will be formed).

A set of needles are selected at the positions that a longitudinal strand is desired. For example, if 25 evenly spaced longitudinal strands are desired, every 16th needle will be selected (440/25=16). We will call this needle set "A" (needle #1, 16, 32, 48 . . . 384).

5,413,148

5

Needle set "A" will knit only on Feed #1. Needle set "A" will not knit on Feeds 2–24; i.e., welt stitch. However, all needles but set "A" will knit on Feeds 2–24.

At Feed #1, in addition to needle set "A", additional needles can be selected to knit (alternatively can be laid in) the heavy yarn into stockinette 3, forming the lateral strands 7. This is done to draw in more of the heavy yarn as is required depending on the size of the product required. This same heavy yarn is, of course, acting as both the longitudinal and lateral strands 5 and 7.

This additional set of needles can, for example, consist of every third needle; i.e., needle #4, 7, 10, 13 . . . ). Even though these needles are creating stitch loops 10 as seen in diagram #3, it is essential that when the meat product is stuffed firmly into the netting, the heavy yarn will be pulled tight causing these little loops to disappear (see diagram #4) so that the heavy yarn will be firmly pressed against the product.

The finely knit stockinette 3 is intentionally sized larger (i.e., can be stretched more) than the integrally formed netting pattern to allow the meat to bulge through the large square openings while the net pattern actually restricts the product, thereby being the determining factor of the product size.

The stockinette 3 would also be intentionally a size larger than the integrally formed netting pattern in the FIG. 1 embodiment for the same reasons.

The casing structure may be coated with a liquid such as liquid smoke a-non-toxic, acid solution (e.g., vinegar) or oils etc. The casing structure may also be coated with a smoke permeable film, for example, cellulose.

Although particular embodiments have been described, this was for the purpose of illustrating, but not limiting, the invention. Various modifications, which will come readily to the mind of one skilled in the art, are within the scope of the invention as defined in the appended claims.

We claim:

1. An elongated tubular casing structure for encasing meat products, said elongated structure having a longitudinal direction and a transverse lateral direction, said casing structure comprising:

a stockinette member comprising a closely knit tubular member formed of closely knit threads and having a first stretch capacity;

a knitted netting arrangement having a second stretch capacity and comprising a first plurality of spaced strands extending in said longitudinal direction and a second plurality of spaced strands extending in said lateral direction;

the longitudinal and lateral strands of said netting arrangement each intersecting in locking engage-

6

ment with one another to form a grid-like pattern comprising a plurality of four-sided shapes;

said strands of said netting arrangement being knit into the threads of said stockinette member, whereby said netting arrangement and said stockinette member are integrally formed so that said casing structure comprises an integrally formed structure;

said first stretch capacity being greater than said second stretch capacity;

whereby, when a meat product is stuffed into said casing structure under pressure, said meat product forms a bulge within each of said four-sided shapes to thereby define a checker-board pattern on the surface thereof, said stockinette member forming a shield to prevent the adherence of adjacent meat product bulges over said strands of said netting arrangement.

2. A casing structure as defined in claim 1 wherein said longitudinal and lateral strands comprise elasticized material.

3. A casing structure as defined in claim 2 wherein each said lateral strand comprises a plurality of loops, each of said loops extending in sad longitudinal direction.

4. A casing structure as defined in claim 3 wherein each loop is interlaced with an adjacent preceding loop and an adjacent following loop;

whereby to form a plurality of aligned interlaced loops;

each longitudinal strand comprising one of said aligned interlaced loops.

5. A casing structure as defined in claim 2 wherein the threads of said stockinette member and the strands of said netting arrangement are coated with a liquid selected from the group consisting of liquid smoke, non-toxic acid solutions and oils.

6. A casing structure as defined in claim 4 wherein the threads of said stockinette member and the strands of said netting arrangement are coated with a liquid selected from the group consisting of liquid smoke, non-toxic acid solutions and oils.

7. A casing structure as defined in claim 2 wherein the threads of said stockinette member and the strands of said netting arrangement are coated with a smoke permeable film.

8. A casing structure as defined in claim 4, wherein the threads of said stockinette member and the strands of said netting arrangement are coated with a smoke permeable film.

* * * * *

# UNITED STATES PATENT AND TRADEMARK OFFICE
## CERTIFICATE OF CORRECTION

PATENT NO.   : 5,413,148

DATED        : May 9, 1995

INVENTOR(S) : Marcus Mintz et al

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Col. 6, line 23, Delete "claim 2" and insert therefor —claim 1—.

Col. 6, line 23, Delete "claim 2" and insert therefor —claim 1—.

Col. 6, line 44, Delete "claim 2" and insert therefor —claim 1—.

Signed and Sealed this

Twentieth Day of February, 1996

Attest:

*Bruce Lehman*

**BRUCE LEHMAN**

*Commissioner of Patents and Trademarks*

Attesting Officer

EXHIBIT A  19

## UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO. : 5,413,148

DATED : May 9, 1995

INVENTOR(S) : Marcus Mintz et al

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Col. 6, Line 23   Delete "claim 2" and insert therefor –claim 1–.

Col. 6,Line 34   Delete "claim 2" and insert therefor –claim 1–.

Col. 6,Line 44   Delete "claim 2" and insert therefor –claim 1–.

**This certificate supersedes Certificate of Correction issued February 20, 1996.**

Signed and Sealed this

Twenty-third Day of July, 1996

*Attest:*

Bruce Lehman

**BRUCE LEHMAN**

*Attesting Officer*          *Commissioner of Patents and Trademarks*

EXHIBIT A   20

1    I am employed in the County of San Diego; I am over the age of eighteen
years and not a party to the within entitled action; my business address is 501 West
2  Broadway, 19th Floor, San Diego, California 92101-3598.

3    On January 25, 2006, I served the following document(s) described as

4  **DEFENDANT PACKAGE CONCEPTS & MATERIALS, INC.'S ANSWER TO
COMPLAINT AND COUNTERCLAIM**

5

6  on the interested party(ies) in this action by placing true copies thereof enclosed in sealed
envelopes and/or packages addressed as follows:

7  John L. Haller, Esq.                          Counsel for Defendants Jif-Pak
   Charles V. Berwanger, Esq.                    Manufacturing, Inc., Neil Mintz and Marcus
8  Susan B. Meyer, Esq.                          Mintz
   Gordon & Rees LLP
9  101 W. Broadway, Suite 1600
   San Diego, CA  92101
10 Telephone:   619-230-7451
   Facsimile:   619-696-7124

11

12 Michaela L. Sozio, Esq.                       Counsel for Defendants Jif-Pak
   Tressler, Soderstrom, Maloney & Priess        Manufacturing, Inc., Neil Mintz and Marcus
   1901 Avenue of the Stars, Suite 450           Mintz
13 Los Angeles, California 90067
   Telephone:   310-203-4800
14 Facsimile:   310-203-4850

15 ☐   **BY HAND DELIVERY:**  I caused such envelope(s) to be delivered by hand to the
       office of the addressee(s).
16

17 ☒   **BY MAIL:**  I am "readily familiar" with the firm's practice of collection and
       processing correspondence for mailing.  Under that practice it would be deposited
18     with the U.S. postal service on that same day with postage thereon fully prepaid at
       San Francisco, California in the ordinary course of business.  I am aware that on
19     motion of the party served, service is presumed invalid if postal cancellation date or
       postage meter date is more than one day after date of deposit for mailing in
       affidavit.
20

21 ☒   **FEDERAL:**  I declare that I am employed in the office of a member of the bar of
       this Court at whose direction the service was made.  I declare under penalty of
22     perjury under the laws of the United States of America that the foregoing is true and
       correct.

23    Executed on January 25, 2006, at San Diego, California.

24

25    _Phyllis Chavez_

26    PHYLLIS CHAVEZ

27

28

- 1 -

CASE NO. 05 CV 1470 L (AJB)
(Consolidated with Case No. 05 CV 2200)