1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9             SOUTHERN DISTRICT OF CALIFORNIA
10
11  NEIL MINTZ, *et al.*,                    )   Civil No. 05cv1470 L(CAB)
                                             )   and related Civil No. 05cv2200 L(CAB)
12                    Plaintiffs,            )
                                             )   **ORDER GRANTING**
13  v.                                       )   **DEFENDANT'S MOTION FOR**
                                             )   **SUMMARY JUDGMENT ON**
14  DIETZ & WATSON, INC., *et al.*,          )   **INVALIDITY [doc. #182]  DENYING**
                                             )   **PLAINTIFFS' MOTION FOR**
15                    Defendants.            )   **SUMMARY JUDGMENT ON**
                                             )   **VALIDITY [doc. #178]; GRANTING**
16  _____      )   **DEFENDANT'S MOTION RE:**
                                             )   **NONINFRINGEMENT AND**
17  AND RELATED COUNTERCLAIMS.               )   **DENYING PLAINTIFFS' MOTION**
                                             )   **RE: INFRINGEMENT [doc. #180];**
18                                           )   **and DIRECTING ENTRY OF**
                                             )   **JUDGMENT**
19  _____      )

20         Currently pending are the parties' cross motions for summary judgment seeking to find

21  the patent-at-issue valid or invalid on the ground of obviousness; and to find whether defendant

22  infringed or did not infringe the patent.  The motions were fully briefed and oral argument held

23  on the issue of the validity of the patent.

24  **A.     SUMMARY JUDGMENT STANDARD**

25         Summary adjudication is appropriate when "the pleadings, depositions, answers to

26  interrogatories, and admissions on file, together with affidavits, if any, show that there is no

27  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

28  matter of law." FED. R. CIV. P. 56(c).  When "the moving party for summary judgment meets its

1   initial burden of identifying for the court those portions of the materials on file that it believes

2   demonstrate the absence of any genuine issues of material fact, the burden of production then

3   shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule

4   56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v.*

5   *Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*,

6   477 U.S. 317 (1986)).  In considering evidence at the summary judgment stage, the Court does

7   not make credibility determinations or weigh conflicting evidence, and draws all inferences in

8   the light most favorable to the non-moving party.  *See id.* at 630-31 (citing *Matsushita Elec.*

9   *Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

10  **B.     MOTIONS CONCERNING VALIDITY/INVALIDITY**

11          The parties dispute whether the '148 patent is valid.  An issued patent is entitled to the

12  presumption of validity and therefore, invalidity must be established by clear and convincing

13  evidence. *See Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1355 (Fed.

14  Cir. 2007); *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003).  Contrary to

15  plaintiffs' assertion, invalidity does not require a higher level of proof; however, a challenger's

16  burden to show invalidity is more difficult to satisfy when prior art references have been

17  presented to the PTO.  *Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443,

18  447 (Fed. Cir. 1986).

19          **1.     Background**

20          In seeking to invalidate the '148 patent, defendant argues that the patent is obvious.[1]  A

21  patent is considered obvious if the differences between it and the prior art are such that the

22  subject matter as a whole would have been obvious at the time the invention was made to a

23  person having ordinary skill in the art.  35 U.S.C. § 103(a).

24          "Obviousness is a question of law based on underlying findings of fact." *In re Kubin*, 561

25  F.3d 1351, 1355 (Fed. Cir. 2009).  Even though there are factual issues underlying the ultimate

26

27          [1]     In their motion for summary judgment, plaintiffs address invalidity not only from
28  an obviousness standpoint but also under anticipation and indefiniteness.  Defendant does not
    argue invalidity on any basis other than obviousness.

1   obviousness decision, summary judgment is appropriate if "the content of the prior art, the scope

2   of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the

3   obviousness of the claim is apparent in light of these factors." *KSR Int'l Co. v. Teleflex Inc.*, 550

4   U.S. 398, 427 (2007) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)).  A factual

5   dispute as to any one of these elements will defeat a motion for summary judgment.  *See Helifix*

6   *Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000).

7       The relevant question "is not whether the combination was obvious to the patentee but

8   whether the combination was obvious to a person with ordinary skill in the art."  *KSR*, 550 U.S.

9   at 420.  The "combination of familiar elements according to known methods" is likely to be

10  obvious when it "does no more than yield predictable results."  *KSR*, 550 U.S. at 416.   In

11  assessing obviousness, hindsight bias and ex post reasoning are to be avoided.  *Id.* at 421, 127 S.

12  Ct. 1727; *see also Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1088 (Fed. Cir. 2008).

13      To determine the issue of obviousness/non-obviousness, the court may "to look to

14  interrelated teachings of multiple patents; the effects of demands known to the design

15  community or present in the marketplace; and the background knowledge possessed by a person

16  having ordinary skill in the art," in order to determine "whether there was an apparent reason to

17  combine the known elements in the fashion claimed by the patent at issue." *KSR* at 418, 127 S.

18  Ct. 1727.  But the court "need not seek out precise teachings directed to the specific subject

19  matter of the challenged claim, for a court can take account of the inferences and creative steps

20  that a person of ordinary skill in the art would employ."  *In re Translogic Tech., Inc.,* 504 F.3d

21  1249, 1262 (Fed. Cir. 2007) (quoting *KSR* at 418, 127 S. Ct. 1727)).

22      Further, "[c]ommon sense teaches . . . that familiar items may have obvious uses beyond

23  their primary purposes, and in many cases a person of ordinary skill will be able to fit the

24  teachings of multiple patents together like pieces of a puzzle." *KRS* at 420-21, 127 S.Ct. 1727.

25  "[T]he common sense of those skilled in the art demonstrates why some combinations would

26  have been obvious where others would not."  *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485

27  F.3d 1157, 1161 (Fed. Cir. 2007).

28

05cv1470

### 2.    Discussion

#### a.    Obviousness/Non-obviousness Test Restated

To determine whether a patent is "obvious," and thus invalid, the court must examine: (1) the scope and the content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) the objective evidence of nonobviousness.  35 U.S.C.A. § 103(a).

#### b.    Ordinary Skill in the Art

As an initial matter, the level of ordinary skill in the art is not in dispute here.  Defendant defines a person of ordinary skill in the art relevant to the '148 Patent as someone who would not need any "specific formal education beyond High School graduation requirements," would be "familiar with knitting and with the operation and capabilities of knitting machines," and that "familiarity could be obtained through training, work experience in the field of knitting and through literature."  (Defendant's Exh. D at D296.)   Plaintiffs state that "[a] person of ordinary skill in the relevant art has at least a high school education and at least one year of experience working in the knitting industry."  (Plaintiffs' Claim Construction Brief at 8, doc. no. 55.)

In their Opening Claim Construction brief, plaintiffs state that "[t]here are two distinct yet overlapping technical arts involved in the patent in suit: the 'knitting' arts and the 'meat encasements' art."  (Plaintiffs' Opening Claim Construction brief at 1, doc. no. 55.)  Yet in their motion for summary judgment re validity, plaintiffs appear to adopt defendant's definition of the person of ordinary skill.  (Plaintiffs' MP&As at 11.)  They specifically do not advance their suggestion that a person of ordinary skill in the relevant art is one who is both familiar with knitting and knitting machines *and* who is familiar with the meat industry.[2]

/ / /

/ / /

---

[2]    In seeking to exclude the testimony of defendant's expert, Trevor Little, plaintiffs argued that Little's opinion should be excluded because he is not an expert in meat encasement and the pertinent art of this patent is knitted meat encasements.  (Plaintiffs' Motion to Exclude, doc. #177.)  The Court concluded that the pertinent art of the '148 Patent is knitting and  a person of ordinary skill in the art is a person who has a certain level of skill in the knitting arts. (Order filed October 19, 2009, doc. #213.)

1

       **c.**    **Scope of Patent Claim**

2

    The claims at issue in this case read as follows:

3
4
5
6
7
8

    1.  An elongated tubular casing structure for encasing meat products, said elongated structure having a longitudinal direction and a transverse lateral direction, said casing structure comprising:
a stockinette member comprising a closely knit tubular member formed of closely knit threads and having a first stretch capacity;
a knitted netting arrangement having a second stretch capacity and comprising a first plurality of spaced strands extending in said longitudinal direction and a second plurality of spaced strands extending in said lateral direction;
the longitudinal and lateral strands of said netting arrangement each intersecting in locking engagement with one another to form a grid-like pattern comprising a plurality of four-sided shapes;

9
10
11

said strands of said netting arrangement being knit into the threads of said stockinette member, whereby said netting arrangement and said stockinette member are integrally formed so that said casing structure comprises an integrally formed structure;
said first stretch capacity being greater than said second stretch capacity;

12
13
14
15

WHEREBY when a meat product is stuffed into said casing structure under pressure, said meat product forms a bulge within each of said four-sided shapes to thereby define a checker-board pattern on the surface thereof, said stockinette member forming a shield to prevent the adherence of adjacent meat product bulges over said strands of said netting arrangement.

16
17

    4.    A casing structure as defined in claim 3 wherein each loop is interlaced with an adjacent preceding loop and an adjacent following loop; whereby to form a plurality of aligned interlaced loops;
each longitudinal strand comprising one of said aligned interlaced loops.

18

(Plaintiffs' Exh. A at 6-7.)

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

The Court issued its construction order with respect to the following claim terms:

| Claim Term | Construction |
|---|---|
| **integrally formed** | formed as a unit |
| **stockinette member** | a closely knit tube |
| **netting arrangement** | longitudinal and lateral strands that intersect in locking engagement to form a grid-like pattern with less stretch capacity than the threads of the stockinette member |
| **strand** | a yarn or yarns used in forming the lateral and longitudinal structures of the netting arrangement |
| **thread** | a yarn or yarns used in forming the stockinette member |
| **longitudinal strand** | strand or strands which run in the lengthwise direction of the tubular casing |
| **lateral strand** | strand or strands which run perpendicularly to longitudinal strand(s) around the circumference of the tubular casing |
| **locking engagement** | fixed at each intersection |
| **checkerboard pattern** | parallel vertical and horizontal impressions approximately equidistant and crossing at right angles which result in a four-sided impression |

(Order filed February 13, 2009, doc. no. 134.)

The Court notes that the Joint Claim Construction Statement originally presented 16 terms and phrases requiring construction: "for encasing meat products"; "stockinette member"; "tubular"; "closely knit"; "stretch capacity"; "knitted"; "netting arrangement"; "strand"; "longitudinal strands"; "lateral strands"; "intersecting"; "locking engagement"; "integrally formed"; "whereby"; "checker-board pattern"; and "interlaced". The parties narrowed that list to the above nine claim terms. At no time did either party request construction of the claim term "structure."

### d.    Scope and Content of Prior Art

Plaintiffs point out that upon examination and amendments, PTO ultimately found the '148 patent not obvious based on an examination of the prior art. Because all the prior art relied upon by defendant was expressly considered by PTO, plaintiffs contend that the '148 Patent was

not obvious as a matter of law and therefore, the Patent is valid.  (Ptfs' Ps&As re Validity at 7.)

The prior art submitted to the PTO for consideration during the prosecution of the '148 Patent includes:  Henricus (1990); Sartore (1924); Lombardi (1934); Hirner (1902); and Bradsaw (1942).  Only Sartore and Henricus specifically dealt with knitted encasements for meat; the others concerned knitted items for products such as socks and hosiery.

Plaintiffs made two initial patent applications for a knitted meat casing – Application Nos. 838,355 and 886,280.  The PTO rejected plaintiffs' '280 Application.

Rather than amend their '280 application, plaintiffs filed a new Patent Application No. 177,800 (the "800 Application").   The PTO rejected plaintiffs' Claim 15 as being obvious and therefore unpatentable over Henricus . . . in view of Lombardi."  (Defendants' Exh. C, C-228.)

The PTO explained Henricus disclosed a tubular knit meat casing comprised of a stockinette member that was comprised of a closely knit tubular member formed of closely knit thread and an elastic knitted netting arrangement that was knit into the stockinette member but did not disclose the knitted netting arrangement having a plurality of four-sided shapes. (Defendants' Exh. C, C228-229.)

The PTO further found that the Lombardi patent disclosed a knitted fabric comprising:

> a stockinette member comprised of closely knit threads and having a first stretch capacity and a knitted netting arrangement . . . having a second stretch capacity, comprising a first plurality of spaced stands, in the form of loops, extending in the longitudinal direction and a second plurality of spaced strand extending in the lateral direction, wherein the lateral and longitudinal strands make up a grid-like pattern. . . .
> The netting arrangement is disclosed as being knit into the threads of the stockinette member, whereby the netting arrangement and the stockinette member are integrally formed. . . .
> [T]he knitted fabric . . . is a soft, elastic knitted material and the knitted netting material is disclosed as being made of a heavier yarn, thus making the first stretch capacity greater than the second stretch capacity.

Based on this analysis, the PTO rejected the '800 Application concluding that:

> It would have been obvious to one having ordinary skill in the art at the time the invention was made to modify the stitching of the casing of Henricus to include a netting arrangement having lateral and longitudinal strands having a different stretch capacity than the stockinette material as suggested by Lombardi in order to produce a meat casing of a knitted fabric that can form a checker-board pattern on the surface of the meat.

1  (*Id.* at C-229-230 (emphasis added)).

2      In seeking reconsideration of the Examiner's rejection of its '800 Application, plaintiffs

3  argued:

4              The patent to Lombardi, on the other hand, discloses a knitted fabric in which
            varied pattern designs can be produced by one or more series of drop stitches
5            which are prevented by a special yarn from forming runs.  In other words, in
            Lombardi, <u>each</u> loop of special yarn extending in the longitudinal direction does
6            not intersect in locking engagement with <u>each</u> special yarn extending in the lateral
            direction to form a grid-like pattern.  This is also apparent from Fig. 6 of
7            Lombardi, where the aligned long loops of special yarn are each separated from
            one another by a row of regular loops.  Accordingly, there is no teaching or
8            suggestion whatsoever in Lombardi in respect of providing a knitted netting
            arrangement comprising a first plurality of spaced strands extending in the
9            longitudinal direction and a second plurality of spaced strands extending in the
            lateral direction, wherein the longitudinal and lateral strands each intersect in
10           locking engagement with one another to form a grid-like pattern, as in Applicant's
            claimed invention.
11
12  (Plaintiffs' MSJ, Exh. B, Amendment and Request for Reconsideration under 37 C.F.R. 1.111, at

13  39, 41.)  Plaintiffs argued to the PTO that Lombardi disclosed the making of patterns in the

14  knitted fabric by the use of "drop stitches" rather than forming a grid-like pattern based on

15  lateral and longitudinal strands each intersecting in locking engagement.  Plaintiffs specifically

16  distinguished Figure 6 of Lombardi by noting the aligned long loops of special yarn were each

17  separated from one another by a row of regular loops.   In other words, plaintiffs asserted to the

18  PTO that Lombardi teaches a knitted fabric where each loop of special yarn extending in the

19  longitudinal direction does not intersect in locking engagement with each special yarn extending

20  in the lateral direction forming a grid-like pattern.

21      Thus, in order to distinguish claim 15 of the '800 patent application from the prior art of

22  Henricus and Lombardi, plaintiffs amended claim 15:

23              to specify that the longitudinal and lateral strands of the netting arrangement <u>each</u>
            intersect in <u>locking engagement</u> with another to form a grid-like pattern
24           comprising a plurality of four-sided shapes.  Each loop 9 or the lateral strands 7 is
            interlaced with an adjacent preceding loop and an adjacent following loop to
25           thereby provide a locking engagement between the longitudinal and lateral strands
            at their point of intersection, the longitudinal strands 5 being formed by the
26           interlaced aligned loops 9.

27  *Id.* at C245-46 (emphasis in original).

28      Because the PTO determined Lombardi did not disclose a netting arrangement where the

    longitudinal and lateral strands *each intersect in locking engagement*, plaintiffs' amended '800

1  Application, with Claim 15 becoming Claim 1, was issued as the '148 Patent.

2          **e.**      **Differences Between Claimed Invention and Prior Art**

3        Plaintiffs contend that none of the prior art disclosed a meat casing with two distinct

4  stretch capacities that provided a grid-like impression on the meat that resulted in the increased

5  peel ability and cost benefits found in the '148 Patent.  According to plaintiffs**,** all of the prior art

6  contain only fabric with a uniform stretch capacity.  (Plaintiffs' MSJ, MP&A at 5.)  The '148

7  Patent claims require that the stretch capacity of the stockinette member be greater than that of

8  the netting arrangement which are incorporated into a single meat encasement. (*Id*. at 9.)

9  Plaintiffs' assertion that two different stretch capacities was not found in the prior art is clearly at

10  odds with the findings of the PTO as set forth above.  Although plaintiffs raised the argument of

11  differing stretch capacities in requesting reconsideration for the '800 Application rejection, they

12  also distinguished the prior art before the PTO by pointing out that "the longitudinal and lateral

13  strands of the netting arrangement <u>each</u> intersect in <u>locking engagement</u> with another."  The

14  PTO allowed the '148 Patent to issue on the basis of each longitudinal and lateral strand

15  intersecting in locking engagement rather than because of two distinct stretch capacities.

16  Therefore, stretch capacity is not a difference between the claimed invention and prior art.

17        The question then is whether each longitudinal and lateral strand of the netting

18  arrangement intersect in locking engagement with one another was disclosed in the prior art

19  making the invention obvious.  As a the *KRS* Court noted, whether the combination of familiar

20  elements yielded predictable results that were obvious to a person skilled in the relevant art.  *See*

21  *KRS*, 550 U.S. at 416.

22        Defendant argues that all the elements in Claim 1 of the '148 Patent were disclosed in the

23  prior art.  PCM first points out that the Hirner Patent shows how to knit a grid pattern into a

24  tubular structure, *i.e.,* a sock.  The Hirner Patent disclosed how to use long loops and  lateral

25  strands to create a grid pattern.

26        The Henricus patent discloses every element of Claim 1 of the '148 patent except

27  longitudinal strands and the resulting four-sided shapes.

28        And as indicated by the PTO, the Lombardi patent discloses a netting arrangement having

1   lateral and longitudinal strands having a different stretch capacity that create a grid pattern.

2          As discussed above, in order to distinguish their invention in the face of the PTO's

3   rejection of their '800 Application as obvious because of Lombardi, plaintiffs added the

4   limitation that each longitudinal and lateral strand intersect in locking engagement.  Defendant

5   contends that because Henricus, Hinter and Lombardi  provide all the elements of Claim 1, it

6   would have been obvious to a person skilled in the art to combine these teachings to include the

7   limitation of each longitudinal and lateral strand intersecting in locking engagement.  According

8   to defendant, the "innovation" plaintiffs patented was a combination of known elements in prior

9   knitted art that also required the intersection in locking engagement of each longitudinal and

10  lateral strand was obvious to try.

11         A patent may be invalid if the claimed invention would have been "obvious to try."  "If a

12  person of ordinary skill can implement a predictable variation, § 103 likely bars its

13  patentability."  *KSR*, 550 U.S. at 417.

14                 When there is a design need or market pressure to solve a problem and there are a
                   finite number of identified, predictable solutions, a person of ordinary skill has
15                 good reason to pursue the known options within his or her technical grasp.  If this
                   leads to anticipated success, it is likely the product not of innovation but of
16                 ordinary skill and common sense.  In that instance the fact that a combination was
                   obvious to try might show that it was obvious under § 103.
17

18  *Id.* at 421.

19         In order to determine whether there was an apparent reason to combine the known

20  elements in the manner claimed by the patent, the Court can look to interrelated teachings of

21  multiple patents, the effects of demands known to the design community or present in the

22  marketplace, and the background knowledge possessed by a person having ordinary skill in the

23  art.  And the Federal Circuit recently discussed in some detail that "[c]ommon sense has long

24  been recognized to inform the analysis of obviousness if explained with sufficient reasoning."

25  *Perfect Web Technologies, Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1328 (Fed. Cir. 2009).

26         Here, under a common sense view, providing a fixed point, *i.e.,* a locking engagement, for

27  the intersection of each lateral and longitudinal strand locking engagement would have been

28  obvious to try when a checkerboard pattern on a meat product is desired or required.  The

1   whereby clause in Claim 1 provides a basis to find that plaintiffs sought to have a checkerboard

2   impression on the meat.  Plaintiffs' added the requirement that each lateral and longitudinal

3   strand intersect in locking engagement which would flow from securing the structure of the

4   strands in a checkerboard pattern in an obvious manner.

5        But in their motion for summary judgment, plaintiffs assert:

6            the innovation of the '148 patent is the integral combination of the netting
             structure with a stockinette.  The combination of these known elements, with the
7            added limitation that the stretch capacity of the netting arrangement is less than the
             stockinette member, is the innovation not previously practiced. (Citations omitted)
8

9   (Plaintiffs' MSJ MP&As at 4.)

10       This assertion is not supported by the prosecution history.  The PTO rejected the '800

11  Application as obvious because the prior art would lead to plaintiffs' product:

12           It would have been obvious to one having ordinary skill in the art at the time the
             invention was made to modify the stitching of the casing of Henricus to include a
13           netting arrangement having lateral and longitudinal strands having a different
             stretch capacity than the stockinette material as suggested by Lombardi in order to
14           produce a meat casing of a knitted fabric that can form a checker-board pattern on
             the surface of the meat.
15

16  (Defendants' Exh. C. at C-229-230 (emphasis added).)

17       The '148 Patent was issued because of the limitation of the lateral and longitudinal

18  strands each intersecting in locking engagement and not because the '148 Patent provided for

19  different stretch capacities in the strands.

20       At oral argument, however, plaintiffs argued that the innovation or distinguishing

21  difference between the claimed invention and prior art is the creation of a structure for meat

22  encasements that is functional rather than decorative.  Plaintiffs note that the prior arts' dropping

23  of stitches and the interlacing loops were intended solely to create a pattern in knitted fabric and

24  the pattern was not intended to function in any other way.  (Transcript of oral argument, October

25  30, 2009, at 52-53.)

26           All three of the fabric references – Hirner, Bradshaw, and Lombardi – all three of
             them were there explicitly only to create a pleasing effect or a pleasing pattern on
27           the sock or whatever fabric it was that was being created.  They did that by means
             of various stitch patterns, but they weren't there to create any kind of functional
28           structure in the fabric itself.  And that is the difference between Lombardi and us.
             And that is the difference between Hirner and us.  And frankly, that is the

                                        11                                      05cv1470

difference between Lombardi and PCM's is that Lombardi was a fabric for creating decorations. PCM products are meat encasements. Those patterns that are knit into the meat encasement are there to create a structure and that structure has a purpose.

> And that's the difference between each one of these and our patent itself because we are using those loops to do something different than Lombardi was doing. . . .

*Id.*

By making this distinction between a functional structure and decorative pattern, plaintiffs appear to focus on the invention as a whole for which patentability is claimed rather than pointing to the prior art that discloses or suggests limitations.

In *Medtronic Vascular Inc. v. Advanced Cardiovascular Systems, Inc.*, 2009 WL 302296, *16 (N.D. Cal. 2009), the court noted that:

> plaintiffs are correct that as a general matter of law, the obviousness inquiry must focus on the invention as a whole, not specific limitations. *See Hartness Intern. Inc. v. Simplimatic Engineering Co.*, 819 F.2d 1100, 1108 (Fed. Cir. 1987) (the inquiry is not whether each element existed in the prior art, but whether the prior art made obvious the invention as a whole for which patentability is claimed). Notwithstanding the correctness of this observation, however, it is still a proper exercise to examine the prior art in question with respect to the individual elements and limitations purportedly disclosed therein, in order to assess whether the ultimate claimed invention as a whole is a predictable variation of the various elements known to one of skill in the art at the time of the invention.

Plaintiffs argue that "[d]efendants impermissibly have used the claimed invention as a template to select particular elements from prior art references to reach the conclusion that the invention would have been obvious to one of ordinary skill in the art, while ignoring the absence of a suggestion to combine the elements and the common-sense reality check provided by objective considerations such as commercial success and copying." (Pltfs' opp. to dft's MSJ.) Additionally, plaintiffs contend that defendant has done nothing more than view the prior art in hindsight – an improper consideration.

A patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art. Here, the PTO determined that the innovation that supported the issuance of the patent was that each lateral and longitudinal strand intersected in locking engagement. Because the Court construed the term "strand" as "a yarn or yarns used in forming the lateral and longitudinal structures of the netting

arrangement," plaintiffs contend that the innovation, when viewed as a whole, was the use of intersecting longitudinal and lateral strands as a structural element of the netting arrangement. While acknowledging that  some of the prior art used strands and loops to create grid patterns on knitted fabric, plaintiffs contend none of the prior art used strands to create a functional structure.

In the proceedings before the PTO, plaintiffs did not address whether the strands of the netting arrangement created a functional structure.  Instead, plaintiffs added an element to distinguish their meat encasement from the prior art –  each lateral and longitudinal strand intersect in locking engagement.  It was only because of that distinction that the PTO determined that the prior art rendered plaintiffs' product as obvious to a person of ordinary skill in the art.

As defendant notes, in examining a patent for obviousness, you look at the prior art and take a common sense approach to determine whether it would have been obvious to a person of skill in the art to combine the references to come up with the invention.  Here, it would have been obvious and predictable to a person of ordinary skill in the knitting arts to fix each point of intersection of the lateral and longitudinal strands to create a structure that would provide a grid impression on a meat product.

### f.    Evidence of Obviousness/Nonobviousness

Plaintiffs do not appear to offer any objective evidence of nonobviousness.  They do object, however, to defendant's use of the deposition testimony of Hendrik Kartner[3] – the Netherland's inventor of a meat encasement that was so similar to plaintiffs' '148 Patent that plaintiffs sued Kartner's company, Anka, for infringement based on its meat encasement product, the Anka KR net.[4]

Kartner testified that Anka created its KR net before the alleged date that plaintiff claimed

---

[3]    Kartner is the son of Henricus Kartner of the Henricus patent application that serves as prior art.

[4]    Interestingly, defendant does not refer to Kartner's testimony in its motion for summary judgment on the issue of obviousness.  Plaintiffs raise the issue of Kartner's testimony in their moving papers.

1   in the '148 patent but the KR netting did not serve as prior art before the PTO. Defendant
2   contends Kartner's testimony is admissible to show the ordinary level of skill in art and to show
3   possible contemporaneous invention by others as a secondary consideration of obviousness.
4   *Medtronic*, 2009 WL 302296, *18-*19 (secret work done by prior inventors could be used as
5   evidence showing the state of the art or contemporaneous invention for purposes of assessing the
6   obviousness of the claimed invention even though it could not be used as § 102/103 prior art).

7          Therefore, Kartner's testimony is nonetheless admissible for purposes of demonstrating
8   the ordinary skill in the art with respect to obviousness, and as evidence going to secondary
9   considerations of obviousness. In this respect, defendant has provided additional evidence to
10  demonstrate obviousness. Nevertheless, the Court has not made use of Kartner's testimony in
11  reaching its decision that defendant has provided clear and convincing evidence sufficient to
12  overcome the presumption of validity based on obviousness.

13                        **g.    Conclusion**

14         The Court concludes that the '148 Patent is invalid as obvious. All the elements of Claim
15  1 are found in prior art with the exception of the limitation that each longitudinal and lateral
16  strand intersect in locking engagement. However, this limitation is simply "ordinary innovation"
17  because to a person of ordinary skill in the knitting arts it would be obvious to try in seeking to
18  create a grid pattern on a meat product. Even if as plaintiffs argue, the innovation of the '148
19  Patent is the creation of a structure based on the intersection of the lateral and longitudinal
20  strands for the purpose of creating the grid impression, the fixing of the intersection of the
21  strands would do "no more than yield predictable results." *KRS*, 550 U.S. at 416.

22         Because the Court finds the '148 Patent invalid, the cross motions for infringement and
23  noninfringement may be denied as moot.

24  **D.    MOTIONS CONCERNING INFRINGEMENT/NONINFRINGEMENT**

25         The Court has concluded that the '148 Patent is invalid based on obviousness. If,
26  however, the patent is valid as nonobvious, defendant has not infringed the patent.

27         The parties have noted that the issues of validity and infringement go "hand in glove."
28         Plaintiffs contend that even though PCM products do not appear to include longitudinal

                                        14

and lateral strands that meet the "each intersecting in locking engagement" requirement of Claim 1, PCM is using strands as components rather than structures as required under the Court's Claim Construction Order.

In their reply memorandum on infringement, plaintiffs state:

> The flaw in Defendants' analysis, and the only real dispute before this Court, is their dogged determination to analyze the accused products, not from the perspective of someone of ordinary skill in the knit meat casing art, but rather from a purely fabric and stitch pattern perspective.

(Plaintiffs' Reply MP&A at 1.)

As discussed above, plaintiffs have not made any formal request to alter the definition that a person of ordinary skill in the art is one associated with the knitting arts. Plaintiffs could have argued that a person of ordinary skill in the relevant art required at least a high school education, at least one year of experience working in the knitting industry plus some experience working in the meat encasement industry but they did not. They did not assert this additional factor in their Claim Construction brief or in arguing their motion for summary judgment on validity. Further, the Court previously found that the a person of ordinary skill in the relevant art is a person who has a certain level of skill in the knitting arts. (Order filed October 19, 2009, doc. #213.) As a result, defendant's analysis that the accused products are to be considered based on the knitting arts is appropriate.

Plaintiffs contend that defendant's argument that the strands of PCM's netting arrangement do not intersect in locking engagement is flawed because:

> [w]hether achieved by a single heavy yarn or by several or dozens of smaller yarns, the fact that the stitch patterns used in the accused products achieve netting arrangement satisfies the strand and locking engagement elements of the patent and renders the accused products infringing as a matter of law.

(Plaintiffs' Reply MP&S at 2.)

Here, plaintiffs disregard the very specific limitation they added to the '148 Patent to work around the Lombardi patent – that *each* longitudinal and lateral strand intersect in locking engagement. Jof-Pak expressly disclaimed the specific knit structures used by PCM in the accused nets during prosecution of the '148 Patent. Defendant's products have a netting

arrangement based on longitudinal and lateral strands but none of its products have longitudinal and lateral strands each intersecting in locking engagement.  Because none of defendant's accused products satisfy all the limitations of Claim 1, there is no infringement as a matter of law.

Based on the foregoing, **IT IS ORDERED:**

1.  Defendant's motion for summary judgment re: invalidity based on obviousness is **GRANTED** and re: noninfringement is **GRANTED**;

2.  Plaintiffs' motion for summary judgment re: invalidity based on obviousness is **DENIED**;

3.  Plaintiffs' motion for summary judgment re: infringement is **DENIED**;

4.  The Clerk of the Court is directed to enter judgment in accordance with this Order.

**IT IS SO ORDERED.**

DATED:  March 30, 2010

_____
M. James Lorenz
United States District Court Judge

COPY TO:

HON. CATHY ANN BENCIVENGO
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL

05cv1470